UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE POLAR BEAR ENDANGERED SPECIES ACT LISTING AND § 4(d) RULE LITIGATION | Misc. Action No. 08-0764 (EGS) |
| | MDL Docket No. 1993 |
| **This Document Relates To:** | Honorable Emmet G. Sullivan |
| *Center for Biological Diversity, et al. v. Kempthorne, et al.*, No. 1:08-cv-2113 | |

### INTERVENOR-DEFENDANT ALASKA OIL AND GAS ASSOCIATION'S MOTION TO AMEND TRANSFEROR COURT'S INTERVENTION ORDER

## I. RELIEF REQUESTED

The Alaska Oil and Gas Association ("AOGA") requests modification of the order of the U.S. District Court for the Northern District of California (the "Transferor Court") limiting AOGA's rights of participation as an intervenor-defendant in *Center for Biological Diversity v. Kempthorne*. Through this motion, consistent with the law of the D.C. Circuit and this Court's prior intervention orders in the other centralized cases, AOGA seeks to fully participate as an intervenor in the district court proceedings in this matter.

Prior to the Judicial Panel on Multidistrict Litigation's December 3, 2008 Transfer Order (the "Transfer Order"), the Transferor Court issued an order severely limiting AOGA's participation in the merits of the case as an intervenor-defendant despite the fact that (i) Plaintiffs expressly consented to AOGA's intervention on the merits of all claims, (ii) AOGA's motion to intervene was otherwise unopposed, and (iii) intervention is to be liberally granted. As a part of its order, the Transferor Court also imposed *sua sponte* a 15-page limit on AOGA's briefing of the merits of the case, which severely impinges upon AOGA's right to be heard on the complex and novel issues raised in this litigation.

INTERVENOR-DEFENDANT ALASKA OIL AND GAS ASSOCIATION'S
MOTION TO AMEND TRANSFEROR COURT'S INTERVENTION ORDER - 1

Seattle-3479506.2 0010627-00013

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone (206) 624-0900*

As explained below, the limitations imposed upon AOGA's intervention are contrary to the well-established law of the D.C. Circuit, as well as this Court's prior intervention orders in the other centralized cases. This Court has the authority and the discretion to modify the Transferor Court's order to harmonize the status of the intervenors in these consolidated multidistrict litigation proceedings and allow AOGA full participation as an intervenor.[1]

## II. BACKGROUND

**A.  AOGA and Its Interests**

AOGA is a private, non-profit trade association whose 16 member companies represent the majority of the oil and gas exploration, production, transportation, refining and marketing activities in Alaska. Leppo Decl. at Ex. 2, ¶ 3.[2] AOGA's members include, among others, the four largest oil and gas companies in the world, with active operations on the North Slope of Alaska within the Alaska habitat of polar bears, in other areas of Alaska outside of polar bear habitat, and throughout the contiguous Lower 48 States. *Id.* at Ex. 3, ¶¶ 5-6. AOGA's members necessarily emit greenhouse gases ("GHGs") through their operations located (i) within polar bear habitat in Alaska and the adjacent Outer Continental Shelf, (ii) in areas of Alaska outside of polar bear habitat, and (iii) elsewhere throughout the United States. *Id.*

---

[1] Pursuant to LCvR 7(m), counsel for AOGA has contacted counsel for all other parties to this consolidated case to seek their consent. Consent was given by the following parties: American Iron & Steel Institute, Arctic Slope Regional Corporation, California Cattlemen's Association, California Forestry Association, Congress of Racial Equality, Conservation Force, Edison Electric Institute, National Petrochemical & Refiners Association, Safari Club International, and Safari Club International Foundation. The Federal Defendants indicated they intend to take no position. Plaintiffs and intervenor-plaintiff have not consented to AOGA's motion. Counsel for American Petroleum Institute, Chamber of Congress of the United States of America, National Association of Manufacturers, National Mining Congress and the State of Alaska either did not respond to AOGA's request for consent or were unable to timely ascertain their client's position on this matter.

[2] For the convenience of the Court, copies of referenced filings in the *CBD v. Kempthorne* litigation prior to centralization and transfer to this Court are provided as exhibits to the accompanying Declaration of Jeffrey W. Leppo ("Leppo Decl.").

