**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE POLAR BEAR ENDANGERED SPECIES ACT LISTING AND § 4(d) RULE LITIGATION | ) ) ) ) ) |
| | Misc. Action No. 08-764 (EGS) MDL Docket No. 1993 |
| This Document Relates To: *Safari Club International, et al. v. Salazar, et al.,*[1] No. 08-881 (EGS) | ) ) ) ) ) ) ) ) ) |
| | **FEDERAL DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT** |

---

[1] Mr. Salazar is substituted for Dirk Kempthorne pursuant to Fed. R. Civ. P. 25(d)(1).

# TABLE OF CONTENTS

PAGE

**INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**I.**    **STATUTORY BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    The Endangered Species Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      B.    The Marine Mammal Protection Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**II.**   **FACTUAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**STANDARD OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**I.**    **THE DISCUSSION IN THE FINAL RULE RELATED TO**
      **IMPORTATION OF POLAR BEAR TROPHIES IS NOT A**
      **CHALLENGEABLE FINAL AGENCY ACTION** . . . . . . . . . . . . . . . . . . . . . . . . . 8

**II.**   **PLAINTIFFS LACK STANDING TO CHALLENGE THE**
      **STATEMENTS IN THE FINAL RULE RELATED TO**
      **IMPORTATION OF POLAR BEAR TROPHIES.** . . . . . . . . . . . . . . . . . . . . . . . . 11

      A.    Plaintiffs Fail To Allege That They Have
           Suffered An Injury-In-Fact. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      B.    Plaintiffs Have Failed To Allege A Causal Connection Between
           Alleged Injury To Their Members And Federal Defendants' Conduct. . . . . . . 15

      C.    Plaintiffs Have Failed To Allege That It Is Likely That
           Their Alleged Injury Would Be Redressed By A Favorable Decision. . . . . . . . 16

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## TABLE OF AUTHORITIES

CASES                                                                      PAGE

Bennett v. Spear, 520 U.S. 154 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Common Cause v. Fed. Election Comm'n, 108 F.3d 413 (D.C. Cir. 1997) . . . . . . . . . . . . . . . 15

Conley v. Gibson, 355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

DRG Funding Corp. v. Secretary of HUD, 76 F.3d 1212 (D.C. Cir. 1996) . . . . . . . . . . . . . . 11

EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621 (D.C. Cir. 1997) . . . . . . . . . . . . 7, 8

Florida Audubon Soc'y v. Bentsen, 94 F.3d 658 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . 12-15, 17

Franklin v. Massachusetts, 505 U.S. 788 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Fund for Animals, Inc. v. Kempthorne, 472 F.3d 872 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . 9

Grand Lodge of the Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9 (D.D.C. 2001) . . . 8

Haase v. Sessions, 835 F.2d 902 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Herbert v. National Academy of Sciences, 974 F.2d 192 (D.C. Cir. 1992) . . . . . . . . . . . . . . . . 8

Hill v. Norton, 275 F.3d 98 (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-15

National Ass'n of Home Builders v. Norton, 298 F. Supp. 2d 68 (D.D.C. 2003), aff'd 415 F.3d 8 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Nat'l Taxpayers Union, Inc. v. United States, 68 F.3d 1428 (D.C. Cir. 1995) . . . . . . . . . . . . . 15

Norton v. S. Utah Wilderness Alliance, 542 U.S. 55 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic, 400 U.S. 62 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Public Citizen v. U.S. Trade Representative, 5 F.3d 549 (D.C. Cir. 1993) . . . . . . . . . . . . . . . 10

Rochester Tel. Corp. v. United States, 307 U.S. 125 (1939) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Sierra Club v. EPA, 292 F.3d 895 (D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Sierra Club v. Morton, 405 U.S. 727 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Spann v. Colonial Village, Inc, 899 F.2d 24 (D.C. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . 14

Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Trudeau v. Fed. Trade Comm'n, 456 F.3d 178 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . 8, 9

U.S. Airwaves Inc. v. FCC, 232 F.3d 227 (D.C. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

United Transp. Union v. ICC, 891 F.2d 908 (D.C. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

<u>STATUTES</u>                                                                                            <u>PAGE</u>

5 U.S.C. § 551(13) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
5 U.S.C. § 704 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9


