UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN RE POLAR BEAR ENDANGERED SPECIES ACT LISTING AND § 4(d) RULE LITIGATION | ) ) ) ) | Misc. Action No. 08-0764 (EGS) MDL Docket No. 1993 |
| This Document Relates To: *Conservation Force, et al. v. Salazar, et al.*, No. 1:09-cv-245 | ) ) ) ) ) | |

**THE HUMANE SOCIETY OF THE UNITED STATES,
INTERNATIONAL FUND FOR ANIMAL WELFARE, AND
<u>DEFENDERS OF WILDLIFE'S MOTION TO INTERVENE</u>**

Pursuant to Rule 24 of the Federal Rules of Civil Procedure, The Humane Society of the United States ("HSUS"), International Fund for Animal Welfare ("IFAW"), and Defenders of Wildlife ("Defenders") hereby move to intervene in this action. Proposed intervenors meet the criteria for intervention of right under Rule 24(a). Alternatively, the proposed intervenors seek permissive intervention pursuant to Rule 24(b).

In support of this motion, proposed intervenors submit the accompanying memorandum of law, eight declarations, a Proposed Answer, and a Proposed Order. Proposed intervenors' counsel has contacted counsel for the plaintiffs, and plaintiffs oppose the motion. Defendants take no position.

                Respectfully Submitted,

                 <u>/s/ *Howard M. Crystal*</u>
                Howard M. Crystal (D.C. Bar No. 446189)
                Eric R. Glitzenstein (D.C. Bar No. 358287)
                Meyer Glitzenstein & Crystal
                1601 Connecticut Ave., N.W., Suite 700
                Washington, D.C. 20009
                (202) 588-5206

March 20, 2009            Attorneys for Proposed-Intervenors

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ──────────────────────────────── ) <br> IN RE POLAR BEAR ENDANGERED ) <br> SPECIES ACT LISTING AND § 4(d) ) <br> RULE LITIGATION ) <br> ──────────────────────────────── ) <br> ) <br> This Document Relates To: ) <br> *Conservation Force, et al. v.* ) <br> *Salazar, et al.*, No. 1:09-cv-245 ) <br> ──────────────────────────────── ) | Misc. Action No. 08-0764 (EGS) <br> MDL Docket No. 1993 |

**MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
BY THE HUMANE SOCIETY OF THE UNITED STATES, INTERNATIONAL FUND
FOR ANIMAL WELFARE, AND DEFENDERS OF WILDLIFE**

**INTRODUCTION**

Pursuant to Rule 24 of the Federal Rules of Civil Procedure, and the Court's February 26, 2009 Scheduling Order ("Scheduling Order") (see Misc. Action No. 08-764, DN 20), The Humane Society of the United States ("HSUS"), International Fund for Animal Welfare ("IFAW"), and Defenders of Wildlife ("Defenders") respectfully request leave to intervene in this case, in which plaintiffs appear to seek relief that would require the U.S. Fish and Wildlife Service ("FWS") to grant permits authorizing hunters to import polar bear body parts into the United States. As discussed below, HSUS, IFAW and Defenders are already intervenors in several other suits – which are also a part of this Multi-District proceeding – raising similar, if not identical, arguments regarding the import of polar bear trophies.

HSUS, IFAW and Defenders are wildlife protection and conservation organizations dedicated to the protection of the polar bear, among other species. The relief plaintiffs seek in this case would substantially impair these organizations' interests in the species, as well as their members' appreciation and enjoyment of polar bears in their natural environment. Accordingly,

and particularly in light of the Court's previous intervention rulings, these parties respectfully request that the Court grant them intervention of right or, alternatively, permissive intervention, in this action.

## BACKGROUND

**A.     Statutory Framework**

    **1.     The Endangered Species Act**

Recognizing that all of the nation's "species of fish, wildlife and plants are of esthetic, ecological, educational, historical, recreational and scientific value to the Nation and its people," 16 U.S.C. § 1531(a)(3), Congress enacted the ESA with the express purpose of providing both "a means whereby the ecosystems upon which endangered and threatened species depend may be conserved, [and] a program for the conservation of such endangered species and threatened species . . . ." Id. at § 1531(b). Under the ESA, a species is listed as "endangered" where it is "in danger of extinction throughout all or a significant portion of its range . . . ." 16 U.S.C. § 1532(6). A species is listed as "threatened" where it "is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." Id. at § 1532(20).

