## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE POLAR BEAR ENDANGERED SPECIES ACT LISTING AND § 4(d) RULE LITIGATION | Misc. Action No. 08- 0764 (EGS) MDL Docket No. 1993 |

**This Document Relates To:**
No. **1:09-cv-245,** ***Conservation Force, et al. v. Kempthorne, et al.***

## MOTION TO INTERVENE AS DEFENDANTS BY CENTER FOR

## BIOLOGICAL DIVERSITY, NATURAL RESOURCES DEFENCE COUNCIL

## AND GREENPEACE, INC.

Pursuant to Federal Rule of Civil Procedure 24 and Local Civil Rule 7(j), the

Center for Biological Diversity ("Center"), Natural Resources Defense Council

("NRDC") and Greenpeace, Inc. ("Greenpeace") (collectively, "Conservation Groups")

hereby move this Court to intervene as of right as Defendants in this case, or, in the

alternative, for permissive intervention.

In support of this motion, proposed intervenors submit the accompanying

memorandum of law, three declarations, a Proposed Answer, and a Proposed Order.

Proposed intervenors' counsel has contacted counsel for the Plaintiffs, and Plaintiffs

oppose the motion. Federal Defendants take no position.

DATE: March 20, 2009     Respectfully Submitted,

By: /s/ Brendan Cummings

Brendan Cummings
Kassia Siegel
Center for Biological Diversity
P.O. Box 549

Joshua Tree, CA 92252
Phone:   (760) 366-2232
Facsimile: (760) 366-2669
bcummings@biologicaldiversity.org
ksiegel@biologicaldiversity.org

Benjamin Longstreth (DC Bar # 974015)
Andrew Wetzler
Rebecca Riley
Natural Resources Defense Council
1200 New York Ave., N.W. Suite 400
Washington, D.C. 20005
Telephone: 202-289-6868
Facsimile: 202-289-1060
blongstreth@nrdc.org
awetzler@nrdc.org
rriley@nrdc.org

Attorneys for Defendant-Intervenors
Center for Biological Diversity,
Natural Resources Defense Council,
and Greenpeace, Inc.

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE POLAR BEAR ENDANGERED SPECIES ACT LISTING AND § 4(d) RULE LITIGATION | Misc. Action No. 08- 0764 (EGS) MDL Docket No. 1993 |
| This Document Relates To: No. **1:09-cv-245,** *Conservation Force, et al. v. Kempthorne, et al.* | |

<u>**MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE AS
DEFENDANTS BY CENTER FOR BIOLOGICAL DIVERSITY, NATURAL
RESOURCES DEFENCE COUNCIL AND GREENPEACE, INC.**</u>

**INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 24 and Local Civil Rule 7(j), the

Center for Biological Diversity ("Center"), Natural Resources Defense Council

("NRDC") and Greenpeace, Inc. ("Greenpeace") (collectively, "Conservation Groups")

hereby move this Court to intervene as of right as Defendants in this case, or, in the

alternative, for permissive intervention.  In this case, Plaintiffs Conservation Force, et al.,

challenge the final rule classifying polar bears as a threatened species under the

Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531, et seq.  *See* Endangered and

Threatened Wildlife and Plants, Determination of Threatened Status for the Polar Bear

(*Ursus maritimus*) Throughout its Range, 73 Fed. Reg. 28,212, 28,214 (May 15, 2008)

("Final Listing Rule").

Plaintiffs' case marks the latest in a series of challenges brought by trophy

hunting advocacy organizations, fossil fuel industry organizations, the State of Alaska,

and various other entities seeking to undo ESA-protections granted to the polar bear.

Conservation Groups, whose advocacy efforts ultimately led to the ESA-listing of the

polar bear, have sought, via motion or stipulation, and have been granted intervention by

this Court in each of these other cases.  Conservation Groups, unable to reach agreement

with Plaintiffs in the instant action regarding intervention, bring this motion to intervene

as defendants to defend the Final Listing Rule. [1]

The road to protection for the polar bear under the ESA has been a long one. [2]

The Conservation Groups seeking intervention in this case set the polar bear on that road

through the filing of a February 2005 petition with the Secretary of Interior and the U.S.

