**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

**Misc. Action No. 1:08-0764 EGS**

# EXHIBIT A

# Declaration of Kieran Suckling in

# Support of

# Motion to Intervene

**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE POLAR BEAR ENDANGERED SPECIES ACT LISTING AND § 4(d) RULE LITIGATION | Misc. Action No. 08-0764 (EGS) MDL Docket No. 1993 |

This Document Relates To:
No. **1:09-cv-245,** *Conservation Force, et al. v. Kempthorne, et al.*

## DECLARATION OF KIERAN SUCKLING IN SUPPORT OF MOTION TO INTERVENE

I, KIERAN SUCKLING, declare as follows:

1.     I am the Executive Director and founder of the Center for Biological Diversity (the "Center"). This declaration is made in support of the Motion to Intervene in this action filed by the Center for Biological Diversity, Natural Resources Defense Council, and Greenpeace. I have personal knowledge of the facts and statements contained herein and, if called as a witness, could and would competently testify thereto.

2.     The Center is a non-profit corporation with offices in San Francisco, Joshua Tree, Sacramento and Los Angeles, California; Tucson and Phoenix, Arizona; Silver City and Pinos Altos, New Mexico; Portland, Oregon; Chicago, Illinois; Las Vegas, Nevada; Duluth, Minnesota; Richmond, Vermont; and Washington, DC. The Center works to protect wild places and their inhabitants, including the polar bear. The Center believes that the health and vigor of human societies and the integrity and wildness of the natural environment are closely linked. Combining conservation biology with litigation, policy advocacy, and strategic vision, the Center is working to secure a future for animals and plants hovering on the brink of extinction, for the wilderness they need to survive, and by extension, for the spiritual welfare of generations to come. In my role as Executive Director, I oversee all aspects of the Center's conservation work.

3.      Since I helped found the organization in 1989, the Center has grown significantly in staff and members.  It has also developed several different practice areas and programs.  One such program is the "Climate, Air and Energy Program ("Climate Program"), a program with the primary mission of curbing global warming and sharply limiting its damaging effects on endangered species and their habitats.

4.      One of the Climate Program's core strategies is to protect species most imperiled by global warming and encourage management agencies such as the Department of Interior to improve management for these species and take global warming impacts into account when making decisions affecting species.  Advocating for the protection of the polar bear has been a focal point of these efforts.

5.      The Center has worked extensively on protecting the polar bear and its Arctic sea-ice habitat, which is quickly disappearing due to greenhouse gases and global warming.  In February 2005, the Center petitioned the Secretary of Interior and U.S. Fish and Wildlife Service to list the polar bear as a threatened species under the Endangered Species Act ("ESA").  The petition contained extensive information on the threat to polar bears from global warming, overhunting, oil and gas development, pollution, and other threats.  The Natural Resources Defense Council and Greenpeace joined the petition in July 2005, and since then our three organizations have filed several lawsuits to compel the U.S. Fish and Wildlife Service ("FWS") to comply with the ESA and protect the polar bear to the fullest extent possible under the law.  We have submitted comments and additional information in support of listing the polar bear on numerous occasions, including on July 5, 2005, October 12, 2005, December 22, 2005, March 24, 2006, June 15, 2006, April 6, 2007, and October 19, 2008.  Our campaign to save the polar bear also includes extensive public outreach and education by writing, posting and disseminating information through our website, opinion editorials, and other outlets on the plight of the polar bear and global warming's dire impact on the Arctic.  The Climate Program director and lead author of the polar bear petition has also testified several times before

Congressional committees on global warming and its impact on the Arctic ecosystem and the polar bear.

6.      Our efforts to protect the polar bear under the law have proven successful, culminating in the listing of the polar bear as a threatened species on May 15, 2008.  This was an important victory for the Center and is a necessary first step in protecting the polar bear and its habitat.  The ESA listing provides strong and broad protections that increase the chances that the polar bear and its habitat will survive in the wild.

7.      While the recent listing of the polar bear provides important and necessary protections for the species, we are also working to ensure that the species receives the full protections to which it is entitled under the ESA.  These efforts include challenges regarding FWS's failure to list the polar bear as "endangered" rather than the less-protective "threatened" status they currently have, as well as challenges to the FWS' promulgation of a rule under Section 4(d) of the ESA, 16 U.S.C. § 1533(d), which reduces the protections afforded the polar bear under the ESA.  A court ruling in favor of Plaintiffs here would directly affect these claims.

8.      Having initiated the ESA listing process for the polar bear in 2005, we have dedicated substantial organizational resources toward seeking full protection for the species under the ESA.  Any legal challenge to the protections we have helped obtain for the polar bear, threatens to undo or undermine these protections, and consequently threatens our organizational interests in the polar bear, and the interests of our members.

9.      The Center advocates for the protection of polar bears on behalf of itself and its more than 200,000 members and supporting online activists.  The Center members and supporting activists throughout North America, including in Alaska and Canada, are vitally concerned with polar bear conservation.  The Center has members who have viewed and plan to view polar bears in the future, and who have educational, moral, spiritual, scientific, ecological and/or recreational interests in the polar bear.  The Center's members, in and outside of, Alaska and the Arctic also enjoy the biological,

scientific, recreational, and/or aesthetic values of the areas inhabited by these species.  I have been contacted on numerous occasions by Center members who have encouraged the Center to take all possible actions to protect the polar bear.

