## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN RE POLAR BEAR ENDANGERED      )
SPECIES ACT LISTING AND § 4(d)   )
RULE LITIGATION                  )      Misc. Action No. 08-00764(EGS)
                                 )      MDL Docket No. 1993
This Document Relates To:        )
*Conservation Force, Inuvialuit Game* )
*Council, et al., v. Salazar, et al.,* )
*No. 1:09-cv-245*                )
                                 )

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO THE PROPOSED INTERVENTION OF HSUS, IFAW AND DEFENDERS OF WILDLIFE

Movants have moved to intervene in this case under the mistaken impression that one or more of the six claims in Plaintiff's petition is a legal challenge of the trophy import ban 4 (d) special regulation.  None are.  Regardless, the proposed intervenors do not meet four of the five criteria for intervention of right, Rule 24 (a), and certainly should not be permitted to intervene permissibly, Rule 24 (b).

### MOVANTS' STATUTORY REPRESENTATION

The Movants' statements about the statutory framework of the ESA call for correction or at least clarification.

The polar bear is not listed as "endangered" as Movants state. It is listed only as "threatened". Regardless, the ESA does not prohibit "take" in foreign lands as implied. The ESA also does not provide it is illegal to "import any such species into…the United States," as stated. Instead, the ESA under 16 U.S.C. 1538 (c) (2) exempts imports of trophies from importation restrictions when the threatened listed species is protected on Appendix II of CITES as is the polar bear. Congress inserted that exemption in full recognition of the beneficial conservation

value of U.S. tourist hunting when it is a component of the conservation strategy in foreign countries as is recognized in the final polar bear Rule in this instance.

It is not the ESA itself that prevents trophy imports. More accurately stated, a provision in the MMPA is triggered by any ESA listing. Under the MMPA, any ESA listed marine mammal is "depleted". The "depletion" status is a legal fiction, not necessarily a fact, and most certainly not a fact in the case of the polar bear now or in the immediate future. All of the attorneys in these consolidated cases are likely to be retired if not deceased before most polar bear populations are projected to in fact become depleted, if they do. Those bear already taken from FWS approved areas come from populations that were not in the fictional "depleted" class at the time they were taken. To the contrary, they were populations selectively pre-approved by the USF&WS for importation. That approval process has had a very positive effect on what was already undisputed to be the very best polar bear management system in the world: Canada. The listing has wholly eliminated that vehicle for constructive influence.

It is the MMPA, not the ESA that prevents the import of trophies. Plaintiffs make no claim under the MMPA, so the proposed intervention rests wholly upon a mistaken interpretation of plaintiffs' claims. The claims arise under the ESA, APA and Constitution, not the MMPA or the 4 (d) Rule of the ESA implementing the MMPA provision.

## MOVANTS' STATEMENTS OF RELEVANT FACTS

Movants make a number of mistaken representations.

The statement that "plaintiffs appear to seek relief that would require the U.S. Fish and Wildlife Service…to grant…import of polar bear body parts into the United States" and that intervenors "are already intervenors in several other suits…raising similar, if not identical, arguments regarding the import of polar bear trophies" is wholly incorrect (page 1 of memo).

Intervenors also incorrectly analogize SCI's suit with the Conservation Force, Inuvialuit Game Council, et al. (we include the Inuvialuit Game Council in the designation because it is imperative that the real conservationists be given due regard) suit by stating that the allegations are "very similar" because SCI "requests that the Court Order the FWS to process those and other permits applications *despite* the listing." Emphasis added. Not true.

This wholly mischaracterizes plaintiffs' petition and claims. These mistaken assertions do not conform to any one of the six claims in plaintiffs' petition. At no time do plaintiffs attack the 4 (d) Rule that prohibits the import of trophies as do the SCI and two Pennsylvania cases that Movants cite and have already permissively intervened.

Conservation Force, Inuvialuit Game Council, et al. only challenge the listing, not the special 4 (d) Rule that is dependent upon the listing. If the listing is set aside, then the special Rule will fall with the listing, not "despite the listing". Plaintiffs have not made a claim to challenge the 4 (d) Rule and have no such intent, so the Motion to Intervene should be dismissed outright.