INTERVENOR-DEFENDANT ALASKA OIL AND GAS ASSOCIATION'S
MOTION TO AMEND TRANSFEROR COURT'S INTERVENTION ORDER - 2

Seattle-3479506.2 0010627-00013

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

AOGA's members expend considerable effort to avoid, minimize and mitigate contacts with marine mammals and other protected species.  *Id.* at Ex. 2, ¶ 4(b).  However, because the Beaufort and Chukchi Seas, and adjacent coastal areas of Alaska within the existing range and habitat of polar bears, are areas with significant known or anticipated oil and gas deposits, it is impossible to completely eliminate the potential for infrequent incidental interactions between the activities of AOGA's members in these areas, and polar bears.  *Id.*  Because of the potential for interactions with polar bears, AOGA has repeatedly petitioned the U.S. Fish & Wildlife Service (the "Service") for, and has successfully obtained, regulations issued pursuant to the Marine Mammal Protection Act ("MMPA") authorizing the take of polar bears incidental to oil and gas exploration, development and production-related activities on and adjacent to the North Slope of Alaska.  *See, e.g.,* 73 Fed. Reg. 33212 (June 11, 2008) (currently effective MMPA regulations for polar bear incidental take in the Chukchi Sea and adjacent areas during oil and gas exploration activities); 71 Fed. Reg. 43926 (Aug. 2, 2006) (currently effective MMPA regulations authorizing the take of polar bears incidental to oil and gas activities in and adjacent to the Beaufort Sea).  Because of the efforts of AOGA's members, and the minimization and mitigation measures imposed under the MMPA, it is well-documented over a period of decades that oil and gas activities in Alaska have no adverse effect on survival or recruitment of polar bear populations.  *See, e.g.,* 73 Fed. Reg. 28212 (May 15, 2008) at 28284 (Endangered Species Act ("ESA") listing finding "that oil and gas industry activities have not affected the rates of recruitment or survival for the polar bear populations over the period of the [MMPA] regulations."), 28266 (oil and gas activities in Alaska "do not threaten the [polar bear] species throughout all or a significant portion of its range").

B.     **The Polar Bear Listing and 4(d) Rule**

On May 15, 2008, the U.S. Fish and Wildlife Service issued a final rule listing the polar bear (*Ursus maritimus*) as a "threatened" species under the Endangered Species Act.  73 Fed. Reg. 28211-28303 (May 15, 2008) ("Listing Decision").  The distinction between different

INTERVENOR-DEFENDANT ALASKA OIL AND GAS ASSOCIATION'S
MOTION TO AMEND TRANSFEROR COURT'S INTERVENTION ORDER - 3

categories of ESA listings – threatened and endangered – is one obvious and important aspect of the statutory framework established by Congress in the ESA.  *See* 16 U.S.C. §§ 1532(6), (20), 1533.  Among other differences linked to these categories, the broad prohibition on the unauthorized "take" of a listed species only applies to species classified as endangered.  16 U.S.C. § 1538.  However, under Section 4(d), 16 U.S.C. § 1533(d), the Service has adopted a regulation that applies the take prohibitions of the ESA to species listed as threatened, subject to limitations adopted by the agency on a species-by-species, case-by-case, basis.  50 C.F.R. § 17.31(a).  Limitations adopted by the Service to the regulatory application of the ESA take prohibition to a threatened species are commonly referred to as a "4(d) rule."

Also on May 15, 2008, in conjunction with the Listing Decision and under authority of Section 4(d) of the ESA, the Service issued an interim final 4(d) rule adopting the existing conservation regulatory requirements of the MMPA (as well as the Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES")) as the appropriate regulatory provisions for polar bears under certain circumstances.  73 Fed. Reg. 28305-28318 (May 15, 2008) ("Interim 4(d) Rule").  Under this rule, no separate take authorization is required under the ESA for the narrow classes of take authorized or exempted under the MMPA or CITES.  *Id.* at 28306.  The primary classes of activity to which the Interim 4(d) Rule applies are those located on or near northern Alaska shorelines and adjacent offshore waters (*i.e.*, activities of Alaska Natives and their communities, North Slope nearshore and offshore oil and gas industry activities, and government and military activities); however, the Interim 4(d) Rule also establishes more broadly applicable take limitations outside of Alaska that, in effect, limit the regulation of GHG emissions under the ESA as a consequence of the Listing Decision.

C.     **The Transferor Court Action**

The Center for Biological Diversity, Greenpeace and the Natural Resources Defense Council (collectively "CBD" or "Plaintiffs") originally filed this action in the Transferor Court seeking to compel the Service to issue its decision regarding listing of the polar bear under the

INTERVENOR-DEFENDANT ALASKA OIL AND GAS ASSOCIATION'S
MOTION TO AMEND TRANSFEROR COURT'S INTERVENTION ORDER - 4

Seattle-3479506.2 0010627-00013

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

ESA. The Transferor Court granted CBD the relief it sought, ordering the Service to issue its decision by May 15, 2008.