16 U.S.C. § 1531 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
16 U.S.C. § 1531(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
16 U.S.C. § 1532(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
16 U.S.C. § 1532(15) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
16 U.S.C. § 1533(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
16 U.S.C. § 1533(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
16 U.S.C. § 1533(b)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
16 U.S.C. § 1533(b)(3)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
16 U.S.C. § 1533(b)(3)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
16 U.S.C. § 1533(b)(6)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
16 U.S.C. § 1536 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
16 U.S.C. § 1361 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
16 U.S.C. § 1362 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
16 U.S.C. § 1362(12)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
16 U.S.C. § 1371 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-7
16 U.S.C. § 1374(c)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 18
16 U.S.C. § 1374(d)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## INTRODUCTION

Plaintiffs, nonprofit corporations whose missions include protection of hunters, education of the public regarding hunting, and wildlife conservation, seek to challenge in this action certain statements made by the United States Fish and Wildlife Service ("Service") regarding the effects of the final rule listing the polar bear as a threatened species under the Endangered Species Act ("ESA").  Plaintiffs' claims must fail on two separate grounds.  First, Plaintiffs' Complaint must be dismissed under Fed. R. Civ. Proc. 12(b)(6) for failure to state a claim upon which relief can be granted, because Plaintiffs fail to challenge a final agency action as required for judicial review under the Administrative Procedure Act ("APA").  The challenged statements merely summarize the provisions of the Marine Mammal Protection Act ("MMPA") which the agency will apply in future decisions, and do not determine the rights and obligations of Plaintiffs or their members.  Alternatively, Plaintiffs' claims must be dismissed pursuant to Fed. R. Civ. Proc. 12(b)(1) for lack of standing.  General allegations that the Service's statements harm Plaintiffs and their members by preventing the importation of sport-hunted polar bear trophies from Canada are insufficient to demonstrate standing.  Plaintiffs' allegations fail to establish a reasonable probability that the Service's statements threaten to imminently harm their alleged interests, that there is a fairly traceable connection between the Service's statements and the alleged harm, and that such harm would be redressed by a favorable decision in this case.  Thus, the Court should dismiss Plaintiffs' Complaint in its entirety.

# BACKGROUND

## I.  STATUTORY BACKGROUND

### A.  The Endangered Species Act

The ESA, 16 U.S.C. §§ 1531 et seq., was enacted in 1973 "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species . . ." 16 U.S.C. § 1531(b).  Once a species is listed as endangered or threatened, statutory prohibitions help ensure the survival and recovery of the species.  See, e.g., 16 U.S.C. § 1536 (federal agencies' duty to avoid jeopardizing listed species); § 1538 (prohibitions against take of listed species).  An endangered species is "in danger of extinction throughout all or a significant portion of its range" while a threatened species is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range."  16 U.S.C. § 1532(6), (20).

The ESA delegates authority to determine whether to list a species as endangered or threatened to the Secretaries of Commerce and Interior.[1]  Pursuant to Section 4(a)(1) of the ESA, the Secretary must determine whether a species is threatened or endangered due to one or more of five factors: (A) the present or threatened destruction, modification, or curtailment of its habitat or range; (B) overutilization for commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; or (E)

---

[1] Depending on the species in question, the "Secretary" referred to in the language of the Act may be the Secretary of the Interior or the Secretary of Commerce. 16 U.S.C. § 1532(15). The Secretary of the Interior has jurisdiction over the polar bear. The Service is the agency within the Department of the Interior with delegated responsibility for administering the ESA with respect to those species within Interior's jurisdiction.

other natural or manmade factors affecting its continued existence. 16 U.S.C. § 1533(a)(1).  The

Secretary must make his decision whether to list a species

> solely on the basis of the best scientific and commercial data available to him
> after conducting a review of the status of the species and after taking into account
> those efforts, if any, being made by any State or foreign nation, or any political
> subdivision of a State or foreign nation, to protect such species, whether by
> predator control, protection of habitat and food supply, or other conservation
> practices, within any area under its jurisdiction, or on the high seas.