Once a species is listed as endangered under the ESA, it is entitled to a number of protections. For example, it becomes illegal for anyone to "take" the species, 16 U.S.C. § 1538(a)(1); 50 C.F.R. §§ 17.21, which includes "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19). It also becomes illegal to "import any such species into, or export any such species from the United States." Id. § 1538(a)(1)(A).

### 2.     The Marine Mammal Protection Act

Recognizing that "certain species and population stocks of marine mammals are, or may be, in danger of extinction or depletion as a result of man's activities," Congress passed the Marine Mammal Protection Act ("MMPA"), 16 U.S.C. § 1361, et seq., to insure that they are "protected and encouraged to develop to the greatest extent feasible . . . to maintain the health and stability of the marine ecosystem." Id. § 1361. The MMPA prohibits the "take" of all marine mammals, including the polar bear. Id. § 1372(a). To "take" under the MMPA includes to "harass, hunt, capture, or kill, or attempt to harass, hunt, capture, or kill, any marine mammal." Id. § 1362(13).

Under the MMPA, a species is automatically designated as "depleted" at the time it "is listed as an endangered or a threatened species under the Endangered Species Act of 1973." Id. The MMPA further provides that "no permit may be issued for the taking of any marine mammal which has been designated by the Secretary as depleted, and no importation may be made of any such mammal." Id. § 1371(a)(3)(B) (emphasis added). Thus, ESA listing also has the legal effect of prohibiting imports under the MMPA.

### B.     Relevant Facts

### 1.     The Listing of the Polar Bear Under The ESA.

The FWS listed the polar bear as a threatened species in May, 2008. 73 Fed. Reg. 28,212 (May 15, 2008). In listing the species the Service explained that, prior to 1973, the polar bear was declining due to "severe overharvest" that occurred in light of "the economic or trophy value of their pelts." Id. at 28,238. At that time the range countries – Canada, Denmark, Norway, Russia, and the U.S. – entered into a conservation agreement that largely ended this

hunting.  Id.  In addition, with passage of the MMPA in 1972 the taking or importing of polar bears or their body parts also largely became illegal under U.S. law (with exceptions for hunting by Native peoples for subsistence purposes).  Id.

Although the end of large-scale hunting provided some protection to the polar bear, other threats have continued to cause population declines, including climate change-induced reductions in sea ice; reduced prey availability; and continued overharvest in certain areas.  Id. at 28,255-28,292.  In light of these threats, the Service concluded that the polar bear is likely to become an endangered species "within the foreseeable future," and consequently listed the species as threatened under the ESA.  Id. at 28,238.

At the time the polar bear was listed, litigation over the species was pending in the Northern District of California.  See Center for Biological Diversity v. Kempthorne, No. C 08-1339 (N.D. Cal.).  After the listing, Conservation Force and others filed briefs in that proceeding arguing that the Court in that case should order the FWS to permit certain polar bear body parts to be imported into the U.S. despite the listing.  In responding to those arguments, the federal defendants explained that while prior to the ESA listing MMPA import permits were routinely granted under 16 U.S.C. § 1374(c)(5) – which authorized such permits for polar bears legally harvested in Canada where certain conditions were satisfied –  as a result of the ESA listing hunters may no longer import the body parts of polar bears killed in Canada into the United States.  Case No. 08-1339, DN 81.  The district court refused to provide the relief requested.  Id., DN 125.

**2. The Lawsuits Over The Listing Of The Polar Bear And The Court's Prior Intervention Rulings.**

Numerous lawsuits were filed over the listing of the polar bear. The first suit in this forum was filed by Safari Club International ("SCI"), and challenged the ban on imports of polar bear body parts that resulted from the listing. See Safari Club Int'l. v. Kempthorne, No. 08-881 (EGS) (D.D.C.).