Fish and Wildlife Service (collectively, "the Secretary") to list the polar bear under the

ESA.  Due to the Secretary's delay in responding to the petition, the Conservation Groups

were forced to file two lawsuits to compel his compliance with the mandatory deadlines

for action established by the ESA's listing process.  The second of these two cases,

Center for Biological Diversity v. Kempthorne, 2008 WL 1902703 (N.D. Cal. Apr. 28,

2008) (No. 08-1339) ("Center for Biological Diversity II"), resulted in the court order

requiring the Secretary to issue the final listing rule for the polar bear which is challenged

here.

Because Plaintiffs' lawsuit directly threatens Conservation Groups' and their

members' interest in protecting polar bears, and threatens to undo years of successful

administrative and legal advocacy, Conservation Groups now move to intervene as of

---

[1] The Conservation Groups also challenged the Final Listing Rule and the related 4(d)
Rule for inadequately protecting the polar bear.

[2] The Background Section of this brief may be familiar to the court as many of these facts
were described in Conservation Groups' previous motions to intervene in the other
challenges to the listing rule that are part of these consolidated proceedings.  The Court
granted Conservation Groups' motions to intervene in each of these cases.

right in this matter or, in the alternative, for permissive intervention.  As detailed below,
Conservation Groups easily meet the four-part test for intervention as of right in this
action and should be granted intervention in order to protect their interests in the survival
and recovery of the polar bear and its habitat.

> **A.     Events Leading to the Listing of the Polar Bear**

In 2005, Conservation Groups petitioned the Secretary to list the polar bear as a
threatened or endangered species throughout its range.  *See* Endangered and Threatened
Wildlife and Plants; 12-Month Petition Finding and Proposed Rule To List the Polar Bear
(*Ursus maritimus*) as Threatened Throughout Its Range Proposed Rule and Notice of 12-
month Finding, 72 Fed. Reg. 1064 (Jan. 9, 2007).  The polar bear, a marine mammal
completely dependent on the Arctic sea ice for survival, is poised to become one of the
first species to fall victim to global warming.  Arctic sea ice is the polar bear's primary
habitat, the platform from which they hunt and on which they breed.  The polar bear's
Arctic sea-ice habitat is quite literally melting away.  As noted in the Final Listing Rule,
even under relatively optimistic scenarios, scientists expect that the Arctic's summer sea
ice will largely vanish by mid-century; under increasingly likely scenarios, the seasonal
ice upon which the polar bear depends will be gone in less than a decade.  73 Fed. Reg.
28,233.  Without sea ice, polar bears cannot survive.  73 Fed. Reg. 28,262.   In addition,
polar bear populations are also threatened by oil and gas exploration and development,
poaching in Russia, overhunting in Canada and Greenland, and widespread toxic
contamination.  See, e.g., 73 Fed. Reg. 28,256 (recognizing the variety of threats facing
polar bears today and acknowledging that the cumulative effects of these "multiple

stressors" and the "rapid rate of climate change today create a unique and unprecedented challenge for present-day polar bears").

Under the ESA, the Secretary of the Interior has 90 days "to the maximum extent practicable," to make a finding as to whether a petition to list a species "presents substantial scientific or commercial information indicating that the petitioned action may be warranted."  16 U.S.C § 1533(b)(3)(A); 50 C.F.R. § 424.14(b)(1).  If the Secretary answers this question in the affirmative, he then has 12 months from the date the petition was filed to decide whether to grant the petition and, if so, issue a proposed rule listing the species.  16 U.S.C. § 1533(b).

In the case of the polar bear, however, the Secretary did not make any findings in responding to Conservation Groups' petition to list the bear ten months after it had been filed.  Accordingly, on December 15, 2005, Conservation Groups filed suit to compel action.  Center for Biological Diversity v. Kempthorne, No. 05-5191 (N.D. Cal. dismissed due to Consent Decree dated Jan. 11, 2007) ("Center for Biological Diversity I"); 72 Fed. Reg. 1065.

In response to Conservation Groups' suit, on February 9, 2006, the Secretary issued a 90-day finding on the Petition to list the polar bear.  Endangered and Threatened Wildlife and Plants; Petition To List the Polar Bear as Threatened Notice of 90-day Petition Finding and Initiation of Status Review, 71 Fed. Reg. 6745 (Feb. 9, 2006).  The Secretary found that the Petition presented substantial information showing that listing of the polar bear may be warranted under the ESA, initiated a status review for the species, and solicited public comment for a period of 60 days.  Id.