10.     The Center has a long history of advocating for the protection of polar bears in the Southern Beaufort Sea population which is shared between Alaska and Canada.  The Center has filed multiple comment letters and lawsuits seeking to protect these bears from the impacts of oil development.  This population is now declining and is showing some of the earliest ill-effects of global warming, including drowning, starving, reduced cub survival, and hungry bears resorting to cannibalism.  This population is also subject to trophy hunting in Canada, with many of the hunters (at least prior to May 15, 2008) being U.S. citizens who would generally seek to import their trophies into the U.S. Given importation of polar bear carcasses into the U.S. is now prohibited, it is highly unlikely that U.S. trophy hunters will continue to kill bears from this population.

11.     The Center's interest in polar bears extends beyond the bears in the Southern Beaufort Sea population.  The Center has members who have visited and intend to return to visit polar bear habitat in Alaska and Canada occupied by bears in populations subject to trophy hunting and simultaneously suffering from the impacts of global warming and reduced sea ice extent.  Many of our members have visited Churchill, Canada to view polar bears from the Western Hudson Bay population.  This population is perhaps the most impacted by global warming to date, having declined by over 20% since the late 1980s as the sea-ice season in Hudson Bay has diminished.  This population is also overhunted.  Many of the hunters who kill bears from this population have been (at least prior to May 15, 2008) U.S. citizens who would generally seek to import their trophies into the U.S.  Given importation of polar bear carcasses into the U.S. is now prohibited, it is highly unlikely that U.S. trophy hunters will continue to kill bears from this population.

12.     Plaintiffs' claims in this lawsuit threaten the Center's and our members' interests in protecting polar bears.  Plaintiffs challenge the listing decision under the ESA, the U.S. Constitution, and the Administrative Procedure Act ("APA"), and seek to halt any implementation or enforcement of the protections afforded the polar bear since being listed as a threatened species.  Any judicial decision overturning the threatened listing, in whole or in part, or enjoining the FWS from enforcing its threatened listing, would impact the Center and its members, because it would strip the current protections afforded the species under the ESA and, by extension, the Marine Mammal Protection Act ("MMPA").  The Center and its members will be irreparably harmed if the listing decision for the polar bear is overturned or modified to reduce protections that the polar bear desperately needs from greenhouse gas emissions and global warming, oil development and oil spills, overhunting, and other threats.  If the polar bear is stripped of its threatened status, or if the protections of the listing are reduced, there would be far fewer measures available to prevent the decline and extinction of this species.  Thus Plaintiffs' lawsuit threatens the Center's interests both in protecting the polar bear and in carrying out our broader organizational goals of preserving biological diversity.

13.     As mentioned above, U.S. trophy hunters have regularly killed polar bears from the Southern Beaufort Sea, Western Hudson Bay and other populations.  These populations are declining, both as a result of global warming, and (in the case of Western Hudson Bay) as a result of unsustainable harvest.  The Center believes that the prohibition of the importation of polar bear carcasses will likely mean that far fewer U.S. trophy hunters will kill polar bears as they will no longer be able to import their trophies. Ultimately, this will likely lead to a reduction in the number of polar bears killed.

14.     A court ruling agreeing with Plaintiffs' position and allowing polar bear carcasses to be imported into the U.S. once again will likely result in a resumption of polar bear hunting by U.S. citizens and renewed harvest pressure on polar bears.  Such impacts would harm the interests of the Center and its members.

15.     A court ruling in Plaintiffs' favor would also harm the procedural and informational interests of the Center and its members, as to obtain the same level of protection for polar bears that they currently enjoy, would require a separate rulemaking under the MMPA, the results of which are uncertain and potentially less protective of the polar bear.

16.     The Center and its members will be irreparably harmed if the listing decision for the polar bear is overturned or modified to reduce protections that the polar bear desperately needs from greenhouse gas emissions and global warming, oil development and oil spills, overhunting, and other threats.  If the polar bear is stripped of its threatened status, or if the protections of the listing are reduced, there would be far less to prevent the decline and extinction of this species.  Thus Plaintiffs' lawsuit threatens the Center's interests both in protecting the polar bear and in carrying out our broader organizational goals of preserving biological diversity.

17.     Additionally, a court decision in favor of the Plaintiffs could decrease protections available to species whose populations cross international borders and could increase FWS delays tolerated by courts.  The Plaintiffs' perspective on foreseeability and reliability of the science employed by FWS in its determination could alter the current law of global warming and thus make implementing protections for endangered species less likely.

18.     I do not believe that Defendants adequately represent the Center's interests in protecting the polar bear.  The current ESA protection for the polar bear only came about after a petition and subsequent litigation by the Center against Defendants to force them to impose statutorily-mandated protections for the species.  As described above, the Center is also currently in litigation against Defendants over the inadequacy of the final listing rule and the current protective measures for the species under the ESA.

19.     If the Center is not allowed to intervene in this action, its ability to carry out its mission and protect its members' interests, as described above, will be severely impeded.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed on March 19, 2009, at Tucson, Arizona.


_____
            KIERAN SUCKLING