This is a wholly different case than SCI's claim challenging the 4 (d) import ban rule implementing the MMPA depletion. The legal issues raised by Movants are outside of the scope of plaintiffs' suit. If allowed to intervene, Movants would be raising defenses to a claim not made by plaintiffs. In effect, it is a back door argument against the three cases that do challenge the 4 (d) Rule trophy import ban without opposition because the plaintiffs in this suit are in no position to argue the merits of the three cases attacking the 4 (d) Rule trophy import ban and have no intent to.

Those issues of law concerning the 4 (d) Rule are not part of this claim. The 4 (d) Rule is a special rule with multiple parts – only one of which is a ban on further import of tourist hunting

trophies. It is highly prejudicial to those making claims related to the 4 (d) Rule that plaintiffs in this case are put in a position that we must address their challengers. The essential question of law is different. That legal issue is not part of these plaintiffs' claims. Plaintiffs herein only challenge the legality of the ESA listing, not any subsequent 4 (d) special Rule or regulation under the MMPA.

Moreover, Movants' intervention herein would be unnecessarily redundant and cumulative since intervenors admit they have already been permitted by consent to permissively intervene in the three cases that do in fact challenge the legality of the trophy importation ban within the 4 (d) special Rule.

In a footnote, page 7, Movants erroneously state they "anticipate that the Court will direct" plaintiffs "to file one set of consolidated briefs with SCI and the Pennsylvania plaintiffs concerning the polar bear import issue...." They then state intervenors can respond to "*all* of the plaintiffs on the import ban issue." To the contrary, the Conservation Force, Inuvialuit Game Council, et al. challenge to the "import ban issue", 4 (d) special Rule, can't be consolidated because it does not exist and is not a claim made in the Conservation Force, Inuvialuit Game Council, et al. petition. It is not a common issue of law or fact. None of plaintiffs' claims challenge the legality of the import ban under the MMPA, only the ESA listing.

It is awkward addressing a motion to intervene that purports to defend against claims one has not made, but there are many other reasons the intervention is inappropriate even if Movants were attempting to intervene in the correct claim.

## ARGUMENT IN OPPOSITION

### I.   THE PROPOSED INTERVENORS ARE NOT ENTITLED TO INTERVENE AS A MATTER OF RIGHT

Intervention as a matter of right is afforded to anyone who:

> on timely motion, . . . claims an interest relating to the property or transaction that
> is the subject of the action, and is so situated that disposing of the action may as a
> practical matter impair or impede the movant's ability to protect its interest,
> unless existing parties adequately represent that interest.

Fed. R. Civ. Pro. 24(a)(2).  The D.C. Circuit requires a movant to fulfill all 5 prerequisites before

intervening as of right: "(1) the application to intervene must be timely; (2) the applicant must

demonstrate a legally protected interest in the action; (3) the action must threaten to impair that

interest;  . . .  (4) no party to the action can be an adequate representative of the applicant's

interests;" and (5) Article III standing in order to participate the same as the original parties.

*Atlantic Sea Island Group LLC v. Connaughton,* 592 F.Supp.2d 1, 6 (D.C. 2008).

Pursuant to the Scheduling Order, the Movants have fulfilled the first criteria of

timeliness by stipulation. The Movants do not satisfy the other four requirements.

### A.   Movants Do Not Have a Protected Interest Relating to the Subject of the Action.

Movants' interest is not related, not protected, and not the subject of plaintiffs' claims.

Movants' interest is ideological and philosophical opposition to recreational hunting, but that is

not the objective on the ESA or MMPA. It is not a protected interest.

The Movants do not have a sufficient interest relating to the litigation challenging the

listing of the polar bear. "A court may not uphold an agency action on grounds not relied on by

the agency." *Friends of the Wild Swan v. Fish & Wildlife Serv.,* 896 F.Supp. 1025, 1027 (Or.

1995).  Movants claim that the purpose of their interests in the intervention is to preserve the

rights of their members to travel to observe the bear in Churchill, and U.S. hunting threatens that

activity. Memorandum In Support of Motion To Intervene Dkt. 35, p. 9-10. That is not an

appropriate interest for intervention because the hunting was not one of the reasons the agency

listed the bear. In fact, the U.S. hunting was specifically ruled to benefit the bear and not to be

the threat or reason to list. "Because the Intervenors' merely seek to interject their interests and concerns, . . . in defense of the USFWS's decision they do not have legally protectable interest." *Friends of the Wild Swan,* 896 F.Supp. at 1027. The Movants superfluous reasons for supporting the USF&W's action are not a sufficient interest in the litigation to allow intervention as a matter of right.