However, after the Service complied with the district court's order, CBD subsequently filed an amended complaint, since amended a second time, that asserts additional and entirely new claims challenging the Service's decisions. The current operative complaint (CBD's Second Amended Complaint for Declaratory Judgment and Injunctive Relief, filed on July 15, 2008) asserts seven claims challenging the Listing Decision and the Interim 4(d) Rule pursuant to the ESA, the Administrative Procedures Act ("APA"), National Environmental Policy Act ("NEPA"), and the MMPA.[3]  *See* Leppo Decl. at Ex. 12.

Because AOGA's members unavoidably operate in polar bear habitat, the effects of the Listing Decision and the Interim 4(d) Rule, and the implications of litigation challenging these decisions, are direct, immediate, unique and long term. Accordingly, on June 6, 2008, shortly after CBD filed its amended complaint first asserting claims that challenge the Listing Decision and the Interim 4(d) Rule, AOGA filed a motion for leave to intervene in the Transferor Court. The motion was unopposed; indeed, CBD expressly consented to AOGA's intervention on the merits of all claims. *See* Leppo Decl. at Ex. 4 ("Plaintiffs, however, are not opposed to AOGA's participation in the merits of this case.").

Despite the fact that no party opposed AOGA's motion, and despite an unbroken line of Ninth Circuit precedent holding that intervention is to be liberally granted, the Transferor Court denied AOGA's motion in significant part. *See* Leppo Decl. at Ex. 1 ("Intervention Order"). The Transferor Court denied AOGA intervention as of right, and alternatively permissive intervention, with respect to (1) plaintiffs' ESA claims regarding application of ESA Section 7 consultation and the ESA take prohibition to GHG emissions, (2) plaintiffs' NEPA claim

---

[3] The parties have recently settled two claims that related to ESA and MMPA deadlines. Pursuant to the settlement, the parties have settled CBD's Third Claim for Relief (failure to designate critical habitat) and Seventh Claim for Relief (failure to issue MMPA guidelines for nonlethal deterrence). Accordingly, there are now only five claims in this case.

INTERVENOR-DEFENDANT ALASKA OIL AND GAS ASSOCIATION'S
MOTION TO AMEND TRANSFEROR COURT'S INTERVENTION ORDER - 5

challenging the Interim 4(d) Rule, and (3) plaintiffs' APA claim challenging the Interim 4(d) Rule. *Id.* Even on the issues for which the Transferor Court granted AOGA intervention as of right, the court limited the length of AOGA's opening brief on the merits to 15 pages, or three pages for each of the five remaining novel and complex legal issues in this litigation. *Id.* AOGA's subsequent motion for leave[4] to file a motion for reconsideration was denied. *See* Leppo Decl. at Ex. 5.

**D.     Centralization and Other Litigation Context**

   **1.     Centralization and consolidation**

After multiple lawsuits were filed challenging the Listing Decision and the Interim 4(d) Rule, AOGA moved the United States Judicial Panel on Multidistrict Litigation, pursuant to 28 U.S.C. § 1407, to centralize all the pending polar bear listing and 4(d) Rule cases in either this Court or the U.S. District Court in Anchorage. A Transfer Order granting AOGA's motion, and centralizing the polar bear listing and 4(d) rule cases in this Court, was entered on December 3, 2008. *See* Docket No. 1. By subsequent Initial Practice and Procedure Order, this Court ordered that all affected actions "shall be consolidated for pretrial purposes" and that any orders previously entered by any transferor district court "shall remain in full force and effect unless modified by this Court upon application." *See* Docket No. 2 at ¶¶ 1, 12.

   **2.     Other intervention orders**

---

[4] Under the Northern District of California's Local Rules, parties may not seek reconsideration as of right. Instead, a party seeking reconsideration of a ruling must first ask the district court for leave to file a motion for reconsideration. *See* N.D. Cal. LR 7-9(a). Following denial of AOGA's motion for leave to seek reconsideration, AOGA timely filed a Petition for Writ of Mandamus with the Ninth Circuit. *See In re Alaska Oil and Gas Ass'n v. The United States District Court for the Northern District of California*, No. 08-74573 (9th Cir.). AOGA's petition would be mooted should this Court grant the present motion to modify the Transferor Court's Intervention Order.