16 U.S.C. § 1533(b)(1)(A).

The Secretary may make this determination on his own initiative through the "candidate

process" or in response to a petition from an interested person.  See 16 U.S.C. § 1533(a)(1),

(b)(3)(A).  A petition to list or delist triggers a series of statutory deadlines for making findings

as to whether the species warrants listing.  16 U.S.C. § 1533(b).  Within 90 days after receiving a

petition to list or delist a species, the Secretary is required, "to the maximum extent practicable,"

to make a finding as to whether the petition presents substantial scientific or commercial

information indicating that the listing may be warranted ("90-day finding"). 16 U.S.C. §

1533(b)(3)(A). The Secretary is required to publish this finding in the Federal Register.  Id.  If

the Secretary finds that substantial information indicates that listing or delisting may be

warranted, he then has one year from the receipt of the petition to undertake a status review to

determine if a listing or delisting action is warranted ("12-month finding"). 16 U.S.C. §

1533(b)(3)(B).  If the Secretary determines that the listing or delisting is warranted, he must

publish a notice in the Federal Register that includes the complete text of a proposed rule to

implement the action. 16 U.S.C. § 1533(b)(3)(B)(ii).  The Secretary must act on a proposed rule

within one year of the date of its publication. 16 U.S.C. § 1533(b)(6)(A). At that point, he may

promulgate a final rule, withdraw the proposed rule if he finds that there is not sufficient

3

evidence to justify the proposed rule, or extend the one-year period for consideration by not more than six months if he finds that there is "substantial disagreement regarding the sufficiency or accuracy of the available data relevant to the determination or revision concerned . . . ." 16 U.S.C. § 1533(b)(6)(B)(i).

       **B.**      **The Marine Mammal Protection Act**

Congress enacted the MMPA, 16 U.S.C. §§ 1361 et seq., in 1972 to address concerns over the decline of marine mammal populations. Like the ESA, administration of the MMPA is divided between the Department of the Interior and the Department of Commerce. The Secretary of Commerce has jurisdiction over sea lions, whales, porpoises, and seals, and the Secretary of the Interior has jurisdiction over all other marine mammals, including polar bears. 16 U.S.C. § 1362(12)(A). The MMPA, among other things, establishes a general "moratorium" prohibiting the taking or importation of marine mammals or marine mammal products, unless a specified exception applies. Id. § 1371(a); see also id. § 1362(8) (defining "moratorium"); id. § 1371(a)(1) - (a)(6) (describing exceptions); id. § 1373 (authorizing regulations on take and importation). The term "take" means "to harass, hunt, capture, or kill, or attempt to harass, hunt, capture, or kill any marine mammal." 16 U.S.C. § 1362 (13).

One exception allows the Secretary of the Interior to issue permits authorizing the take of marine mammals for importation of polar bear parts taken in sport hunts in Canada, provided that specific requirements are met. See 16 U.S.C. § 1374(c)(5). However, the MMPA further restricts the purposes for which permits may be issued where the marine mammal at issue is "depleted." See id. at § 1371(a)(3)(B). Species that are listed as endangered or threatened under the ESA, such as the polar bear, are considered "depleted" for purposes of the MMPA. Id. at §

1362(1)(C).  In the case of a depleted species, the Secretary may not allow importation "[e]xcept for scientific research purposes, photography for educational or commercial purposes, or enhancing the survival or recovery of [the] species or stock. . . ."  Id. at § 1371(a)(3)(B).

In addition to the moratorium on taking and importation established under 16 U.S.C. § 1371, the MMPA also contains a list of specific prohibited activities.  See id. at § 1372.  This section contains additional restrictions on importation of a marine mammal from a species or stock that has been designated as depleted:

> Except pursuant to a permit for scientific research, or for enhancing the survival or recovery of a species or stock. . ., it is unlawful to import into the United States any marine mammal if such mammal was –
>
>> (1) pregnant at the time of taking;
>>
>> (2) nursing at the time of taking, or less than eight months old, whichever occurs later;
>>
>> (3) taken from a species or population stock which the Secretary has, by regulation published in the Federal Register, designated as a depleted species or stock; or
>>
>> (4) taken in a manner deemed inhumane by the Secretary.
>
> Notwithstanding the provisions of paragraphs (1) and (2), the Secretary may issue a permit for the importation of a marine mammal, if the Secretary determines that such importation is necessary for the protection or welfare of the animal.

Id. at § 1372(b) (emphasis added).  Thus, if the marine mammal originates from a species or stock that has depleted status, Section 1372(b) permits importation only for purposes of scientific research or enhancement of the survival or recovery of the species or stock.