In June, 2008, HSUS, IFAW and Defenders filed a motion to intervene in that suit, explaining their significant interest in insuring that the ban on polar bear imports remains in effect. See CA 08-881, DN 10 (June 16, 2008). The following month the Court granted the motion to intervene under Rule 24(b). See Minute Order of July 10, 2008.

Subsequently, the Judicial Panel on Multi-district Litigation consolidated all of the polar bear lawsuits in this forum. See Transfer Order, In Re Polar Bear Endangered Species Act Listing and § 4(d) Rule Litigation, M.D.L. No. 1993 (J.P.M.L., Dec. 3, 2008). The number of those suits has grown and now includes two additional cases, originally filed in federal district court in Pennsylvania, also challenging polar bear import denials, Hershey v. Kempthorne, No. 08-4660 (E.D. Pa.) and Kreider v. Kempthorne, No. 08-4662 (E.D. Pa.). See Scheduling Order at 7.

The Multi-district proceeding also includes the present action, which Conservation Force filed on February 9, 2009. Conservation Force v. Salazar, No. 09-245 (EGS) (D.D.C.). As best the applicants can discern, Conservation Force's Complaint alleges that the FWS violated the ESA by listing the Canadian population of polar bears without recognizing the purported conservation benefits of polar bear hunting, and also unlawfully prohibiting the import of polar bear "trophies" taken in Canadian sport hunts. See Complaint ¶¶ 2, 7. In support of this

allegation, plaintiffs argue, incorrectly, that sport hunting is "linked to the increase in the number of [polar] bears" and does "not compete[] with or threaten[]" the existence of the species. Id. at ¶ 4.[1] Thus, Conservation Force asks this court to "suspend[] the … rule prohibiting the importation of Canadian polar bear trophies, particularly those taken before the effective date of the listing." Id. at 58.

The lawsuit previously filed by SCI in this court contains allegations regarding the ESA listing's effect on polar bear trophy imports very similar to those made here by Conservation Force. Thus, that Complaint also alleges that SCI members have pending permit applications for polar bear trophy imports, and requests that the Court order the FWS to process those and other permit applications despite the listing. See Safari Club Int'l v. Salazar, No. 1:08-cv-0881 (EGS) (D.D.C.) (Complaint filed Sept. 8, 2008), at ¶ 4 and p. 21.

On March 13, 2009, the parties to the Multi-district proceeding filed a proposed Stipulation governing intervention in the consolidated cases. See Proposed Stipulation and Order Regarding Intervention (Mar. 13, 2009), Misc. Action No. 08-764, DN 28. Recognizing that multiple cases have been filed raising similar issues, and that the Court has already indicated that joint briefing will be required, the Stipulation sought to avoid further unnecessary motions practice by permitting parties to become intervenors in additional cases. The Court signed the Stipulation on March 17, 2009, id., DN 33, thereby making HSUS, IFAW and Defenders intervenor-defendants in the cases originally filed in Pennsylvania.

---

[1] As demonstrated in the attached declarations, these allegations are factually incorrect. For example, prior to the enactment of the MMPA in 1972, "sport hunting of polar bears was a primary cause of the dramatic decline of polar bear populations." Declaration of Naomi Rose, ¶ 10. Further, "trophy hunters target the largest and fittest bears – the animals who may be critical to ensuring the survival of polar bear populations. Id. at ¶ 16.

6

The plaintiffs in the present action, Conservation Force v. Salazar, No. 09-235, refused to participate in the Stipulation. Accordingly, in order to become parties to this action HSUS, IFAW and Defenders have had no alternative but to file the present motion.[2]

## ARGUMENT

**I.   THE PROPOSED INTERVENORS ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT.**

Prior to Congress's 1966 amendments to Rule 24, courts had applied stringent criteria in determining whether seemingly affected parties should be allowed to intervene in ongoing litigation as a matter of right. See Nuesse v. Camp, 385 F.2d 694, 701 (D.C. Cir. 1967). The 1966 amendments relaxed the intervention standards considerably. Rule 24(a)(2) now provides:

> [o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). As explained in Nuesse, the D.C. Circuit's seminal opinion on intervention, the 1966 revision was "obviously designed to liberalize the right to intervene in

---

[2] As the Court indicated at the Initial Scheduling Conference in this matter on February 9, 2009, Intervenors anticipate that the Court will direct Conservation Force et al. to file one set of consolidated briefs with SCI and the Pennsylvania plaintiffs concerning the polar bear import issue, and that the Intervenors in all of those cases will be directed to file one consolidated set of briefs in response. As a practical matter, intervention in this case will therefore simply insure that the Intervenors – who are already intervenor-defendants in the SCI and Pennsylvania cases – will be able to address any distinct arguments made by Conservation Force et al. in responding to all of the plaintiffs on the import ban issue.

federal actions." Id.  Accordingly, an applicant is entitled to intervene under Rule 24(a)(2) by demonstrating "(i) an interest in the transaction, (ii) which the applicant may be impeded in protecting because of the action, (iii) that is not adequately represented by others," and that the motion to intervene is timely.  Id. at 699.   As demonstrated below, the proposed intervenors clearly satisfy each of these standards.

### A. The Proposed Intervenors' Motion Is Timely.

Whether a motion to intervene is timely is a matter left to the Court's discretion, to be "determined from all the circumstances."  NAACP v. New York, 413 U.S. 345, 366 (1973).  Plainly, where, as here, the applicants for intervention are seeking party status at the outset of the litigation, and within the time provided by the Court's scheduling Order, the motion is timely.  See Scheduling Order at 4(Ordering that motions to intervene in pending suits be filed no later than March 20, 2009).

### B. The Proposed Intervenors Have Legally Cognizable Interests That May Be Impaired By The Relief Sought By Plaintiffs.

Proposed intervenors clearly have an "interest" in this litigation that is protectable within the meaning of Rule 24(a).  The D.C. Circuit has construed the protectable "interest" requirement of Rule 24(a)(2) to mean that the proposed intervenors must demonstrate that they have Article III standing.  Mova Pharm. Corp. v. Shalala, 140 F.3d 1060, 1074 (D.C. Cir. 1998); see also Fund for Animals, Inc.  v. Norton, 322 F.3d 728, 732-33 (D.C. Cir. 2003).  Here, the proposed intervenors satisfy the requirements for Article III standing – i.e., injury in fact, causation, and redressability.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).[3]

---

[3] Only one party needs to have standing for the Court to grant intervention. See, e.g., Military Toxics Project v. EPA, 146 F.3d 948, 953-54 (D.C. Cir. 1998) ("because [one applicant] has standing, we need not determine whether the other intervenor-applicants . . . also have

8

### 1. The Membership Organizations Have Standing To Sue On Behalf Of Their Members.

It is well established that an organization seeking to establish standing on behalf of its members may do so by demonstrating that at least one of its members would otherwise have standing to sue in their own right, that the interests the organization seeks to protect are "germane" to its overall purpose, and that neither the claim asserted nor the relief requested requires the participation of individual members. Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977).

Here, as demonstrated in the attached declarations,[4] the proposed intervenors are all membership organizations, and the protection of polar bears from sport hunting is clearly germane to their organizational purposes. These organizations have long been involved in polar bear conservation efforts, including advocating for the listing of the polar bear and seeking a ban on the import of polar bear body parts. See Declarations of Noami Rose ("Rose Decl.") ¶¶ 4-7; Else Poulsen ¶ 2 ("Poulsen Decl."); Jim Pissot ¶¶ 2-7 ("Pissot Decl.").

In addition, the organizations have members who travel to Canada in order to observe, study, and otherwise enjoy polar bears, including the bear populations that plaintiffs and their members hunt. See, e.g., Declarations of Carolyn Potts ¶¶ 4-18; Robert Laidlaw ¶¶ 406; Vicki Burns ¶¶ 4-7; Lorie Zerweck ¶¶ 5-10; see also Poulsen Decl. ¶¶ 3-12; Pissot Decl. ¶ 3. In light of the concrete conservation benefits associated with the ESA listing of the polar bear and consequent designation of the polar bear as a depleted species under the MMPA, including the prohibition on the import of polar bear body parts into the United States, these individuals are

---

standing").