Because the Secretary delayed the 90-day finding until nearly one year had passed from receipt of the Petition, the Secretary also failed to meet the deadline for issuance of the 12-month finding.  As a result, a consent decree was entered in <u>Center for Biological Diversity I</u> that required the Secretary to issue the required 12-month finding by December 27, 2006.

On December 27, 2006, the Secretary announced a proposed rule to list the polar bear as a threatened species throughout its range.  The proposed rule was published in the Federal Register on January 9, 2007.  72 Fed. Reg. 1064.  After a species is formally proposed for addition to the list of threatened and endangered species, the ESA requires that the Secretary make a final decision on the proposed listing within a year.  16 U.S.C. § 1533(b)(6).  Thus, under the ESA, the Secretary was required to publish his final listing determination and critical habitat designation by January 9, 2008.  The Secretary, however, missed this deadline as well.  As a result, Conservation Groups again filed suit on March 10, 2008 to compel the issuance of a final rule.  <u>Center for Biological Diversity II</u> (No. 08-1339).

On April 28, 2008, the District Court for the Northern District of California granted Conservation Groups' Motion for Summary Judgment, finding the Secretary and the Service in violation of the ESA for failing to publish a final listing decision for the polar bear by January 9, 2008.  <u>Center for Biological Diversity II</u>, 2008 WL 1902703, at *2.  The Court ordered the Secretary and the Service to publish a final listing determination for the polar bear by May 15, 2008, and to make any final regulation effective upon publication pursuant to 5 U.S.C. § 553(d)(3).  <u>Center for Biological Diversity II</u>, 2008 WL 1902703, at *3-*4.

**B.     The Final Listing Rule Challenged in this Action**

On May 15, 2008, the Secretary published the Final Listing Rule, listing the polar

bear as a threatened species throughout its range due to the rapid warming of the Arctic

and melting of the bear's sea-ice habitat.  In the Final Listing Rule, the Secretary found

that, due to global warming, two-thirds of the world's bears are likely to be extinct by the

middle of this century and cautioned that even this projection may be overly optimistic

due to the more rapid than predicted melting of the sea ice.  73 Fed. Reg. 28,274.  The

Secretary further concluded "polar bears today contend with harvest, contaminants, oil

and gas development, and additional interactions with humans that they did not

experience in [the past] . . . .  Thus, both the cumulative effects of multiple stressors and

the rapid rate of climate change today create a unique and unprecedented challenge for

present-day polar bears . . . ."  73 Fed. Reg. 28256.

Concurrently with the final listing rule, the Secretary issued a regulation pursuant

to Section 4(d) of the ESA, which authorizes activities that harm polar bears and would

otherwise be prohibited by Section 9 of the ESA and its implementing regulations.

Endangered and Threatened Wildlife and Plants, Special Rule for the Polar Bear, 73 Fed.

Reg. 28,306 (May 15, 2008) ("4(d) Rule"); 40 C.F.R. § 17.40(q).

**C.     Current Ongoing Litigation Concerning the Polar Bear Listing Rule
          and 4(d) Regulation**

Immediately following the listing decision, the Conservation Groups filed an

amended Complaint in Center for Biological Diversity II  in the Northern District of

California, adding challenges to the legal validity of the 4(d) Rule under the

Administrative Procedures Act ("APA") and the National Environmental Protection Act

("NEPA").  The Conservation Groups subsequently filed a second amended complaint

adding claims that the Secretary violated the ESA by failing to use the best available science in determining that polar bears were "threatened" rather than "endangered" in all or parts of their range; failing to designate critical habitat for the polar bear concurrently with the Final Listing Rule, 16 U.S.C. § 1533(a)(3)(A)(i); and issuing the 4(d) Rule in contravention of ESA requirements, 16 U.S.C. § 1533(d).  Center for Biological Diversity II was subsequently transferred to this Court by the Panel on Multi-District Litigation and is now part of these consolidated proceedings.