Regardless, Movants' interest in the 4 (d) Rule import ban is not an "interest in the (this) action," because this case is not challenging the 4 (d) Rule import ban at all.

**B.      Movants Do Not Have Standing to Intervene.**

Movants must show three separate things to establish standing under Article III of the Constitution:

> [First, that they have] suffered an injury in fact – an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan,* 504 U.S. at 560-61 (1992) (internal quotation marks and citations omitted). Movants fail to show any of the three.

**1.      Movants Will Not Suffer a Particularized Injury Due to Plaintiffs' Requested Relief.**

Movants will not suffer a particularized injury because one or more of the Movants' members are not "directly affected apart from their special interest in the subject." *Id.* at 2138. "General emotional 'harm,' no matter how deeply felt, cannot suffice for injury-in-fact for standing purposes." *Humane Society of the U.S. v. Babbit,* 46 F.3d 93, 98 (D.C. Cir. 1995). The Endangered Species Act does not create "rights of action in persons who [do not] use portions of an ecosystem not perceptively affected by the unlawful actions in question…A plaintiff claiming

injury from environmental damage must use the area affected by the challenged activity and not

an area roughly 'in the vicinity' of it." *Lujan* 504 U.S. at 2139. (citing *Lujan v. National Wildlife*

*Federation,* 497 U.S. 871, 887-889 (1990)). Specifically, the affidavits submitted by the Movants

discuss at length vacations to the Churchill area. Churchill does not and has not had the hunting

Movants complain of. In fact, hunting is closed and has been closed in the whole Manitoba

province of Canada as far back as 1986 where Churchill is located. That is not a location in

which the hunting they philosophically loathe occurs or will occur.

Nor is the alleged imminent injury due to Plaintiff's requested relief. Once again,

plaintiffs challenge the listing, not the 4 (d) Rule import ban.

Movants don't assert more than a generalized intent to return to Churchill and the

Churchill area.

> "The affiants' profession of an 'intent' to return to the places they had visited
> before – where they will presumably, this time, be deprived of the opportunity to
> observe animals of the endangered species – is simply not enough. Such 'some
> day' intentions – without any description of concrete plans, or indeed even any
> specification of *when* the some day will be – do not support a finding of the
> 'actual or imminent' injury that our cases require."

*Defenders of Wildlife,* 504 U.S. at 563.

### 2.      Movants' Alleged Injury Would Not Be Caused By the Plaintiffs' Relief.

There is no casual connection between the hypothetical injury alleged by Movants and

the relief requested by Plaintiffs. If the Plaintiffs' relief is granted and the listing is revoked, the

Movants' members will not be prevented from traveling, observing, studying and advocating for

the polar bear. The record is clear that another intervening cause is projected to interfere with

Movants' viewing and touring, not hunting. Ice melt, not hunting, is the projected cause. Hunting

was expressly found not to warrant listing and instead found to benefit the bears. Also, the quota

exists regardless of who takes the bear and the same or a greater number of bear will be taken because the Inuit harvest success rate is higher than that of U.S. tourist hunters.

Again, Plaintiffs have not challenged the 4 (d) Rule implemented by the MMPA, but have challenged the ESA listing and only the listing. The ESA listing was based upon the five listing criteria specified in the *Determination* section of the Endangered Species Act. Tourist hunting by U.S. citizen hunters was not found to be a threat and/or reason for the listing. Fewer bear are taken when tourist hunting is allowed and the greater the tourist hunting share of the quota, the fewer the total number of bear taken. Moreover, the more U.S. tourist hunters, the fewer female and young taken. The quota is the same, but the success rate is lower for tourist hunters and the selection of the animal has less biological impact than native take. See the three attached sworn declarations by acknowledged experts with real and unsurpassed personal experience.

### 3.    Movants' Alleged Injury Would Not Be Redressed By Denying Plaintiffs' Relief.

Movants' supposed injuries allegedly result from the continued importation of trophies of polar bear if the 4 (d) Rule is held invalid.  Even if the 4 (d) Rule is maintained, hunting in these countries will continue; therefore, Movants injuries are not redressed by gaining intervention status and succeeding in litigation.

*Funds for Animals v. Norton* is a standing case on point. In that case, a suit filed by HSUS and others to force the listing was dismissed because the imposition of a trophy import ban if the game animal was listed as endangered rather than threatened would not reduce the quota or offtake in the foreign country.