INTERVENOR-DEFENDANT ALASKA OIL AND GAS ASSOCIATION'S
MOTION TO AMEND TRANSFEROR COURT'S INTERVENTION ORDER - 6

AOGA was the first representative of industry interests to seek intervention in the *CBD v. Kempthorne* litigation.[5] AOGA's motion to intervene was followed shortly thereafter by a similarly unopposed motion to intervene from the Arctic Slope Regional Corporation ("Arctic Slope"). Arctic Slope is a Native regional corporation established pursuant to the Alaska Native Claims Settlement Act whose shareholders include virtually all Native Alaskans (Inupiaq) living on Alaska's North Slope. The Transferor Court's Intervention Order addresses both AOGA's and Arctic Slope's motions, and similarly excludes Arctic Slope from participation in the ESA claims regarding GHG emissions, as well as the NEPA and APA claims regarding the Interim 4(d) Rule. *See* Leppo Decl. at Ex. 1. The Intervention Order also imposes a 15-page limit on Arctic Slope's briefing of the merits. *Id.*

In addition, provoked by the Transferor Court's denial of AOGA's unopposed intervention on the GHG issues, other national industry groups filed motions to intervene in the *CBD v. Kempthorne* litigation.[6] Prior to centralization and transfer of this litigation, the Transferor Court granted in part and denied in part these motions, again refusing to allow intervention on the merits of the NEPA and APA claims, and again further severely constraining participation in the merits of the case by imposing a 15-page merits briefing limitation. *See* Leppo Decl. at Ex. 7.

---

[5] Conservation Force, a nonprofit foundation representing recreational polar bear hunters, intervened in the original claim filed by CBD to address limited issues arising from the timing of a listing decision as it applies to importation of polar bear trophies. After the initial claims in the case were resolved adverse to Conservation Force's interests, it appealed the district court's decision to the Ninth Circuit. *See CBD v. Kempthorne*, Case No. 08-16730 (9th Cir.). That appeal remains pending. Conservation Force has not intervened in the amended claims.

[6] The other intervenor-defendants are the National Petroleum and Refiners Association, the Edison Electric Institute, the American Petroleum Institute, the U.S. Chamber of Commerce of the United States of America, the National Mining Association, the National Association of Manufacturers and the American Iron and Steel Institute.

INTERVENOR-DEFENDANT ALASKA OIL AND GAS ASSOCIATION'S
MOTION TO AMEND TRANSFEROR COURT'S INTERVENTION ORDER - 7

Finally, Defenders of Wildlife also filed a motion to intervene as a plaintiff in the *CBD v. Kempthorne* litigation. The Court granted Defenders of Wildlife full intervention on all of Plaintiffs' claims in the litigation conditioned upon its agreement to address the merits in joint briefing with CBD. *See* Leppo Decl. at Ex. 6. By prior order, the Transferor Court expanded Plaintiffs' opening merits brief from 30 to 45 pages.

Four other intervention orders have been entered by this Court in centralized cases that were originally filed with this Court. *See* Leppo Decl. at Exs. 8-11. In contrast to the limiting orders of the Transferor Court in the *CBD v. Kempthorne* litigation, the intervention orders entered by this Court liberally grant intervention on all claims, and impose no unique page limitations on intervenors' briefing of the merits. *Id.*

### 3. Final 4(d) Rule

The Service recently promulgated a final special 4(d) rule for the polar bear species. *See* 73 Fed. Reg. 76249 (Dec. 16, 2008). The final 4(d) rule, which becomes effective January 15, 2009, is the same as the interim 4(d) rule with respect to the limitation on take for activities authorized by the MMPA and CITES. *See* 50 C.F.R. § 17.40(q)(2). The final 4(d) rule also includes a limitation on application of the ESA take prohibition for activities occurring outside of existing polar bear habitat that is within the jurisdiction of the United States. *Id.* § 17.40(q)(4). The latter provision differs from the Interim 4(d) Rule, which established a limitation applicable to areas outside of Alaska, as opposed to areas outside of polar bear habitat.[7]

---

[7] Once the final 4(d) rule becomes effective, the Interim 4(d) Rule will expire and related claims asserted in these centralized cases will become moot. However, AOGA presumes that substantially similar amended claims will be filed by the various plaintiffs with regard to the final 4(d) rule.

INTERVENOR-DEFENDANT ALASKA OIL AND GAS ASSOCIATION'S
MOTION TO AMEND TRANSFEROR COURT'S INTERVENTION ORDER - 8

### III. ARGUMENT

A.  **This Court Should Modify the Transferor Court's Intervention Order to Apply the Law of the D.C. Circuit and to Harmonize Inconsistent Intervention Terms**

Following a transfer under 28 U.S.C. § 1407, a transferor court's orders are not treated as the law of the case and a transferee court may vacate or modify any order of a transferor court. David F. Herr, *Multidistrict Litigation Manual* § 9:3 (2008); *see also In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1176 (D.C. Cir. 1987) ("the law of a transferor forum on a federal question . . . does not have *stare decisis* effect in a transferee forum situated in another circuit."); Manual for Complex Litigation (4th), § 20.132 (2004) ("The transferee judge may vacate or modify any order of a transferor court. . . ."); 32A Am. Jur. 2d Federal Courts § 1516 (2008) (same); 23A Fed. Proc., L. Ed. § 55:13 (2008) (same).