## II.    FACTUAL BACKGROUND

On May 15, 2008, the U.S. Fish and Wildlife Service ("Service" or "FWS") issued a final rule listing the polar bear as a threatened species throughout its range.  See 73 Fed. Reg. 28,212

(May 15, 2008) ("Final Rule").  The Final Rule examines in detail the threats to the polar bear

and its habitat that led the Service to find that the species is likely to become endangered within

the foreseeable future.  See id. at 28,253-28,293.  In responding to comments from peer

reviewers and the public, the Service noted that:

> under the MMPA, the polar bear will be considered a "depleted" species on the
> effective date of this listing.  As a depleted species, imports could only be
> authorized under the MMPA if the import enhanced the survival of the species or
> was for scientific research.  Therefore, authorization for the import of sport-
> hunted trophies will no longer be available under section 104(c)(5) of the MMPA.

Id. at 28,236.  See also id. at 28,242.  While "acknowleg[ing] the important contribution to

conservation from scientifically-based sustainable use programs," the Service noted that "the

benefits accrued to the species through the import program do not offset or reduce the overall

threat to polar bears from loss of sea ice habitat."  Id.  The Service did not consider the effect of

the listing on the importation of polar bear trophies under the MMPA in determining whether to

list the polar bear as threatened.  Id. ("The effect of the listing, in this case an end to the import

provision under Section 104(c)(5) of the MMPA, is not one of the listing factors.").

On May 23, 2008, Plaintiffs filed this action challenging the Service's statement in the

Final Rule that "'authorization for the import of sport-hunted trophies would no longer be

available under section 104(c)(5) of the [Marine Mammal Protection Act ("MMPA")].'"

Complaint for Declaratory and Injunctive Relief, Dkt. No. 1 ("Complaint"), at ¶ 1, quoting 73

Fed. Reg. 28,242.  Plaintiffs allege that members of Safari Club International ("SCI") have sport-

hunted polar bears in Canada, and that "[m]any of these individuals submitted to the FWS

applications to import polar bear trophies into the United States."  Id. at ¶ 4.  Plaintiffs further

allege that other members who successfully hunted polar bears have not yet submitted their

6

import applications to the Service.  Id.  Plaintiffs ask the Court to set aside "the portions of the

Final Rule establishing an import ban" and "order[ ] the FWS to continue accepting and

processing polar bear import permit applications" under the MMPA.  Id. at ¶ 9.

## STANDARD OF REVIEW

Federal Defendants bring this motion to dismiss under Fed. R. Civ. Proc. 12(b)(1) (lack

of subject-matter jurisdiction) and 12(b)(6) (failure to state a claim upon which relief can be

granted).  To prevail on a motion to dismiss under Rule 12(b)(6), the defendant must show

"'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief.'"  EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir.

1997), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The court must accept as true all

of the factual allegations contained in the complaint and draw all inferences in favor of the

plaintiff.  See EEOC, 117 F.3d at 625.  However, the court need not "'accept as true a legal

conclusion couched as a factual allegation,'" or "'accept inferences drawn by plaintiffs if such

inferences are unsupported by the facts set out in the complaint.'"  Trudeau v. Fed. Trade

Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (citations omitted).  The court may consider only

the facts alleged in the complaint, any documents attached to or incorporated by reference in the

complaint, and matters of which the court may take judicial notice.  EEOC, 117 F.3d at 624.

Rule 12(b)(1) governs motions to dismiss for lack of standing.  See Haase v. Sessions,

835 F.2d 902, 906 (D.C. Cir. 1987).  On a motion to dismiss under Fed. R. Civ. P. 12(b)(1), even

though a defendant moves to dismiss the complaint, the plaintiff bears the burden of proving that

the Court has jurisdiction to decide the case.  See Kokkonen v. Guardian Life Ins. Co., 511 U.S.

375, 377 (1994) ("Federal courts are courts of limited jurisdiction . . . .  It is to be presumed that

a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests

upon the party asserting jurisdiction") (citations omitted).  See also Grand Lodge of the Fraternal

Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) ("Under Rule 12(b)(1), the

plaintiff bears the burden of establishing that the court has jurisdiction.").  In considering a

motion to dismiss under Rule 12(b)(1), the court may consider not only the allegations in the

complaint, but also facts outside the pleadings.  See Herbert v. National Academy of Sciences,

974 F.2d 192, 197 (D.C. Cir. 1992).

## ARGUMENT

I.      **THE DISCUSSION IN THE FINAL RULE RELATED TO IMPORTATION OF POLAR BEAR TROPHIES IS NOT A CHALLENGEABLE FINAL AGENCY ACTION.**

Federal Defendants are entitled to judgment on Plaintiffs' claims for relief because, even

accepting as true the allegations in Plaintiffs' Complaint, they have failed to state a claim for

which relief can be granted.  Plaintiffs base their claims on an excerpt of the Final Rule which is

not a challengeable final agency action subject to judicial review under the APA.