[4] All but one of these declarations (see Declaration of Andrew Page ("Page Decl.")) was originally filed in connection with these intervenors' motion to intervene in the SCI suit, No. 08-

directly benefitted from the FWS's decisions challenged in this case – and thus have concrete interests of precisely the sort that have been recognized by the courts as adequate to confer Article III standing.  See, e.g., Animal Legal Defense Fund v. Glickman, 154 F.3d 426, 432 (D.C. Cir. 1998) (en banc) ("[t]he Supreme Court has repeatedly made clear that injury to an aesthetic interest in the observation of animals is sufficient to satisfy the demands of Article III standing") (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 562-62 (1992); Japan Whaling Ass'n v. American Cetacean Soc'y, 478 U.S. 221, 231 n. 4 (1986)); see also Coast Alliance v. Babbitt, 6 F. Supp. 2d 29, 32-33 (D.D.C. 1998) (Sullivan, J.) (where government's actions would harm plaintiffs' interests in observing endangered sea turtles and migratory birds in specific locations in Florida plaintiffs demonstrated "sufficient injury to meet the Article III injury requirements").

The organizations' members also readily satisfy the causation and redressability prong of Article III standing.  Indeed, since the members' interests in observing and otherwise enjoying polar bears may be significantly impaired in several distinct ways by the relief sought by plaintiffs, the threatened injuries to the members is unquestionably "fairly traceable" to intervenors' claims for relief.  Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 41-42 (1976); see also Larson v. Valente, 456 U.S. 228, 243 n.15 (1982) (parties satisfy the redressability requirement when they show that a favorable decision will relieve some of their injuries, and "need not show [it] will relieve [] every injury") (emphasis in original); Meese v. Keene, 481 U.S. 465, 476 (1987); Friends of the Earth, Inc. v. Laidlaw Environmental Services,

---

881.  The declarations are being refiled here for the Court's convenience.

528 U.S. 167, 185-86 (2000) (holding that the plaintiffs' injuries would be redressed even where the relief sought merely deterred the conduct in question).[5]

### 2. The Organizations Also Have Standing To Sue On Their Own Behalf.

The organizations also have standing to sue on their own behalf here because they have devoted substantial organizational resources in an effort to halt the importation of sport-hunted polar bear trophies, and will be compelled to do so again if plaintiffs prevail in this suit. See, e.g. Page Decl. ¶¶ 7-16. With the import ban, the organizations can now devote more of their limited resources to other projects that further their conservation missions. Id. ¶¶ 17-20. Moreover, the United States' prohibition on the importation of sport-hunted polar bear trophies will benefit the organizations' continuing efforts to minimize the impacts of sport hunting of polar bears through the establishment of conservation measures on an international scale. See, e.g., Rose Decl. ¶¶ 37-39. Accordingly, since the relief sought here at least "perceptibly impair[s]" the organizations' missions, "there can be no question that the organization[s] [have] suffered injury in fact." Havens Realty Corp. v. Coleman, 455 U.S. 363, 378-79 (1982); Abigail Alliance v. Eschenbach, 469 F.3d 129, 132-33 (D.C. Cir. 2006).[6]

---

[5] In addition to the impact of the import ban on the number and types of polar bears that are killed, see, e.g., Rose Decl. ¶¶ 11-20 and 24-25, the ESA listing of the polar bear, and the "depleted" designation under the MMPA, are also likely to both (a) cause Canada and the native communities involved in polar bear hunting to take steps to further polar bear conservation, id. ¶¶ 29-36, and (b) further efforts to strengthen international protections for the polar bear, id. ¶¶ 37-39. See, e.g., Animal Welfare Inst. v. Kreps, 561 F.2d 1002, 1010 (D.C. Cir. 1977). The listing and depleted status designation will also insure that the species obtains the conservation benefits of a Recovery Plan under the ESA, 16 U.S.C. § 1533(f), and a Conservation Plan under the MMPA, 16 U.S.C. § 1383b(b) – which will be vital to the protection and recovery of the species.