Litigation over the Final Listing Rule began in this Court on May 23, 2008 when Safari Club International and Safari Club International Foundation (collectively "Safari Club") filed a complaint challenging aspects of the Secretary's listing decision related to the importation of polar bear trophies.  Given the Conservation Groups' interest in protecting the polar bear, as evidenced by their present and historical advocacy, they filed a Motion to Intervene in Safari Club's action.  Safari Club, No. 08-881, (Dkt. # 11).  On July 10, 2008, this Court granted Conservation Groups' permissive intervention as defendants.  Subsequently, the State of Alaska, California Cattlemen's Association, et al., and Safari Club filed challenges to the validity of the Final Listing Rule itself. Conservation Groups moved to intervene in each of these case and were granted permissive intervention by this court.

On February 9, 2009 Plaintiffs, Conservation Force, et al., filed this action. Plaintiffs' claims allege that the listing of the polar bear as threatened violates the procedural and substantive mandates of the ESA, constitutional due process, and the APA.  Complaint, Dkt. # 1.  Given Conservation Groups' extensive involvement in

gaining protections for the polar bear, they now seek to intervene as of right in

Conservation Force's suit challenging the Final Listing Rule.

    **D.**    **The Movant Conservation Groups**

    The Center for Biological Diversity is a national nonprofit conservation

organization with 200,000 members and supporting online activists.  Declaration of

Kieran Suckling in Support of Motion to Intervene ("Suckling Decl.") ¶ 9 (attached

hereto as Exhibit A).  The Center's primary mission is the protection of imperiled

species, such as the polar bear, and their habitats.  Id. ¶ 2.  Additionally, the Climate, Air

and Energy Program ("Climate Program") within the Center, focuses its work and

advocacy efforts on curbing global warming and limiting its damaging effects on

endangered species and their habitats.  Id. ¶ 3.  Obtaining protection of the polar bear is

one of the Climate Program's leading campaigns to protect species most imperiled by

global warming.  Id. ¶ 4.

    The Natural Resources Defense Council ("NRDC") is a national nonprofit

environmental organization with over 400,000 members nationwide.  NRDC uses law,

science and the support of its members to ensure a safe and healthy environment for all

living things.  Declaration of Linda Lopez in Support of Motion to Intervene ("Trujillo

Decl.") ¶ 4 (attached hereto as Exhibit B).  One of NRDC's top priorities is the protection

of threatened and endangered species such as the polar bear.  Id. ¶ 9.

    Greenpeace, Inc. is an international nonprofit environmental organization with

about 250,000 members in the United States.  (Declaration of Melanie Duchin in Support

of Motion to Intervene ("Duchin Decl.") ¶ 2 (attached hereto as Exhibit C).

Greenpeace's mission is to raise public awareness of environmental problems and

promote changes that are essential to a green and peaceful future.  Id.  For the past

decade, Greenpeace has worked to raise awareness of the effects of global warming in the

Arctic, including the impacts on polar bears and other species who are threatened by

continued global warming.  Id.

As discussed further below, the Conservation Groups and their members have

significant professional and personal interests in the polar bear, its habitat, and its

protection. Suckling Decl., Lopez Decl., Duchin Decl.

**ARGUMENT**

**I.      MOVANTS ARE ENTITLED TO INTERVENE AS OF RIGHT**

The D.C. Circuit uses the following four-part test to evaluate motions to intervene

as of right: "(1) the application to intervene must be timely; (2) the applicant must

demonstrate a legally protected interest in the action; (3) the action must threaten to

impair that interest; and (4) no party to the action can be an adequate representative of the

applicant's interests."  S.E.C. v. Prudential Sec., Inc., 136 F.3d 153, 156 (D.C. Cir. 1998);

see also Mova Pharm. Corp. v. Shalala, 140 F.3d 1060, 1074 (D.C. Cir. 1998).  Rule

24(a) is construed liberally in favor of granting intervention. Nuesse v. Camp, 385 F.2d

694, 702 (D.C. Cir. 1967); see also The Wilderness Soc'y v. Babbitt, 104 F. Supp.2d 10,

18 (D.D.C. 2000) (noting that "the D.C. Circuit has taken a liberal approach to

intervention") (citing NRDC v. Costle, 561 F.2d 904, 910-911 (D.C. Cir. 1977)).

Following its liberal application of Rule 24, this Court and the D.C. Circuit routinely

grant conservation organizations' motions to intervene where they have an interest in pending litigation.[3]

### A.       The Motion to Intervene is Timely

The timeliness of a motion to intervene depends on "consideration of all of the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties to the case." United States v. AT&T Co., 642 F.2d 1285, 1295 (D.C. Cir. 1980).