> Plaintiffs' redress depends on the intervening actions of the governments of Kyrgyzstan, Mongolia, and Tajikistan---namely their decision whether to limit the hunting and killing of argali in their respective countries. Because a prohibition

on the importation of argali into the United States and a listing of the argali in those countries as endangered under the ESA would not prohibit those governments from issuing hunting permits, and because prior U.S. import restrictions did not decrease the hunting and poaching of argali, Plaintiffs have failed to demonstrate that they will likely obtain redress from a favorable decision on the merits.

*Funds for Animals v. Norton,* 295 F.Supp.2d 1, 8 (D.C. 2003). There is little question that a judgment in Movants' favor would lead to a greater harvest of bear and the harvest of more biologically productive bear instead of surplus males. See attached affidavits. That aside, it would not redress their viewing in the Churchill area nor in that whole province as there is no hunting and will not be any hunting there regardless. There is also no question that the listing that Plaintiffs have challenged does not provide benefits for the bear in the Churchill area that is not a population in a shared jurisdiction with the United States. The ESA does not provide benefits for foreign species, including a conservation plan that one of Movants' affiants erroneously alluded to.

Movants have not specified how they will benefit if the listing is upheld since the "efficacy of the listing" was not even a consideration of the USF&WS that recognized the benefits of the U.S. trophy imports and related tourist hunting, but ruled that was "not a factor to be considered", 73 F.R. at 28252.

Listed or not, the Canadian quota remains the same. Also, there is no hunting in Movants' members' Churchill viewing area. If the listing is remanded and those trophies already taken are imported in the interval (Court permitting), those bear were taken in recognized "conservation hunts" and were dead before the listing occurred and cannot be of any legitimate concern to Movants. Those dead bear can't be viewed in Churchill (and were not taken in Churchill in any event). If the listing is set aside and imports of bear taken in the future resumes, then in total, fewer bear and less biologically significant bear will be taken, there will be far more

conservation revenue from that hunting, more stewardship and management participation by the local people and consequently a greater number of bears than would otherwise exist. Hunting still would not occur in Churchill or the province of Manitoba at all.

### C.   The Interests of Movants are Adequately Represented By The Federal Defendants.

The interests of Movants are adequately represented by Federal Defendants. Certainly the USF&WS is well qualified to defend its own listing and is doing so vigorously. It is also defending its 4 (d) Rule vigorously, but as already pointed out, Plaintiffs are not challenging the 4 (d) Rule. "A putative intervenor does not have an interest not adequately represented by a party to a lawsuit simply because it has a motive to litigate that is different from the motive of an existing party." *Natural Resources Defense Council, Inc. v. New York State Dept. of Environmental Conservation,* 834 F.2d 60, 61 (2nd Cir. 1987). "Where an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises." *Northwest Forest Resource Council v. Glickman,* 82 F.3d 825, 838 (9th Cir. 1996) (citations omitted). In other words, if the relief requested by the Movants is the same as an existing party, the Movant is adequately represented, regardless of the Movant's motivations for intervention. The ideological objection to all forms of recreational hunting is not the objective of the ESA or a protected interest relevant to the proceedings.

### D.   Movants' Sworn Declarations.

The declarations do not satisfy the enumerated requirements for intervention. They do not enumerate any concrete, particularized interests that will be injured in fact and redressed in fact other than abstract, ideological or philosophical opposition as advocacy and animal rights organizations interested in opposing recreational hunting. The interests described are no more distinctive than that of anyone with an opinion, or more accurately stated, any misinformed

member of the public. None of the declarants or organizations is directly engaged on the ground in Canada (the only country of interest in plaintiffs' petition) in the actual management, conservation or research of the bear in the wild, and certainly not in hunting areas that had been approved for trophy import by the USF&WS.

If Movants were to prevail, then there would be less incentive and revenue to conserve the bear where and by whom it is performed. The number of bear actually harvested would be increased and certainly would not decrease. More bear would be taken by Inuit that are more likely to take younger males and females. More would be taken by non-U.S. tourist hunters that don't have to get pre-approval before import into the U.S. and the positive influence of that entire process. Any actual injury would be to declarants' sensitivities, not to the status of the bear.