This ability to vacate or modify orders entered prior to transfer is consistent with the policy behind a § 1407 transfer, *i.e.*, "to eliminate the potential for conflicting contemporaneous pretrial rulings by coordinate district and appellate courts in multidistrict related civil actions." *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 491-92 (J.P.M.L. 1968). Indeed, the D.C. Circuit has recognized the importance of this power:

> The transferee judge's authority to coordinate consolidated pretrial proceedings in multidistrict cases is the essential contribution of the multidistrict transfer procedure. That judge has the power to set aside pretrial rulings of transferor courts, and courts performing auxiliary roles must be guided by the transferee judge's rulings.

*In re Multi-Piece Rim Prods. Liab. Litig.*, 653 F.2d 671, 676 (D.C. Cir. 1981).[8]

It is similarly well-established that when analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. *See In re Korean Air Lines Disaster*, 829 F.2d at 1176 (noting that, in multidistrict litigation, the transferee court

---

[8] Other courts that have considered this issue agree. *See*, *e.g.*, *Astarte Shipping Co. v. Allied Steel & Export Serv.*, 767 F.2d 86, 87 (5th Cir. 1985); *Degulis v. LXR Biotech., Inc.*, 928 F. Supp. 1301, 1309 (S.D.N.Y. 1996); *In re Long Distance Telecom. Litig.*, 612 F. Supp. 892, 902 (E.D. Mich. 1985); *In re Delphi Corp. Sec., Deriv. & ERISA Litig.*, No. 05-1725, 2007 WL 171330 *1 (E.D. Mich. Jan. 18, 2007).

INTERVENOR-DEFENDANT ALASKA OIL AND GAS ASSOCIATION'S
MOTION TO AMEND TRANSFEROR COURT'S INTERVENTION ORDER - 9

Seattle-3479506.2 0010627-00013

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone (206) 624-0900*

should apply the law of its circuit with respect to issues of federal law), *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig*, 97 F.3d 1050, 1055 (8th Cir. 1996) (same); *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993) (same).

**B.     AOGA Should be Granted Full Rights of Participation**

AOGA's interest in this litigation is substantial and unequivocal.  AOGA's members are the principal industrial activity that occurs within the polar bear's Alaska range.  *See* Leppo Dec. at Ex. 2, ¶ 4(a).  AOGA's members are the primary applicants for and recipients of MMPA take authorizations to which the Interim 4(d) Rule applies (and to which the superseding final 4(d) rule will apply), and the primary applicants for other federal authorizations for which Section 7 ESA consultation concerning the polar bears is required.  *Id.*, ¶¶ 4(c)-(d); Ex. 3, ¶¶ 7-8.  AOGA's members necessarily emit GHGs both within polar bear habitat in Alaska, in other areas outside of polar bear habitat in Alaska, and elsewhere throughout the Lower 48 states.  *Id.* at Ex. 3, ¶¶ 4-6.  Accordingly, AOGA's members engage in one of the few classes of activities directly and immediately affected by the Listing Decision, by the Interim 4(d) Rule, and by the outcome of Plaintiffs' claims in this litigation.  *Id.* at Ex. 2, ¶ 5; Ex. 3, ¶¶ 7-11.

     **1.     AOGA should be allowed to fully intervene in all aspects of plaintiffs' NEPA and APA claims**

CBD's Second Amended Complaint includes claims that the Interim 4(d) Rule was issued without proper notice and comment in violation of the APA (Fifth Claim) and that the Interim 4(d) Rule was issued without preparation of an environmental impact statement or environmental assessment in violation of NEPA and the APA (Sixth Claim).  *See* Leppo Decl. at Ex. 12, ¶¶ 170-178.  Notwithstanding CBD's consent to AOGA's intervention on the merits of these claims, and notwithstanding the Transferor Court's finding that AOGA had satisfied the four-part test for intervention in ESA and MMPA claims concerning the Interim 4(d) Rule, the Transferor Court denied AOGA intervention as of right and permissive intervention with respect to Plaintiffs' NEPA and APA claims based upon application and extension of a cramped Ninth

INTERVENOR-DEFENDANT ALASKA OIL AND GAS ASSOCIATION'S
MOTION TO AMEND TRANSFEROR COURT'S INTERVENTION ORDER - 10

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

Seattle-3479506.2 0010627-00013

Circuit rule that has not been accepted by other federal district courts or courts of appeal.[9]  *See* Leppo Decl. at Ex. 1, pp. 5-7.