Because the MMPA does not authorize citizen suits, challenges to agency action under

the MMPA must be brought pursuant to Section 704 of the APA, 5 U.S.C. § 704.  See Hill v.

Norton, 275 F.3d 98, 103 (D.C. Cir. 2001), superseded by statute on other grounds as stated in

Fund for Animals, Inc. v. Kempthorne, 472 F.3d 872, 873 (D.C. Cir. 2006).  "Agency action" is

defined for purposes of the APA as "the whole or a part of an agency rule, order, license,

sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13).  Each

of these categories of "agency action" "involve circumscribed, discrete agency actions, as their

definitions make clear. . . ."  Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 62 (2004); id.

8

at 63 (failure to act "is properly understood to be limited, as are the other items in § 551(13) to a *discrete* action") (emphasis in original).

Section 704 of the APA requires that the agency action in question be final before a party may seek judicial review.  5 U.S.C. § 704.  See also Trudeau, 456 F.3d at 185; National Ass'n of Home Builders v. Norton, 298 F. Supp. 2d 68, 75 (D.D.C. 2003) aff'd, 415 F.3d 8 (D.C. Cir. 2005) (citing 5 U.S.C. §§ 702, 704) ("The APA provides for judicial review only of 'agency action' that is 'final.'"); Fund for Animals, Inc. v. BLM, 460 F.3d 13, 20 (D.C. Cir. 2006) ("Courts may 'intervene in the administration of laws only when, and to the extent that, a specific 'final agency action' has an 'actual or immediately threatened effect.'") (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 894 (1990)).  The Supreme Court has established a two-part test to determine when an agency action is reviewable as "final."  Bennett v. Spear, 520 U.S. 154, 177-78 (1997).  "First, the action [under review] must mark the consummation of the agency's decisionmaking process. . . it must not be of a merely tentative or interlocutory nature." Id.  Second, "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow'. . . ."  Id., quoting Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic, 400 U.S. 62, 71 (1970).

Application of these principles to this case illustrates that the Service's statements in the Final Rule regarding importation of sport-hunted polar bear trophies do not constitute final agency action within the meaning of the APA.  Plaintiffs do not directly challenge the decision announced in the Final Rule: listing of the polar bear as a threatened species throughout its range.  Rather, they challenge isolated statements in the preamble to the final regulation discussing the separate issue of how the listing of the polar bear under the ESA may affect the

Service's future enforcement of the MMPA.  See 73 Fed. Reg. at 28,242 (responding to public comments raising concerns about sport hunting of polar bears).  The challenged discussion does not mark the consummation of the agency's decisionmaking process on any particular application for an import permit, but is merely a statement of the applicability of the MMPA, which the agency will implement in future decisions if necessary.  See Franklin v. Massachusetts, 505 U.S. 788, 797 (1992) ("An agency action is not final if it is only 'the ruling of a subordinate official,' or 'tentative.'  The core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties.") (internal citation omitted).  See also Public Citizen v. U.S. Trade Representative, 5 F.3d 549, 551 (D.C. Cir. 1993).  The Service's statements regarding importation of sport-hunted polar bear trophies are generic, and not the result of a particular decisionmaking process carried out by the agency.

Moreover, even if the challenged discussion could be considered the consummation of an agency decisionmaking process, it is not final agency action because it does not determine Plaintiffs' rights or obligations.  Plaintiffs allege that SCI members have hunted polar bears in Canada and desire to import their trophies, and that without an import permit from the Service these individuals cannot import their trophies.  Complaint at ¶40.  The Service did not, in the Final Rule, deny any pending import applications for sport-hunted polar bear trophies.  The Final Rule merely summarizes the legal provisions the Service will apply moving forward.  See 73 Fed. Reg. at 28,236 ("[A]uthorization for the import of sport-hunted trophies will no longer be available under section 104(c)(5) of the MMPA.") (emphasis added).  Plaintiffs must challenge "the specific implementation of the broader agency policy."  Fund for Animals, 460 F.3d at 22.