[6] The Conservation/Recovery Plans will also provide important information to the intervenor organizations, see, e.g., 16 U.S.C. § 1533(f)(1)(B) (requiring Recovery Plan to include a "description of" the management actions necessary to recover the species), the statutory right to which also confers standing here. E.g. Federal Election Comm'n v. Akins, 524 U.S. 11, 21

### C. The Interests of Applicants for Intervention Are Not Adequately Represented By The Federal Defendants.

The final criterion for intervention of right – a demonstration that the applicants' interests are not "adequately represented by existing parties" – is also easily shown here. Fed. R. Civ. P. 24(a). Indeed, it is well established, especially in this Circuit, that this requirement "is not onerous." Dimond v. Dist. of Columbia, 792 F.2d 179, 192 (D.C. Cir. 1986). Rather, "[t]he requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate," and "the burden of making that showing should be treated as minimal." Trbovich v. United Mine Workers of Am., 404 U.S. 528, 538 n.10 (1972) (emphasis added); see also Nuesse, 385 F.2d at 703. Moreover, the interests asserted by the applicants "need not be wholly 'adverse' before there is a basis for concluding that existing representation of a 'different' interest may be inadequate." Nuesse, 385 F.2d at 703.

This "minimal" standard is certainly satisfied here. To begin with, although it is to be hoped that the government will vigorously defend its recent decision to enhance protection for the polar bear under the ESA and MMPA, the background of the regulation at issue hardly instills confidence that will be the case. Indeed, defendants had to be sued in federal court before they would even make a final decision on listing of the polar bear. Defendants were first petitioned to list the polar bear in 2005 and, under the ESA, they were supposed to have made a decision on that petition within one year. See 16 U.S.C. § 1533(b)(3)(B). Because defendants failed to do so, they were sued in the Northern District of California; that lawsuit resulted in a settlement requiring that defendants decide whether to propose a rule by January 2007. See

---

(1998) (discussing organizational injury based on a statutory right to information); Ethyl Corp. v. EPA, 306 F.3d 1144, 1148 (D.C. Cir. 2002); see also In re Thornburgh, 869 F.2d 1503, 1511 (D.C. Cir. 1989).

Center for Biological Diversity v. Kempthorne, No. C 08-1339, 2008 WL 1902703, *1 (N.D. Cal. Apr. 28, 2008).  However, even after defendants issued a proposed rule, they failed to complete action on it within the time frame mandated by the ESA, thus necessitating another lawsuit and another Court order before final action was taken.  Id. at * 3 ("Defendants have been in violation of the law requiring them to publish the listing determination for nearly 120 days.  Other than the general complexity of finalizing the rule, Defendants offer no specific facts that would justify the existing delay, much less further delay").

Under these circumstances, and regardless of why federal defendants unlawfully delayed so long in protecting the polar bear, it is apparent that, at the very least, defendants' representation of the applicants' overarching interests in polar bear conservation "may be inadequate."  Trbovich, 404 U.S. at 538 n. 10 (emphasis added); see also Coalition of Arizona/New Mexico Counties For Stable Economic Growth v. Department of the Interior, 100 F.3d 837 (10th Cir. 1996); Idaho Farm Bureau Fed. v. Babbitt, 58 F.3d 1392 (9th Cir. 1995). In any event, animal protection and conservation groups that have long battled to protect polar bears – including by limiting the sport hunting of these magnificent animals – can be expected to "mak[e] a more vigorous presentation" of the legal and factual arguments in support of a regulation that furthers those objectives than federal officials who, by all appearances, adopted the regulation reluctantly and only because they were compelled to do so by Court order. Natural Resources Def. Council v. Costle, 561 F.2d 904, 912 (D.C. Cir. 1977) (internal citations omitted).  Moreover, as the Court of Appeals has instructed, even if there were a "shared general agreement" between the government and the applicants for intervention with regard to the challenges to the rule raised by plaintiffs now or in the future, this would not "necessarily ensure