Here, Plaintiffs filed their complaint on February 9, 2009. Only several weeks have elapsed, Defendants have not yet answered Plaintiff's Complaint, no dispositive motions have been filed, and no discovery has been taken. Because Conservation Groups have filed at the very inception of the case, their motion is clearly timely. Fund for Animals, Inc. v. Norton, 322 F.3d 728, 735 (D.C. Cir. 2003) (finding motion timely where it was filed "less than two months after plaintiffs filed their complaint and before the defendant's answer was filed").[4]

---

[3] See, e.g. George E. Warren Corp. v. EPA, 159 F.3d 616 (D.C. Cir. 1998), amended by 164 F.3d 676 (D.C. Cir. 1999) (three environmental groups authorized to intervene on EPA's behalf in industry challenge to EPA air rules); Wilderness Soc'y v. Morton, 463 F.2d 1261 (D.C. Cir. 1972) (Canadian environmental group allowed to intervene in U.S. environmental group's challenge to Interior Department's compliance with environmental procedures); Nat'l Coal Ass'n v. Uram, 39 Env't Rep. Cas. (BNA) 1624 & n.2, 1994 U.S. Dist. LEXIS 16404, * 1 & n.2 (D.D.C. 1994) (environmental group authorized to intervene in industry challenge to environmental rules, and to act as plaintiff in challenging other aspects of those rules); Kerr-McGee Corp. v. Hodel, 630 F. Supp. 621 (D.D.C. 1986), vacated on other grounds 840 F.2d 68 (D.C. Cir. 1988) (environmental group authorized to intervene in industry litigation challenged alleged government inaction on mining leases).

[4] Moreover, Conservation Groups' motion is consistent with the Court's February 26, 2009 scheduling order (Dkt. # 20).

**B.   Conservation Groups Have a Significant Protected Interest in the Polar Bear**

Conservation Groups satisfy the second requirement on Fed. R. Civ. P. 24(a) because they have a significant protected interest in the polar bear, the subject matter of this litigation.  Rule 24(a)(2) requires that an intervenor have an interest that is related "to the property or transaction which is the subject of the action."  When assessing the interest requirement, the D.C. Circuit has adopted a liberal approach, looking to the "policies behind the 'interest' requirement" in the rule, and viewing the rule as a "practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."  Nuesse v. Camp, 385 F.2d at 700; see also Foster v. Gueory, 655 F.2d 1319, 1324 (D.C. Cir. 1981).  This Circuit has observed that "[t]he right of intervention conferred by Rule 24 implements the basic jurisprudential assumption that the interest of justice is best served when all parties with a real stake in a controversy are afforded an opportunity to be heard."  Hodgson v. United Mine Workers of America, 473 F.2d 118, 130 (D.C. Cir. 1972).

As is apparent from the procedural history described above, Conservation Groups and their members have a clear and legally cognizable interest in this action. Conservation Groups' initial petition to the Secretary commenced the polar bear listing process.  72 Fed. Reg. at 1065.  Conservation Groups were then required to file two lawsuits to compel the Secretary to follow his obligations under the ESA after he missed the ESA's mandatory deadlines.  Id., 73 Fed. Reg. 28,212.

Conservation Groups also have a substantial interest because, as briefly described above, their missions encompass the protection of imperiled species and their members have a specific interest in the survival and conservation of the polar bear and marine

mammals, in general.  The organizational mission of the Center for Biological Diversity

is to "secure a future for animals and plants hovering on the brink of extinction, for the

wilderness they need to survive, and by extension, for the spiritual welfare of generations

to come."  Suckling Decl. ¶ 2.  One organizational purpose of NRDC is "[t]o preserve,

protect, and defend natural resources, wildlife and the environment against

encroachment, misuse and destruction."  Lopez Decl. ¶ 4.  The organizational purpose of

Greenpeace is to raise public awareness of environmental problems and promote changes

that are essential to a green and peaceful future, and Greenpeace has campaigned for the

protection of the Arctic and Arctic wildlife like the polar bear for many years.  Duchin

Decl. ¶ 2.