    **1.**        **Declaration of Vicki Burns.**

The sworn declaration of Vicki Burns is typical of the eight sworn declarations. Like seven of the eight, it was done for intervention in one of the two SCI cases, Re. 08-0881, not this case. The declarant states she is "currently" a member of IFAW, lives in Manitoba, and "over a decade ago" she "traveled to Churchill during the off-season for polar bear sightings to" discourage the "capturing (of) polar bears." Presumably that is the capturing and relocating of problem bears instead of shooting them, which seems to be a contradiction by declarant. Something has to be done with problem bears.

Then declarant states, "I traveled at this time because I expected less opposition because nobody would be there hunting" and "I will return to Churchill in the next few years (indefinite)…which is one of the areas where U.S. sport hunters kill polar bears for import into the United States. While there, I intend…to encourage safe hunting

practices." She then describes trophies as "carcasses butchered for sport" and importation as "ludicrous." She admits she has "never seen polar bears in the wild," but wants the opportunity "one day." (9).

Apparently both IFAW and this declarant don't even know there is no hunting in Churchill or the entire province of Manitoba and has not been. They don't know that the "carcass" – meat and internal organs of the bear – has never been importable because those components do not meet the regulatory definition of trophy parts. These blatant misrepresentations of "personal knowledge of the matters set forth" (1) reflect negatively on what the Movant would bring to the litigation. If not perjurous misrepresentations, they demonstrate that IFAW has not had sufficient protected interest in Canada to even know that there is no hunting in Churchill and carcasses are not trophies. Stopping the import of trophies will not reduce the subsistence consumption of polar bear meat within the limits of the harvest quota set by the Canadian authorities and will not stop hunting in Churchill because there hasn't been any hunting there. How could Movants submit such a false declaration?

**2.   Declaration of Robert Laidlaw.**

This too is a declaration for SCI's case, not initially intended for Conservation Force, Inuvialuit Game Council, et al. The declarant is also "currently a member" of IFAW. He ideologically thinks that trophy hunting is a "cruel practice" (2). He represents that Churchill was an area he had visited on two occasions and was hunted until recently. He is of the ideological animal rights belief that "all animals, including polar bears,…should be allowed to live undisturbed" and he "would benefit from knowing that

polar bear are being protected from hunting if they (IFAW) were successful." He hopes

to return to view them "within the next few years" (indefinite) (6).

This is another declarant that does not realize there is no hunting in Churchill,

the hunting in other provinces is on a harvest quota, and has been for many decades. His

future return is indefinite and the bear will be hunted in equal or greater numbers, where

they are hunted, regardless of this suit. His subjective opinion about what constitutes

cruelty is not the subject of the listing.

### 3.   Declaration of Andrew Page.

This is the only declaration with this case caption on its face, i.e., not prepared

for SCI's suit. This declarant is the "Director of the Wildlife Abuse Campaign" of HSUS.

He states that, among other things, HSUS's mission is "advocacy" (1) and "[t]he HSUS

thus opposes the hunting of any living creature for purposes of recreation or trophy

collection alone." (3) Its "international division, Human Society International, works to

eliminate…the promotion of sport hunting of threatened and endangered species…." (5)

He emphasizes all of the unrelated programs that HSUS has and its desire to spend its

resources on those rather than advocacy to oppose U.S. citizen polar bear hunting

because it has "caused a consequent drain on the resources available for other

organizational priorities (17, 18, 19).

This is an ideological advocacy organization with little interest in the polar bear

itself on the ground and no engagement in the actual conservation of the bear where it

occurs in Canada. Its real interest is not protected by the ESA and should not legally be

the subject of the suit. Its agenda is the end of all recreational hunting in the world and it

wishes to get on with other business other than polar bear because that is not its real

concern. This is not a declaration of the conservation officer, but the head of the Wildlife

Abuse Campaign which presumably is concerned with cruelty and includes the extreme

view that all hunting is cruel because it is unnecessary. The HSUS is far removed from

the conservation and management of the bear in Canada, but wishes to force its

philosophy against the North American Conservation Model and sustainable use on the

Canadian governing, wildlife management authorities and Inuit people through the ESA

and MMPA. That is not the purpose of the ESA and this is not a "protected interest."

As an aside, Conservation Force does not "conduct competitions…to

kill…animals" as represented (8). That is not the nature of Conservation Force.