In *The Wilderness Society v. Babbitt*, 104 F. Supp. 2d 10 (D.D.C. 2000), a suit under NEPA and the APA, conservation advocacy groups challenged a decision of the Secretary of Interior to allow oil and gas leasing in the National Petroleum Reserve – Alaska.  When Arctic Slope and the State of Alaska sought to intervene, plaintiffs sought to limit their participation by importing the Ninth Circuit's minority rule.  *Id.* at 18.  Based upon the D.C. Circuit's well-established "liberal approach to intervention," Judge Roberts concluded the Ninth Circuit's rule that only the federal government can be a defendant in a NEPA case is "unduly rigid in light of Rule 24's purpose of protecting third parties affected by the litigation."  *Id.; see Kleissler v. United States Forest Serv.*, 157 F.3d 964, 971 (3d Cir. 1998) (rejecting Ninth Circuit NEPA intervention rule because "[s]uch a wooden standard minimizes the flexibility and spirit of Rule 24"); *see generally* Stephanie D. Matheny, *Who Can Defend a Federal Regulation?  The Ninth Circuit Misapplied Rule 24 By Denying Intervention of Right in Kootenai Tribe of Idaho v. Veneman*, 78 Wash. L. Rev. 1067 (2003).[10]

As determined by Judge Roberts in *Wilderness Society v. Babbitt*, "the purposes of Rule 24 are best served by permitting the prospective intervenors to engage in *all aspects*" of the litigation.  104 F. Supp. 2d at 18 (emphasis added).  In light of CBD's original consent to

---

[9] As noted in the Transfer Order, *CBD v. Kempthorne* is the only case to date that is a part of these consolidated multidistrict proceedings and that was not originally filed in this district.  *See* Docket No. 1 at Schedule A.  Accordingly, it is the only case that has been subject to the Ninth Circuit's minority rule on intervention as of right with respect to NEPA claims.

[10] Contrary to the Transferor Court's order, even in the Ninth Circuit, permissive intervention in the merits of NEPA claims is appropriate.  *See Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108-10 (9th Cir. 2002) (granting permissive intervention to third parties in merits of NEPA claim).  Moreover, the Ninth Circuit has never extended its rule that third parties may not intervene as of right in the merits of NEPA claims to any claims other than those under NEPA.  Accordingly, the Transferor Court improperly extended the Ninth Circuit's rule regarding NEPA claims to further restrict AOGA's intervention in Plaintiffs' APA claims.  Indeed, this aspect of the Transferor Court's ruling is unsupported by legal authority from the Ninth Circuit or any other circuit.

INTERVENOR-DEFENDANT ALASKA OIL AND GAS ASSOCIATION'S
MOTION TO AMEND TRANSFEROR COURT'S INTERVENTION ORDER - 11

intervention in the merits of its claims, AOGA's demonstrated interests, the law of the D.C. Circuit favoring liberal intervention, and the prior intervention orders of this Court in other cases centralized before this Court, this Court should modify the existing intervention order regarding AOGA to allow full intervention status on all aspects of Plaintiffs' APA (Fifth) and NEPA (Sixth) claims.

### 2. AOGA should be allowed to fully intervene in Plaintiffs' ESA claim

CBD's Second Amended Complaint also includes as its Fourth Claim a broad challenge to the Interim 4(d) Rule on numerous grounds alleged to violate the requirements of the ESA. *See* Leppo Decl. at Ex. 12, ¶¶ 161-169.  The Transferor Court granted in part and denied in part AOGA's motion to intervene in Plaintiffs' Fourth Claim.  Specifically, the Transferor Court denied AOGA intervention regarding application of the ESA take and consultation requirements to regulation of GHG emissions on the grounds that AOGA did not demonstrate a significantly protectable interest in these issues.  *See* Leppo Decl., Ex. 1, p. 8.  It appears as though the Transferor Court may have mistakenly concluded the GHG emissions issues only concern emission sources outside of Alaska, and that AOGA's interests are confined to regulatory activity applying within Alaska.  *Id.*  However, the record clearly demonstrates that AOGA's interests in the GHG issues addressed in the Interim 4(d) Rule (as well as the superseding final 4(d) rule) are direct, significant and compelling.