Here, the statements in the Final Rule are not final because they do not themselves adversely affect SCI's member, but "'only affects [their] rights adversely on the contingency of future administrative action.'" <u>DRG Funding Corp. v. Secretary of HUD</u>, 76 F.3d 1212, 1214 (D.C. Cir. 1996), quoting <u>Rochester Tel. Corp. v. United States</u>, 307 U.S. 125, 130 (1939).[2]  Because the challenged portions of the Final Rule do not have any legal effect on Plaintiffs or their individual members, they are not final agency action reviewable under the APA.  Therefore, Plaintiffs' Complaint must be dismissed because it fails to state a claim for which relief may be granted.

## II.     PLAINTIFFS LACK STANDING TO CHALLENGE THE STATEMENTS IN THE FINAL RULE RELATED TO IMPORTATION OF POLAR BEAR TROPHIES.

Alternatively, Plaintiffs' claims must be dismissed for lack of standing.  Plaintiffs lack standing to bring their claims because they have not alleged facts showing that they have suffered any injury-in-fact that is fairly traceable to the challenged agency action.  Plaintiffs cannot demonstrate that they or their members suffered any concrete, particularized injury as a result of the discussion in the Final Rule regarding importation of sport-hunted polar bear trophies.

Because the United States Constitution limits the jurisdiction of federal courts to actual cases and controversies, plaintiffs bear the burden of proving that they have standing to sue, <u>see</u>

---

[2] On July 29, 2008, the Service sent letters to all applicants whose import applications for sport-hunted polar bear trophies taken on or after February 18, 1997 were pending as of May 15, 2008, notifying them that no permit authorization is currently available under the MMPA to conduct the requested activity, and that the Service is administratively closing their application file and returning their permit application processing fee to them.  <u>See</u> Federal Defendants' Answer to Plaintiffs' Complaint for Declaratory and Injunctive Relief, Dkt. No. 16 (July 31, 2008), at ¶ 4. A sample letter, with the recipient's name and address redacted, is attached hereto as Exhibit 1 for the Court's information.

Florida Audubon Soc'y v. Bentsen, 94 F.3d 658, 661 (D.C. Cir. 1996), and standing must exist as of the date an action is filed.  See U.S. Airwaves Inc. v. FCC, 232 F.3d 227, 232 (D.C. Cir. 2000).  To meet their burden, Plaintiffs must allege facts demonstrating that: (1) they have "suffered an 'injury-in-fact'" to a legally protected interest that is both "concrete and particularized" and "actual or imminent," as opposed to "conjectural" or "hypothetical;" (2) there is a "causal connection between the injury and the conduct complained of;" and (3) it is "likely" – not merely "speculative" – "that their injury will be 'redressed by a favorable decision.'"  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  Where a plaintiff alleges "procedural injury" – such as Plaintiffs' Third Claim for Relief, alleging that the Service failed to provide notice and an opportunity for the public to comment on the challenged statements in the Final Rule – he or she must show that the alleged procedural violation "will cause a distinct risk to a particularized interest of the plaintiff."  Florida Audubon Soc'y, 94 F.3d at 664; see also Lujan, 504 U.S. at 572-74.  Further, as an associational plaintiff, Safari Club International ("SCI") has standing to sue on behalf of its members only if: (1) "at least one of its members would have standing to sue in his own right;" (2) "the interests the association seeks to protect are germane to its purpose;" and (3) "neither the claim asserted nor the relief requested requires that an individual member of the association participate in the lawsuit."  Sierra Club v. EPA, 292 F.3d 895, 898 (D.C. Cir. 2002).  In this case, because SCI's members lack standing to sue in their own right, SCI lacks standing to assert their claims.

### A.    Plaintiffs Fail To Allege That They Have Suffered An Injury-In-Fact.

First, Plaintiffs have failed to allege facts that indicate that they or SCI's members have suffered an injury-in-fact that is concrete and particularized, as well as actual or imminent.  A

plaintiff must show that it has suffered a "concrete and particularized injury" in order to demonstrate that he or she has "a defined and personal stake in the outcome of the litigation. . . ." Florida Audubon Soc'y, 94 F.3d at 663.  Here, Plaintiffs do not allege that the Final Rule operated as a denial of any permit application from an SCI member.  While they allege generally that members "cannot import legally harvested polar bears from Canada," see Complaint at ¶ 57, they provide no example of a final decision by the Service preventing an SCI member from importing a polar bear trophy.