agreement in all particular respects about what the law requires." Id.  In this case, it is apparent that the non-governmental organizations seeking to intervene may have "honest disagreements" with the government on important "legal . . . matters," id. – such as the precise interrelationship between the MMPA and the ESA – and that their "interests may diverge at points" throughout the course of this litigation.  In Re Sierra Club, 945 F.2d 776, 780 (4th Cir. 1991); see also Neusse, 385 F.2d at 703 ("interests need not be wholly 'adverse' before there is a basis for concluding that existing representation of a 'different' interest may be inadequate"); Chiles v. Thornburgh, 865 F.2d 1197, 1214 (11th Cir. 1989) ("The fact that the interests are similar does not mean that approaches to litigation will be the same").

Accordingly, because the proposed intervenors meet all of the requirements for intervention as of right, they should be permitted to intervene as full parties here.  Trbovich, 404 U.S. at 537 n.8; Neusse, 385 F2d at 701 (explaining that Rule 24(a), as amended in 1966, was "obviously designed to liberalize the right to intervene in federal actions").

## II.   IN THE ALTERNATIVE, THE PROPOSED INTERVENORS SHOULD BE GRANTED PERMISSIVE INTERVENTION.

Although the proposed intervenors satisfy the criteria for intervention as of right under Rule 24(a), in the alternative this Court should exercise its discretion by allowing the applicants to intervene in this action as a permissive matter under Rule 24(b).  Rule 24(b)(2) provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact," Fed. R. Civ. P. 24(b)(1), and further provides that "[i]n exercising its discretion the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).  In determining whether to grant permissive intervention, courts also

consider whether the prospective intervenors will "contribute to the full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." In Re Acushnet River & New Bedford Harbor, 712 F. Supp. 1019, 1023 (D. Mass. 1989); see also Neusse, 385 F.2d at 704 ("Rule 24(b) . . . provides basically that anyone may be permitted to intervene if his claim and the main claim have a common question of law or fact"). "As its name would suggest, permissive intervention is an inherently discretionary enterprise," EEOC v. Nat'l Children's Ctr., Inc., 146 F.3d 1042, 1046 (D.C. Cir. 1998), and hence district courts have "wide latitude" in determining whether to grant such status. Id.; see also United States Postal System v. Brennan, 579 F.2d 188, 191-92 (2d Cir. 1978).

Here, the applicants for intervention clearly are pursuing "question[s] of fact or law in common" with the existing parties, Fed. R. Civ. P. 24(b). In addition, because of their longstanding interests in polar bear conservation and their expertise in the interplay of the conservation laws that are pertinent to plaintiffs' claims, see, e.g., Rose Decl. ¶¶ 4-7; Pissot Decl. ¶¶ 2-7; Poulsen Decl. ¶ 2, the applicants' participation will contribute to the "just and equitable adjudication of the legal questions presented" without in any way prejudicing plaintiffs' interest in accomplishing an expeditious resolution of their claims. In Re Acushnet River & New Bedford Harbor, 712 F. Supp. at 1023.

Moreover, applicants have already been granted intervention in three cases where substantially similar arguments opposing the ban on polar bear imports are being made. Accordingly, even if the Court concludes that the standards for intervention of right are not satisfied, the Court should nonetheless exercise its discretion to permit the applicants for

15

intervention to intervene under Rule 24(b), to permit the applicants to fully participate in the consolidated briefing that will occur on these issues.

## CONCLUSION

For all of the foregoing reasons, the proposed intervenors' Motion to Intervene should be granted.

Respectfully Submitted,

*/s/ Howard M. Crystal*
Howard M. Crystal (D.C. Bar No. 446189)
Eric R. Glitzenstein (D.C. Bar No. 358287)

Meyer Glitzenstein & Crystal
1601 Connecticut Ave., N.W., Suite 700
Washington, D.C. 20009
(202) 588-5206

March 20, 2009                          Attorneys for Proposed-Intervenors