　　　　Individual members of the Conservation Groups also have diverse personal and

professional interests in the protection of polar bears and their habitat.  <u>See</u> Suckling and

Duchin Decls.  Moreover, in <u>Center for Biological Diversity II</u>, no party questioned

Conservation Groups' standing or interests and, in ruling in Conservation Groups' favor,

the court implicitly affirmed Conservation Groups' interests.  This circuit has also

implicitly affirmed Conservation Groups' standing in its order granting permissive

intervention in the challenges to the Final Listing Rule brought by Safari Club, State of

Alaska, and California Cattlemen's Association, et. al.  <u>See</u> <u>Fund for Animals</u>, 322 F.3d

at 735 (holding that finding of constitutional standing "is alone sufficient to establish

that" intervenor satisfies Rule 24's interest requirement).

　　　　In sum, the Conservation Groups and their members have demonstrated a long-

standing interest in the protection of the polar bear, which easily provides a basis for

intervention in this case.  <u>See</u>, <u>e.g.</u>, <u>Idaho Farm Bureau Fed'n. v. Babbitt</u>, 58 F.3d 1392,

1397 (9th Cir. 1995) ("[a] public interest group is entitled as a matter of right to intervene

in an action challenging the legality of a measure it had supported."); Coalition of

Arizona/New Mexico Counties for Stable Econ. Growth v. Dep't of the Interior, 100 F.3d

837, 841-44 (10th Cir. 1996) (individual's involvement with a species through his

activities as a photographer, amateur biologist, naturalist, and conservation advocate

amounted to sufficient interest for purpose of intervention in litigation covering the

species' listing under the ESA); Sagebrush Rebellion, Inc. v. Watt, 713 F.2d 525, 526

(9th Cir. 1983) (environmental groups' "environmental, conservation and wildlife

interests" were sufficient for intervention as a matter of right).

     In addition to satisfying the "protected interest" and "impairment" prongs of Rule

24(a), the foregoing discussion shows that Conservation Groups also have standing to

defend the final polar bear listing decision from Plaintiff's challenge.  Specifically,

Conservation Groups and their members can demonstrate injury-in-fact, causation, and

redressability.  See Fund for Animals, 322 F.3d at 733 (requiring that prospective

intervenors demonstrate standing).

     As noted, Conservation Groups are environmental organizations whose missions

include the protection of imperiled species.  Suckling Decl. ¶¶ 1-2; Duchin Decl. ¶ 2;

Lopez Decl. ¶¶ 4, 9.  Likewise, Conservation Groups' members have significant

professional and personal interests in the polar bear, its habitat, and its protection.  See

Duchin and Suckling Decls.  Conservation Groups' interests are among those interests

that the Supreme Court has found sufficient to establish standing.  See, e.g., Friends of

the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 181-82 (2000) (harm to

recreation opportunities constitutes injury in fact for purposes of standing); Lujan v.

<u>Defenders of Wildlife</u>, 504 U.S. 555, 562-63 (1992) ("desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purposes of standing").

Plaintiffs' case threatens to harm Conservation Groups' interests because Plaintiffs seek to remove protections currently afforded to this gravely imperiled species by the Final Listing Rule.  If Plaintiff is successful, polar bears will no longer be provided the protections of the Endangered Species Act even as they continue to face threats to their survival, including oil, gas and other development activities in critical habitat; loss of sea ice habitat resulting from unabated greenhouse gas emissions and global warming; increased shipping and other industrial activities in critical habitat; increased human-bear interactions and hunting.  This makes it far more likely the polar bear will continue to decline and become extinct, obviously harming the Conservation Groups' interests in the survival and recovery of the species.

In addition, if Plaintiffs were to obtain a favorable decision, it would become more difficult for Conservation Groups to achieve their objective of providing the polar bear even stronger levels of protection, such as being listed as endangered and requiring consideration of greenhouse gas emissions and global warming in making polar bear management decisions. Moreover, a ruling in Plaintiffs' favor would cause the "depleted" status of polar bears to be removed under the MMPA, thus allowing the import of trophy carcasses, and by extension likely increasing hunting pressure on the species.  In short, Plaintiffs' claims challenge the very protections Conservation Groups have fought for years to obtain and relate directly to claims Conservation Groups are currently litigating in this Court.