### 4.   Declaration of James Pissot.

This declarant is an employee of "Defenders" and this is the sole declarant in

behalf of Defenders. It was prepared for the SCI intervention which challenges the 4 (d)

rule not challenged by plaintiffs herein. He falsely represents that the ESA/MMPA will

provide a "conservation plan" for the polar bear and that "[i]f the depleted species

designation is declared unlawful in this case [SCI's 4 (d) Rule challenge] or otherwise

removed, these conservation benefits would be lost." (9) He does not specify any

participation in polar bear conservation or management on the ground in Canada by

Defenders, but specifies that Defenders has a longstanding campaign to stop the import of

hunting trophies.

Defenders has a long history of opposing recreational hunting of listed species.

That is not an ESA protected interest. As a matter of law, neither the ESA nor MMPA

provide "conservation plans" for polar bear beyond the jurisdiction of the USA, certainly

not in the tourist hunting areas of Canada. No such benefit can be lost. This is a suit

limited to overturning the listing of the bear in Canada and only Canada. A greater number of bear and more productive bear will be taken anyway and the management authorities will have less conservation revenue and the local people reduced conservation incentives, participation and cooperation if Defenders prevail.

**5.    Declaration of Carolyn Potts.**

This is the only IFAW declarant with a specific membership date, September 2006. This too is a declaration intended for SCI's case. Her past and planned trips were to Churchill and a lodge on its immediate outskirts in Manitoba. Most of her declaration is hearsay, opinion and irrelevant to any protected interest. Her assumption that more bears will be available to enjoy in Churchill is incorrect and baseless, but is qualified by the statement her interest will be "harmed if U.S. sport hunters are again permitted to import…trophies and trophy hunting was to resume at the same level as occurred prior to the listing…." Well, the quota in adjacent provinces has been reduced, so it will not be the same until and unless the real management authorities determine it is warranted. Moreover, the listing record is replete with the undisputed fact that there have been too many polar bear is Churchill for decades. They must be trapped and allocated every year. It is an entirely invented problem.

**6.    Declaration of Else M. B. Poulsen.**

This is another IFAW member declaration intended for intervention in SCI's case and he has been to Churchill and Manitoba. He does not appear to be a biologist or involved in bear management in the wild. He claims some interest and expertise with captive bear but misuses the term "stress" (9) by suggesting that the reduction in the biologically surplus large adult males increases stress and then contradictorily stating that

trophy hunting in the past has been excessive (10). He is not a qualified expert and his declaration is contrary to basic wildlife management principles. Even in captivity, stress is caused by too many animals within a certain size habitat and food supply, particularly when they are large, dominant males. You reduce "stress" by removing some, preferably the large males.

His underlying point is that his ability to study, observe, photograph and enjoy polar bears "will be harmed if U.S. sport hunters are again permitted to import trophies and trophy hunting was to resume at the same level as occurred prior to the listing...." That has already been pointed out not to be true or even sensible. The point is the quotas are flexible and have been reduced by the Canadian management authorities. They have had to be reduced in part because more bear are expected to be taken when fewer of the bear are being allocated to tourist hunters that have a lower success rate – just the opposite of what a layperson or non-expert might realize.

**7.    Declaration of Naomi A. Rose.**

This is another declaration done for the SCI intervention. Though she is a Ph.D., she is clearly not a polar bear biologist. Nearly everything she states is incorrect or stated out of context. She is the "Senior Scientist for the International Policy Division" and HSUS is against all recreational hunting as a matter of policy and has opposed the import of polar bear since it began in 1996. (The MMPA was amended in 1994 in recognition of Canada's program, but not implemented by regulation until 1996.) See attached declaration of a real polar bear biologist, Mitch Taylor, Ph.D.

She is not qualified to render the opinion in her declaration, except to the "policy" of HSUS that is against all hunting. An example is her flagrant, false

representation that the U.S. is required to adopt a "conservation plan" (27) and has adopted an MOU that covers the areas in issue. The MOU is only for the one shared population with Canada (Southern Beaufort Sea) and is unfunded and expressly has no funding obligation. There is no requirement for the U.S. to adopt a conservation plan on foreign lands, nor such authority or jurisdiction. Her statement that the Western Hudson Bay polar bear population "had decreased by over 16% in only a few years" is another complete falsehood (15). The suspected decline is over 17 years, has been found to be an overstatement, and the population is now recovering (See Taylor declaration).

### 8.   Declaration of Lorie Zerneck.

This is another IFAW member with a declaration intended for the SCI suit. He confuses trophies with "carcasses" (3). He made a trip to Churchill where he mistakenly thinks hunting tags are issued (11, 13). His opinions are not admissible or correct. His viewing opportunities will be worse, not better.