First, CBD's allegations regarding application of the Interim 4(d) Rule to ESA § 7 consultation is in no way geographically limited to areas outside of Alaska.  *See* Leppo Decl. at Ex. 12, ¶ 167.  Not only are AOGA's members directly subject to § 7 ESA consultation regarding polar bears, the record is uncontradicted that AOGA's members are likely the only parties to this litigation that will consult with the Service under § 7 of the ESA regarding polar bears.  *See* Leppo Decl. at Ex. 2, ¶¶ 4-5; Ex. 3, ¶¶ 7-8.  Insofar as CBD contends that GHG aspects of the 4(d) rule conflict with ESA § 7 requirements, the activities of AOGA's members, which emit GHGs, are directly and significantly affected.

INTERVENOR-DEFENDANT ALASKA OIL AND GAS ASSOCIATION'S
MOTION TO AMEND TRANSFEROR COURT'S INTERVENTION ORDER - 12

Second, AOGA's members also have a direct interest in the limitation of ESA take authority to GHG emissions. Although the Interim 4(d) Rule applies the take limitation only in areas outside of Alaska, the final 4(d) rule applies the take limitation more broadly to areas outside of existing polar bear habitat. *See* 50 C.F.R. § 17.40(q)(4). AOGA's members engage in substantial activities that emit GHGs within Alaska outside the range of polar bears (e.g., in Cook Inlet and on the Kenai Peninsula), and that are directly subject to CBD's claims. *See* Leppo Decl. at Ex. 3, ¶¶ 5-6. Moreover, AOGA's members, which include the world's four largest oil and gas companies, have a direct, substantial and obvious stake in GHG emissions regulation outside of Alaska. *Id.* at ¶ 6. For this reason, AOGA and its members are active participants in the debate regarding whether and how to regulate GHGs under federal law, particularly under the ESA. *Id.* at ¶¶ 9-11.

Even if the district court were correct that AOGA did not have a significant protectable interest in the portion of the Interim 4(d) Rule relating to application of the ESA take limitation to GHG emissions (which AOGA does), that factor has no bearing on AOGA's unopposed request for permissive intervention under Fed. R. Civ. P. 24(b). *See*, *e.g.*, *SEC v. U.S. Realty & Improvement Co.*, 310 U.S. 434, 459 (1940) (noting that permissive intervention "plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation").[11] Accordingly, again, in light of CBD's original consent to intervention in the merits of its claims, AOGA's demonstrated interests, the law of the D.C.

---

[11] In rejecting AOGA's request for permissive intervention, the Transferor Court concluded that the federal defendants will "thoroughly address the issues relating to greenhouse gas emissions and activities outside Alaska." *See* Leppo Decl., Ex. 5, p. 5. However, the federal government is charged with representing the public, not the views of industry groups like AOGA that have a direct relationship to the subject of this litigation. When parties like AOGA have private interests, as opposed to the government's "public" interests, this difference is sufficient to justify intervention. *Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994); *County of Fresno v. Andrus*, 622 F.2d 436, 438-39 (9th Cir. 1980); *Nat. Res. Defense Council, Inc. v. Costle*, 561 F.2d 904, 912 (D.C. Cir. 1977); *see also Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (intervention appropriate if existing parties' representation of proposed intervenor's interests "may be" inadequate).

INTERVENOR-DEFENDANT ALASKA OIL AND GAS ASSOCIATION'S
MOTION TO AMEND TRANSFEROR COURT'S INTERVENTION ORDER - 13

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

Seattle-3479506.2 0010627-00013

Circuit favoring liberal intervention, and the prior intervention orders of this Court in other cases centralized before this Court, this Court should modify the existing intervention order to allow AOGA full intervention status on all aspects of Plaintiffs' ESA (Fourth) claim.

### 3. Separate briefing limitations should not apply to AOGA

Finally, the Transferor Court further and severely restricted AOGA's participation as intervenor by contracting the length of AOGA's merits brief from the 30 pages allowed by the Tranferor Court's local rules to 15 pages. At the same time, the Transferor Court enlarged the page limits for the original parties by 50 percent to 45 pages. This decision is unfair and unreasonable, especially given the complex and novel issues presented in this litigation and AOGA's substantial interest in each of Plaintiffs' claims. The disparate treatment of AOGA (and other intervenor-defendants) substantially diminishes the participation of the first representative of industry interests in this litigation and the only industry actively engaged in polar bear habitat. *See*, *e.g.*, *County of San Miguel, Colo. v. MacDonald*, 244 F.R.D. 36, 48 n. 17 (D.D.C. 2007) (granting intervention and declining to reduce by one-half the standard page limits authorized by the local rules for court filings).

This Court's prior orders granting intervention in the other centralized cases imposes no limitation on the participation of intervenors in briefing on the merits. *See* Leppo Decl. Exs. 8-11. The extraordinary limitations imposed *sua sponte* on AOGA's rights of participation should be eliminated in fairness and to achieve consistency among these consolidated cases.