Nor have Plaintiffs alleged facts showing that they or any individual SCI members have suffered actual or imminent injury.  Plaintiffs' alleged injury stems from the possibility that the Service will act in accordance with the statements in the Final Rule regarding the MMPA's restrictions, thereby denying import applications from Plaintiffs' members.  Plaintiffs' general allegations that the Service is "refusing to process or accept applications," Complaint at ¶ 71, are insufficient to demonstrate imminent injury and leave open the possibility that no injury will occur at all.  See Florida Audubon Soc'y, 94 F.3d at 663 ("A plaintiff must also show that the particularized injury is at least imminent in order to reduce the possibility that a court might unconstitutionally render an advisory opinion by 'deciding a case in which no injury would have occurred at all.'") (quoting Lujan, 504 U.S. at 564 n.2).  Such allegations of possible future harm do not rise to the level of a concrete or particularized injury sufficient to confer standing.

Plaintiffs' allegations of their general interest in the "sound management and conservation of polar bears" are also insufficient to demonstrate standing.  See Complaint at ¶ 17.  An organization's "mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself

13

to render the organization 'adversely affected' or 'aggrieved.'" <u>Sierra Club v. Morton</u>, 405 U.S.

727, 739 (1972).  Generalized allegations of wrongdoing, absent a showing of concrete injury to

members of the organization stemming from the defendant's conduct, are insufficient to establish

standing.  <u>See</u> <u>Spann v. Colonial Village, Inc</u>, 899 F.2d 24, 27 (D.C. Cir. 1990) ("Just as an

individual lacks standing to assert 'generalized grievances' about the conduct of Government, so

an 'organization's abstract concern with a subject that could be affected by an adjudication does

not substitute for the concrete injury required by Art. III.'") (citations omitted).  Here, because

the Final Rule does not directly operate to prevent the importation of polar bear trophies or cause

the loss of conservation benefits from sport hunting, Plaintiffs cannot show that their "'discrete

programmatic concerns are being directly and adversely affected by the challenged action.'" <u>See</u>

<u>Common Cause v. Fed. Election Comm'n</u>, 108 F.3d 413, 417 (D.C. Cir. 1997), quoting <u>Nat'l</u>

<u>Taxpayers Union, Inc. v. United States</u>, 68 F.3d 1428, 1433 (D.C. Cir. 1995).

Finally, Plaintiffs cannot rely on "procedural injury" to satisfy the injury-in-fact

requirement.  Plaintiffs allege that the Service violated the APA by failing to give the public

adequate notice and an opportunity to comment on the issue of whether the polar bear is a

depleted species under the MMPA.  <u>See</u> Complaint at ¶¶ 62-63.  "The mere violation of a

procedural requirement. . . does not permit any and all persons to sue to enforce the

requirement." <u>Florida Audubon Soc'y</u>, 94 F.3d at 664.  Rather, an individual may only sue to

enforce a procedural right "so long as the procedures in question are designed to protect some

threatened concrete interest of his that is the ultimate basis of his standing." <u>Lujan</u>, 504 U.S. at

573, n.8.  <u>See also</u> <u>Florida Audubon Soc'y</u>, 94 F.3d at 664 (plaintiff alleging procedural violation

must show "a causal connection between the government action that supposedly required the

14

disregarded procedure and some reasonably increased risk of injury to its particularized

interest").  In this case, even accepting as true Plaintiffs' allegations of an interest in importation

of legally harvested polar bears from Canada and the conservation benefits of sport hunting, see

Complaint at ¶ 65, Plaintiffs cannot demonstrate a reasonable probability that the discussion in

the Final Rule, which is merely a statement of the law which the agency will apply as necessary

in future decisions, threatens to harm these alleged interests.

      **B.**    **Plaintiffs Have Failed To Allege A Causal Connection Between Alleged
Injury To Their Members And Federal Defendants' Conduct.**

Nor have Plaintiffs alleged a sufficient causal connection between the challenged

discussion in the Final Rule and the alleged injury to their members.  To establish standing,

Plaintiffs must allege "a fairly traceable connection between [their] injury and the complained-of

conduct of the defendant[s]."  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103 (1998).

Here, even accepting all allegations of the Complaint as true, Plaintiffs cannot show that the

Final Rule is the cause of the harm that they allege.