Finally, the harm Conservation Groups face can be redressed by a decision that does not compromise either the protections currently afforded the polar bear or Conservation Groups' claims that the species requires additional protections. Accordingly, Conservation Groups have standing in this case.

### C.     This Action Threatens to Impair Conservation Groups' Interests

Rule 24(a)'s "impairment" requirement concerns whether, as a practical matter, the denial of intervention will impede the prospective intervenor's ability to protect its interests in the subject of the action.  As the Advisory Committee Notes for the 1966 amendments to Rule 24(a) explain, "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene."  In keeping with this directive, the D.C. Circuit has observed that the rule's emphasis on "practical disadvantage" was "designed to liberalize the right to intervene in federal actions."  Nuesse, 385 F.2d at 701-02.

There is no question that the disposition of Plaintiffs' claims has the potential to impair Conservation Groups' interests.  Plaintiffs challenge the Secretary's decision to list the polar bear as a threatened species, claiming that the decision violates the ESA, the Constitution and APA.  Compl. ¶¶ 120-238.  For example, Plaintiffs challenge the scientific data on which the Secretary based his final listing decision, alleging that it does not warrant listing the polar bear under the ESA.  Compl. ¶¶ 188-208.  If Plaintiffs succeeded in this claim, it would not only strip the polar bear of needed and warranted protections, as explained in the Final Listing Rule, but could also affect Conservation Groups' claim that the science supports an endangered, rather than threatened listing.  A ruling in favor of Plaintiffs on this claim would also affect Conservation Groups' overall

efforts to protect other Arctic species threatened by global warming, loss of sea ice habitat and oil, gas and other industrial development.  Put simply, if Plaintiffs are successful in overturning or weakening the Final Listing Rule, polar bears will be far more vulnerable to further decline and extinction, which clearly harms the Conservation Groups' interest in protecting the species.  Suckling Decl. ¶ 12.  Moreover, any decision in Plaintiffs' favor could also set a precedent that would further weaken the existing protections the Secretary has put in place for the polar bear and make it harder to establish additional protections Conservation Groups are currently working to secure for the species.

As in the other challenges to Final Listing Rule in which Conservation Groups have intervened, a court ruling in Plaintiffs' favor here would also harm the procedural and informational interests of the Conservation Groups and their members, who have an interest in seeing the protections of the ESA and MMPA properly applied.  Suckling Decl. ¶ 14.  The Conservation Groups' interests would be harmed should Plaintiffs succeed in delisting the polar bear because the delisting would remove the MMPA protections currently afforded the polar bear as a "depleted" species.  The MMPA classifies all threatened or endangered marine mammals as "depleted" under the Act by virtue of their ESA status.  If the polar bear lost its threatened status it would thus also lose its automatic "depleted" status.  This would force the groups to seek a separate MMPA rulemaking to obtain protections for the polar bear as a "depleted species".  The results of such a rulemaking are uncertain and would be potentially less protective of the polar bear.  Suckling Decl. ¶ 14.

Courts have repeatedly found environmental organizations' interests of sufficient risk of impairment to sustain intervention for environmental groups in suits such as this. In <u>Idaho Farm Bureau Federation</u>, for example, the Ninth Circuit held that a disposition of the action in favor of plaintiffs resulting in the delisting of the Bruneau Hot Springs Snail "would impair [intervenor's] ability to protect their interest in the Springs Snail and its habitat." 58 F.3d at 1398. In <u>Coalition of Arizona/New Mexico Counties for Stable Economic Growth</u>, the Tenth Circuit held that intervenor's interest in the protection of the Mexican spotted-owl would, "as a practical matter," be impaired by a ruling in favor of the plaintiffs to delist the owl "by the stare decisis effect of the district court's decision, not to mention the direct effect of a possible permanent injunction." 100 F.3d at 844; <u>see</u> <u>also</u> <u>Nuesse</u>, 385 F.2d at 319 (recognizing "*stare decisis* principles" as basis for intervention).