## II.   THE PROPOSED INTERVENORS ARE NOT ENTITLED TO PERMISSIVE INTERVENTION.

Permissive intervention in the petition of Conservation Force, Inuvialuit Game Council, et al. is entirely inappropriate. Movants' proposed intervention defends that portion of the 4 (d) special Rule that implements the fictional depletion of the MMPA triggered by the ESA listing. Plaintiffs make no claim against the 4 (d) Rule, so Movants don't have "a claim or defense that shares with the main action a common question of law or fact," Fed. R. Civ. Pro. 24 (b) (1). The legality of the 4 (d) Rule is not a legal or factual issue in the plaintiffs' petition.

### A. The Proposed Intervenors' Claim Do Not Share a Common Question of Law or Fact With the Main Action Because Movant's Issue Is Extrinsic.

The legality of the 4 (d) Rule is the primary if no sole issue in three other consolidated cases in which the Movants have been permitted to permissively intervene by consent. To quote the motion to intervene, "Applicants have already been granted intervention in three cases where substantially similar arguments opposing the ban on polar bear imports are being made... Accordingly, [permissive intervention would] permit the applicants to fully participate in the consolidated briefing that will occur on these issues." Memorandum in Support of Intervention, p. 15 (emphasis in original). That is not reason. If the issue of the legality of the trophy import aspects of the 4 (d) Rule implementing the MMPA are jointly briefed, it will be jointly briefed in the three cases that raise the MMPA issue, not the Conservation Force, Inuvialuit Game Council, et al. ESA claim. No part of the legality of that 4 (d) Rule has been challenged by plaintiffs, so it would be entirely out of order for plaintiffs to participate. It is not a "common issue of law" with these plaintiffs. Plaintiffs don't take issue with the legality of the 4 (d) Rule. It is an extrinsic issue. *See Leach v. Standard Register Co.,* , 94 F.R.D. 192 (AK 1982) (permissive intervention denied when the issue raised by intervenor was beyond the scope and issues raised in the complaint); *Federal Trade Comm'n v. First Capital Consumer Membership Servs., Inc.* 206 F.R.D. 358 (N.Y. 2001) (permissive intervention denied because attempt to introduce collateral issues); *U.S. v. City of New York,* 179 F.R.D. 373 (N.Y. 1998), affirmed 198 F.3d 360 (2nd Cir. 1999) (permissive intervention denied because interest broadly related to the subject mater of the action but extraneous to the issues before the Court in that claim).

**B.    The Proposed Intervenors' Are Adequately Represented By the Federal Defendants.**

Movants are advocacy organizations openly hostile to sustainable use and the traditional user-pay wildlife management that has been successfully practiced throughout North America for over 100 years. They are openly hostile to game hunting and they take an ideological approach to the litigation, rather than making legal arguments. The ESA is intended to perpetuate species at risk, not to advance Movants' ideological concerns. The intrusion of their subjective concerns (and misinformation) in the litigation would add little, while it certainly can be expected to complicate and confuse the issues that are truly relevant. *Northland Family Planning Clinic, Inc. v. Cox,* 487 F.3d 323 (6th Cir. 2007); *Friends of the Wild Swan,* 896 F.Supp. 1025. The existing misrepresentations and confusion of issues in their motion and many sworn declarations demonstrates this to be a fact.

There are plenty of issues in the complex consolidated cases without Movants adding extrinsic issues to the litigation. They have not claimed or demonstrated concrete interests relevant to the legal issues. The sworn declarations demonstrate a lack of knowledge (if not candor) which in turn demonstrates the irrelevancy of their interests. How could they not know that Churchill and even the whole province in which it is geographically situated has not had tourist or subsistence hunting in modern times? How could they claim that the ESA listing will provide a recovery plan or cooperation arrangements as critical habitat or even funding on foreign lands? How could they claim that the harvest of females, cubs and younger males should be preferred over older adult males? How could they know so little as not to know that the overall offtake of bear had been less due to the U.S. tourist hunting?

We respectfully suggest that the true Defendants in this case that made the listing are more than qualified and able to defend their own listing and 4 (d) special Rule. The USF&WS

knows the issues, the ESA, the MMPA and the administrative record. This is truly a case in which the Movants have nothing relevant to add and their legitimate interests are already well-represented. They certainly can represent their interest in defending the 4 (d) Rule in the three cases they have already intervened in permissively. Intervention herein would be duplicative, cumulative and confusing.