### IV. CONCLUSION

For the foregoing reasons, AOGA respectfully asks the Court to modify the Transferor Court's Intervention Order. Whether as of right or permissively, AOGA requests that it be granted full intervenor status on all of Plaintiffs' pending claims and that it be further allowed rights of participation in merits briefing equal to those of the other parties in this centralized and consolidated litigation.

INTERVENOR-DEFENDANT ALASKA OIL AND GAS ASSOCIATION'S
MOTION TO AMEND TRANSFEROR COURT'S INTERVENTION ORDER - 14

Seattle-3479506.2 0010627-00013

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

DATED:  January 7, 2009.        STOEL RIVES LLP


                                /s/ Jeffrey W. Leppo
                                Jeffrey W. Leppo, D.C. Bar No. 493482
                                600 University Street, Suite 3600
                                Seattle, WA 98101
                                (206) 386-7641

                                *Attorneys for Intervenor-Defendant*
                                 *Alaska Oil and Gas Association*

INTERVENOR-DEFENDANT ALASKA OIL AND GAS ASSOCIATION'S
MOTION TO AMEND TRANSFEROR COURT'S INTERVENTION ORDER - 15

## Certificate of Service

I hereby certify that on January 7, 2009, I electronically filed the foregoing *Intervenor-Defendant Alaska Oil and Gas Association's Motion to Amend Transferor Court's Intervention Order,* including accompanying documents, *Declaration of Jeffrey W. Leppo,* and *[Proposed] Order Amending Transferor Court's Intervention Order* with the Clerk of the Court for the United States District Court – District of Columbia by using the CM/ECF system.  Participants in this case No. 08-0764 (EGS) who are registered CM/ECF users will be served by the CM/ECF system.  I further certify that some of the participants listed in the December 24, 2008 Conditional Transfer Order MDL No. 1993 Involved Counsel List (CTO-1) are not registered CM/ECF users.  I have emailed and mailed via U.S. First Class Mail the foregoing document to the following non-CM/ECF participants:

Howard M. Crystal
MEYER GLITZENSTEIN & CRYSTAL
1601 Connecticut Avenue, NW, Suite 700
Washington, DC  20009-1035
Attorneys for Defenders of Wildlife, Humane Society of the United States, International Fund for Animal Welfare
*Email:  howardcrystal@meyerglitz.com*

Jeffrey M. Feldman
FELDMAN, ORLANSKY & SANDERS
500 L Street, Fourth Floor
Anchorage, AK  99501
Attorneys for Arctic Slope Regional Corporation
*Email:  feldman@frozenlaw.com*

Paul W. Kaufman
U.S. Department of Justice
615 Chestnut Street, Suite 1250
Philadelphia, PA  19106
Attorneys for Federal Defendants
*Email:  paul.kaufman2@usdoj.gov*

J. Michael Klise
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004-2595

INTERVENOR-DEFENDANT ALASKA OIL AND GAS ASSOCIATION'S
MOTION TO AMEND TRANSFEROR COURT'S INTERVENTION ORDER - 16

Attorneys for Edison Electric Institute
*Email:  jmklise@crowell.com*

Benjamin Longstreth
NATURAL RESOURCES DEFENSE COUNCIL
1200 New York Avenue, NW
Suite 400
Washington, DC  20005
Attorneys for Center for Biological Diversity, Greenpeace, Inc.; Natural Resources Defense Council
*Email:  blongstreth@nrdc.org*

Roger R. Martella
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC  20005
Attorneys for National Petrochemical & Refiners Association
*Email:  rmartella@sidley.com*

Kendra D. McGuire
BARLEY SNYDER LLC
126 East King Street
Lancaster, PA  17602
Attorneys for Donald C. Hershey and Ronald E. Kreider
*Email:  kmcguire@barley.com*

Clifford Eugene Stevens
U.S. Dept. of Justice Environment
 & Natural Resources Division
601 D Street, N.W.
Washington, DC  22201
Attorneys for Federal Defendants
*Email:  clifford.stevens@usdoj.gov*

Sean E. Summers
BARLEY SNYDER LLC
100 East Market Street
P.O. Box 15012
York, PA  17405-7012
Attorneys for Donald C. Hershey and Ronald Krieder
*Email:  ssumers@barley.com*

/s/ Jeffrey W. Leppo

INTERVENOR-DEFENDANT ALASKA OIL AND GAS ASSOCIATION'S
MOTION TO AMEND TRANSFEROR COURT'S INTERVENTION ORDER - 17