Plaintiffs claim that they have standing because their members' interests in polar bear

conservation and ability to import polar bear trophies will be affected by the Final Rule.  See

Complaint at ¶ 17.  However, as explained supra at Section I, the challenged statements in the

Final Rule do not have any legal effect on Plaintiffs or their members.  The Final Rule sets forth

the MMPA provisions restricting the Service's authority to issue permits for importation of polar

bear trophies, but does not announce a decision with respect to any individual permit

applications.  Even accepting as true Plaintiffs' allegation that "the Service has stopped

processing applications for polar bear import permits as of May 15, 2008," see id. at ¶ 40, any

alleged harm would arise not from the Final Rule itself, but from a future decision by the Service

to deny or refuse to process specific import applications submitted by their members.  Because

Plaintiffs' allegations of harm hinge on speculation regarding the Service's future actions, they

have failed to allege a sufficient causal connection to show that they have standing to challenge

the Final Rule.  See, e.g., United Transp. Union v. ICC, 891 F.2d 908, 912 (D.C. Cir. 1989)

(court may "reject as speculative allegations of future injuries. . .").

**C.      Plaintiffs Have Failed To Allege That It Is Likely That Their Alleged Injury
           Would Be Redressed By A Favorable Decision.**

Even if the Court were to agree that Plaintiffs sufficiently alleged injury-in-fact and a

causal connection between Federal Defendants' conduct and the alleged injury to their members,

their alleged injury would not be redressed by a favorable decision in this case.  Even accepting

as true all of Plaintiffs' allegations, they fail to show that "the relief sought, assuming that the

court chooses to grant it, will likely alleviate the particularized injury" that they allege.  Florida

Audubon Soc'y, 94 F.3d at 663-664.

Plaintiffs' Prayer for Relief makes clear that the instant action challenging the Final Rule

listing the polar bear as threatened is not an appropriate means to achieve their desired result.

Plaintiffs ask the Court to set aside those portions of the preamble to the Final Rule stating that,

by virtue of the listing of the polar bear as a threatened species under the ESA: (a) sport-hunted

polar bear trophies cannot be imported into the United States; and (b) sport-hunted polar bear

trophies harvested before May 15, 2008 cannot be imported into the United States.  Complaint at

21 (Prayer for Relief).  Plaintiffs further ask the Court to enjoin the Service from "refusing to

process polar bear import applications" and to order the Service "to continue to process such

applications."  Id.  Even if the challenged portions of the preamble could be set aside as arbitrary

and capricious under the APA – which they cannot, because they are not final agency action –

16

the broad relief sought by Plaintiffs would not be appropriate. Rather, to the extent the Service has acted on import applications submitted by SCI members, see supra n.3, Plaintiffs must challenge the Service's decisions with respect to those individual applications, as required by Section 104(d) of the MMPA.

The MMPA provides the sole remedy for challenging the denial or issuance of a permit for importation of polar bear trophies sport-hunted in Canada. See 16 U.S.C. § 1374(d)(6). Any applicant or any party opposed to the issuance or denial of a permit may seek judicial review of the determination within 60 days of the date on which the permit was issued or denied. Id. at § 1374(d)(6) (specifying that challenge must be filed in "the United States district court for the district wherein the applicant for a permit resides, or has his principal place of business, or in the United States District Court for the District of Columbia. . ."). Thus, the MMPA provides the sole jurisdictional basis for a court to review a determination by the Service to deny an application under 16 U.S.C. § 1374(c)(5) for import of a sport-hunted polar bear trophy from Canada. If the Service has denied specific applications submitted by Plaintiffs' members, Plaintiffs must seek judicial review of the denials pursuant to the MMPA rather than seeking a broad injunction from this Court that circumvents the statutory scheme.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint for failure to state a claim for which relief may be granted because they have not challenged a final agency action subject to judicial review under the APA. Alternatively, the Court lacks subject matter jurisdiction because Plaintiffs lack standing to bring their claims. Thus, Plaintiffs' Complaint must be dismissed with prejudice.

17

Respectfully submitted this 3rd day of March, 2009.

JOHN C. CRUDEN
Acting Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division
JEAN E. WILLIAMS, Chief
Wildlife and Marine Resources Section
LISA LYNNE RUSSELL, Assistant Chief

/s/ Kristen Byrnes Floom
KRISTEN BYRNES FLOOM
Trial Attorney (DC Bar No. 469615)
Wildlife and Marine Resources Section
601 D Street, N.W.
Washington, D.C.  20004
Telephone: (202) 305-0340
Facsimile: (202) 305-0275
Kristen.Floom@usdoj.gov

*Attorneys for Federal Defendants*