> **D.    Conservation Groups' Interests Are Not Adequately Represented by the Existing Parties**

The Supreme Court has explained that the "inadequate representation" requirement of Rule 24(a) "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." <u>Trbovich v. United Mine Workers of America</u>, 404 U.S. 528, 538 n.10 and acc. text (1972) (citation omitted). Under this lenient approach, representation may be inadequate where the interests of the party seeking intervention and those of the existing party are "different," even if they are not "wholly 'adverse,'" <u>Nuesse</u>, 385 F.2d at 703, or where they are "similar but not identical." <u>American Tel. & Tel. Co.</u>, 642 F.2d 1285, 1293 (D.C. Cir. 1980). Indeed, "the [D.C. Circuit] Court of Appeals has stated that 'the burden is on those opposing intervention to show that representation for the absentee will

be adequate.'" <u>Alexander v. FBI</u>, 186 F.R.D. 21, 31 (D.D.C. 1998) (quoting <u>American Tel. & Tel.</u>, 642 F.2d at 1293).

This standard is met here because the Defendants do not represent Conservation Groups' interests in this case.  The D.C. Circuit has frequently recognized that governmental representation of private intervenors may be inadequate, particularly where the private intervenors can be expected to make different arguments from their governmental counter-parts.  <u>Fund for Animals</u>, 322 F.3d at 736; <u>Dimond</u>, 792 F.2d at 193.  In this case, there can be little doubt that the government will not represent Conservation Groups' interests given the past and continuing litigation between Conservation Groups and the Defendants over the polar bear listing.  <u>See</u>, <u>e.g.</u>, <u>Idaho Farm Bureau Fed'n</u>, 58 F.3d at 1398 (noting that the FWS was unlikely to adequately represent Conservation Groups who had "compelled FWS to make a final decision by filing a lawsuit").

For these reasons, this Court should not hesitate to grant intervention as of right pursuant Rule 24(a).

## II.      IN THE ALTERNATIVE TO INTERVENTION OF RIGHT, PERMISSIVE INTERVENTION IS WARRANTED

Should this Court find that Conservation Groups are not entitled to intervene as of right under Rule 24(a), Conservation Groups move that this Court grant permission to intervene pursuant to Federal Rule of Civil Procedure 24(b).  Rule 24(b)(2) provides that:

> Upon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

18

The D.C. Circuit has stated that permissive intervention may be granted in the court's discretion if the proposed Intervenor presents "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." E.E.O.C. v. Nat'l Children's Ctr., Inc., 146 F.3d 1042, 1046 (D.C. Cir. 1998).  Additionally, permissive intervention must not "delay or prejudice the adjudication of the rights of the original parties."  Fed. R. Civ. P. 24(b)(2).  Like intervention of right, permissive intervention is to be granted liberally.  E.E.O.C., 146 F.3d at 1045 (permissive intervention granted where intervenor has substantial interest at stake even if no common claim or defense claimed; "flexible interpretations" of rule appropriate in favor of intervention); Nuesse, 385 F.2d at 704-06 (D.C. Circuit eschews strict reading of rules to advance policy favoring liberal allowance of permissive intervention).

Conservation Groups easily meet all of these requirements.  As discussed above in the context of intervention as of right, Conservation Groups' motion is timely and existing parties will not be prejudiced.  The Court has jurisdiction over Conservation Groups and their defenses, as they all involve issues of federal law in defending against the Plaintiffs' claims under federal law.  Lastly, Conservation Groups' defenses are in common with Plaintiffs' claims both in law and fact, as they address the exact matter raised by Plaintiffs—the legality of the Final Listing Rule and the implications of listing of the polar bear under the ESA.

## CONCLUSION

Conservation Groups respectfully request that, as this Court did with their previous requests for intervention in these consolidated cases, this Court grant their motion to intervene.

DATE: March 20, 2009                          Respectfully Submitted,

By:  /s/ Brendan Cummings

Brendan Cummings
Kassia Siegel
Center for Biological Diversity
P.O. Box 549
Joshua Tree, CA 92252
Phone:  (760) 366-2232
Facsimile: (760) 366-2669
bcummings@biologicaldiversity.org
ksiegel@biologicaldiversity.org

Benjamin Longstreth (DC Bar # 974015)
Andrew Wetzler
Rebecca Riley
Natural Resources Defense Council
1200 New York Ave., N.W. Suite 400
Washington, D.C. 20005
Telephone: 202-289-6868
Facsimile: 202-289-1060
blongstreth@nrdc.org
awetzler@nrdc.org
rriley@nrdc.org

Attorneys for Defendant-Intervenors
Center for Biological Diversity,
Natural Resources Defense Council,
and Greenpeace, Inc.