### C.    The Movants Will Unduly Delay or Prejudice the Adjudication of the Original Parties' Rights.

Movants' intervention would both prejudice and delay the original cause of action. Movants would have plaintiffs challenge the legality of the 4 (d) Rule import ban when that is beyond the scope and specifics of plaintiffs' six claims. It suggests plaintiffs make a joint brief on the 4 (d) Rule when it might well moot many of the claims plaintiff has made against the listing. Plaintiffs don't question the legality of the 4 (d) Rule trophy import ban at all. To the contrary, plaintiffs challenge the listing when the government defendant did not take into account the foreign nation's conservation program, the "efficacy" of the listing – in short, the consequences of the listing of the best existing polar bear conservation system in the world.

> "Where a proposed intervenor merely underlines issues of law already raised by the primary parties, permissive intervention is rarely appropriate . . . the court declines to allow full-scale intervention that will inevitably bring about delay, repetition, and the clouding of the issues involved in the original cause of action."

*U.S. v. American Institute of Real Estate Appraisers of the Nat. Ass'n of Realtors,* 442 F.Supp. 1072, 1083 (N.D. Ill. 1977).  As previously mentioned, the Federal Defendants adequately represent the same issues the Movant advocates; therefore, the Movant repeats the same legal points, while confusing the factual circumstances surrounding the litigation.

In addition, when a court recognizes the magnitude and importance of a litigation, such that to allow intervention "would open the floodgates to innumerable others with the potential for

drowning the whole project in a sea of litigation," permissive intervention is denied because it would unduly delay and prejudice the existing parties. *U.S. v. Metropolitan District Commission,* 147 F.R. D. 1, 6 (Mass. 1993). The parties to the litigation are already numerous and the potential for tangential issues to arise is great; therefore, to add yet another party, that reaps no direct benefit from the holding, does not exert judicial economy.

The three 4 (d) Rule cases that Movant has already permissively intervened in is reason to deny the proposed intervention. Another intervention would be redundant and cumulative. Permissive intervention has been denied when it is found to be redundant or cumulative. The existing intervention in the other three cases in which the 4 (d) Rule is squarely in issue already provide the Movant an opportunity to fully determine its alleged rights and interests. A just determination will already be made, so Movant would not in fact benefit by adding extrinsic legal issues to Plaintiffs' case. The "similarity" Movants allege with the other three cases provides Movants more than adequate means of asserting their defenses and defending their interests. When a Movant has had other means of asserting its rights, a charge of abuse of discretion in the denial of a motion for permissive intervention "would appear to be almost untenable on its face." *Korioth v. Briscoe,* 523 F.2d 1271 (5th Cir. 1975). *See also California v. Tahoe Regional Planning Agency,* 792 F.2d 775 (9th Cir. 1986), where intervention was denied because it would be "redundant;" *Environmental Defense Fund v. Costle,* 79 F.R.D. 235 (D.C. 1978) where permissive intervention was denied when merely "cumulative".

### D.        Movants Do Not Have Sufficient Standing To Grant Permissive Intervention.

Although this Circuit has not definitively determined if standing is necessary for permissive intervention, the discretion of the court is broad; therefore, the court may review Movants' standing under permissive intervention as well. *In Re Vitamins Antitrust Class Actions,*

215 F.3d 26, 31 (D.C. Cir. 2000); *Environmental Defense v. Leavitt,* 392 F.Supp.2d 55, 66

(D.D.C. 2004). As previously discussed, the Movants lack the necessary injury or relevant

protected interest, causation, and redressability to qualify to have standing.


Respectfully submitted,



John J. Jackson, III
Attorney at Law
3240 S. I-10 Service Rd. W., Ste. 200
Metairie, LA  70001-6911
(504) 837-1233
jjw-no@att.net
D.C. Bar No. 432019

## CERTIFICATE OF SERVICE

    I, John J. Jackson, III, hereby certify that on March 30, 2009, I served copies of the Memorandum In Opposition to the Motion to Intervene By Conservation Force on the following parties by way of U.S. mail.


March 30, 2009
Date

John J Jackson, III
3240 S. I-10 Service Rd., Suite 200
Metairie, LA 70001
Phone: (504) 837-1233
Fax: (504) 837-1145
Email: jjw-no@att.net
D.C. Bar No. 432019