UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN RE POLAR BEAR ENDANGERED | ) | Misc. Action No. 08-0764 (EGS) |
| SPECIES ACT LISTING AND § 4(d) RULE | ) | MDL Docket No. 1993 |
| LITIGATION | ) | |
| | ) | FIRST AMENDED COMPLAINT |
| | ) | |
| This Document Relates to: | ) | |
| *California Cattlemen's Assoc., et al. v.* | ) | |
| *Kempthorne, et al.*, | ) | |
| No. 1:08-cv-1689 (EGS) | ) | |
| | ) | |

FIRST AMENDED COMPLAINT OF PLAINTIFFS CALIFORNIA CATTLEMEN'S

ASSOCIATION AND CONGRESS OF RACIAL EQUALITY

## INTRODUCTION

1.    This first amended  complaint is being filed pursuant to the Court's Scheduling Order

dated February 26, 2009.  Plaintiffs, California Cattlemen's Association and Congress of Racial

Equality, seek declaratory judgment and injunctive relief against Federal Defendants for violating

statutory law.  Defendants' listing of the polar bear (Ursus maritimus) as a "threatened" species is

not warranted by the facts, is an abuse of discretion, and is otherwise not in accordance with law.

Specifically, Defendants (a) improperly discounted and failed to use the best available scientific and

commercial data; (b) failed to articulate a legal standard to determine threatened status; (c) failed to

provide  adequate  explanation  for  the  listing  determination;  (d)  improperly  relied  on  unproven

predictive  models;  and  (e)  otherwise  used  data  and  methodologies  that  do  not  meet  standards

generally  accepted  in  the  scientific  community.   Therefore,  the  Final  Rule  listing  the  polar  bear

violates the  Endangered  Species  Act  (ESA)  (16 U.S.C. § 1531, *et seq.*) and the  Administrative

Procedure Act (APA) (5 U.S.C. § 551, *et seq.*) and requires vacatur.

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C.

§ 1331 (federal question jurisdiction); § 1346(a)(2) (civil action against the United States); § 2201

(authorizing declaratory relief); § 2202 (authorizing injunctive relief); 16 U.S.C. § 1540(g) (ESA

citizen suit provision), and 5 U.S.C. § 702 (providing for judicial review of agency action under the

APA).

3.    On July 24, 2008, more than 60 days before the filing of this complaint, Plaintiffs

provided Federal Defendants written notice of the violations that are the subject of this lawsuit in

accordance with 16 U.S.C. § 1540(g)(2)(c).  The notice is attached as Exhibit 1 and is incorporated

herein by reference.  Defendants have not responded to this notice or taken any action to withdraw the Final Rule at issue here, or to otherwise remedy their violations of law.

4.     Venue in this district is predicated upon 5 U.S.C. § 703, and 28 U.S.C. § 1391(e), in that Defendants reside in this district and/or a substantial part of the events or omissions giving rise to this claim occurred in this district.

## PARTIES

### Plaintiffs

5.     The California Cattlemen's Association is a nonprofit association that represents California's ranchers and beef producers in legislative and regulatory matters.  The association is a grassroots organization comprised of cattle-producing families who have been providing beef for generations and who determine the direction and policy of the organization.  For the benefit of its members, the Association tracks and evaluates legal developments that could affect cattle operations in the State of California, such as the listing of threatened or endangered species, like the polar bear. Association members are committed to producing safe, wholesome food while responsibly maintaining and improving wildlife habitat, preserving our natural resources, and protecting imperiled species.  Association members are subject to substantial federal and state environmental regulations that impose, among other things, study costs, mitigation fees, operational design changes, permit fees, and consulting expenses.  The polar bear listing is premised on the theory that greenhouse gas emissions are causing global warming, which, in turn, is asserted to be causing the melting of the arctic polar ice cap, thereby adversely impacting the habitat of the polar bear.  A number of agricultural and other anthropomorphic activities have been identified as a source of greenhouse gas emissions.  The regulatory burdens and costs of doing business, including new risk

assessments, for association members and others in agriculture are increased because of the polar bear's listing as a "threatened" species. Moreover, the listing subjects association members to citizen suits and agency enforcement actions under the Endangered Species Act and other federal and state laws, further adding to the members' business costs.

6.      The Congress of Racial Equality (CORE) is a philanthropic human rights organization established to fight discrimination and encourage the economic and social independence of the poor and minorities. CORE was the first civil rights organization in this Country to receive nongovernmental consultative (NGO) status at the United Nations. CORE is assigned to two of the UN's most prestigious departments—the United Nations Department of Public Information and the United Nations Economic and Social Council. Members of CORE are engaged in or employed by various business enterprises that emit greenhouse gases. Costs and regulatory burdens on such enterprises are increased because of the polar bear's listing as a "threatened" species. The listing also subjects association members engaged in such business enterprises to increased citizen suits and agency enforcement actions under the Endangered Species Act and other federal and state laws, further adding to the members' business costs. Moreover, individual members of CORE who are employed by business enterprises emitting greenhouse gases risk losing their jobs as a result of additional business costs resulting from the listing. Finally, CORE's members include poor people and minorities who are disproportionately harmed by the escalating costs of energy, housing, transportation, and food resulting from increased environmental regulation, including the polar bear listing.

7.   Each of these organizations brings this suit on behalf of itself and its individual members who have been aggrieved or will be aggrieved by Defendants' final agency action listing the polar bear as a "threatened" species.  These organizations and members have standing to sue and the challenged action is ripe for judicial review.

## Defendants

8.   Defendant United States Department of Interior (Department) is an agency of the United States.  Congress has charged the Department with administering the ESA for certain species.

9.   Defendant Ken Salazar is Secretary of the United States Department of Interior (Secretary).  He oversees the Department's administration of the ESA and is sued in his official capacity.

10.   Defendant United States Fish and Wildlife Service (Service) is an agency of the United States Department of Interior.  The Service has been delegated responsibility by the Secretary of the Department of Interior for the day-to-day administration of the ESA, including the listing of certain "threatened" and "endangered" species.

11.   Defendant Rowan W. Gould is the Acting Director of the United States Fish and Wildlife Service.  He oversees the Service's administration of the ESA and is sued in his official capacity.

12.   All of these Defendants are responsible for the violations alleged in this complaint.

## LEGAL FRAMEWORK

### Listing of Threatened or Endangered Species

13.   Before a species receives full protection under the ESA, it must be listed as "threatened" or "endangered."  A "species" includes "any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." 16 U.S.C. § 1532(16).   A "threatened" species is "any species which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." 16 U.S.C. § 1532(20).  An "endangered" species is one "which is in danger of extinction throughout all or a significant portion of its range."  16 U.S.C. § 1532(6).

14.   A species will be listed when the Secretary of Interior, acting through  delegates, promulgates a regulation that a species is "threatened" or "endangered" because of any one of five factors:

> (A)   the present or threatened destruction, modification, or curtailment of [the species] habitat or range;
>
> (B)   overutilization for commercial, recreational, scientific, or educational purposes;
>
> (C)   disease or predation;
>
> (D)   the inadequacy of existing regulatory mechanisms; or
>
> (E)   other natural or manmade factors affecting [the species'] continued existence.

16 U.S.C. § 1533(a)(1).

15.   The listing determination must be made solely on the basis of the "best scientific and commercial data available" and only after the Secretary takes into account

those efforts, if any, being made by any State or foreign nation, or any political subdivision of a State or foreign nation, to protect such species, whether by predator control, protection of habitat and food supply, or other conservation practices, within any area under its jurisdiction, or on the high seas.

16 U.S.C. § 1533(b)(1)(A).

16.   Economic or other factors may not be considered in making a listing determination.

17.   A listed species is protected by Section 9 of the ESA, which, among other things, makes it unlawful for any person to "take" such species.  *See* 16 U.S.C. § 1538(a)(1)(B).  By its terms, the "take" prohibition applies only to "endangered" species.  However, Section 4(d) authorizes Section 9 protections for "threatened" species if promulgated by rule.  *See* 16 U.S.C. § 1533(d).  The government has adopted such a rule, thereby extending the "taking" prohibition to all listed species whether "threatened" or "endangered."  *See* 50 C.F.R. § 17.31 (2001).

18.   The term "take" under the ESA means to "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct."  16 U.S.C. § 1532(19).

19.   The term "harm" in the definition of "take" means "an act which actually kills or injures wildlife.  Such act may include significant habitat modification or degradation where it actually kills or injures wildlife by significantly impairing essential behavioral patterns, including breeding, feeding or sheltering."  50 C.F.R. § 17.3.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

20.   On February 16, 2005, the Fish and Wildlife Service received a petition to list the polar bear under the ESA.

21. On January 9, 2007, the Service issued a Proposed Rule to list the polar bear as "threatened" throughout its entire range that includes much of the Arctic Circle. 72 Fed. Reg. 1064, 1065 (Jan. 9, 2007).

22. On May 15, 2008, the Service issued a Final Rule listing the polar bear as "threatened" due to forecasts of melting sea ice attributed to global warming. 73 Fed. Reg. 28,212 (May 15, 2008).

23. For the first time in the history of the ESA, the Service listed a species based on predictive models of habitat decline rather than on actual observed harm to the species.

24. The Intergovernmental Panel on Climate Change (IPCC) models relied on by the Service predict a 10-22% range-wide decline in seasonal sea ice during the foreseeable future (defined by the department as forty-five years). 73 Fed. Reg. at 28,273.

25. The prediction that two-thirds of the polar bear population will be lost by mid-century, cited by the Service, uses the subjective estimates of one individual whose work has not been subjected to peer review and is based on a qualitative "prototype" model that the Service warns is only preliminary and not to be taken as final. 73 Fed. Reg. at 28,273-74.

26. Of the nineteen polar bear populations worldwide, only two are subject to the regulatory control of the United States and the ESA. The majority (fourteen populations) are found in Canada. Others are located in Greenland, Russia, and Norway. 73 Fed. Reg. at 28,212-18.

27. Only two polar bear populations (one in the United States and one in Canada) are deemed declining due to melting sea ice. *See Demographic and Ecological Perspectives on the Status of Polar Bears*, Dr. Mitchell Taylor and Dr. Martha Dowsley, http://scienceand publicpolicy.org/images/stories/papers/reprint/taylor_polar_bears.pdf (last visited July 15, 2008) (Taylor and Dowsley, 2008).

28.   Almost three-quarters of the nineteen polar bear populations are stable, increasing, or indeterminate in number.  73 Fed. Reg. at 28,217.

29.   As temperatures have increased over the past 50 years, the polar bear population has also increased—to the highest levels in recorded history.  The current population is approximately 25,000, up from an estimated low of 8,000-10,000 in the 1950s and 1960s.  73 Fed. Reg. at 28,215 and U. S. Senate Committee on Environment and Public Works (Jan. 30, 2008), *available at* http://epw.senate.gov/public/index.cfm?FuseAction=PressRoom.Facts&ContentRecord_id= cb2faa9c-802a-23ad-4bcc-29bb94ceb993.

30.   The Service considers the polar bear "threatened" because certain unverified computer models forecast a declining trend in sea ice.  73 Fed. Reg. at 28,225, 28,275-76.

31.   The Service admits that Arctic climate models are highly uncertain.  73 Fed. Reg. at 28,227-28.

32.   Researchers from Wharton and Harvard have found that none of the models relied on meet accepted scientific standards.  *See Polar Bear Population Forecasts:  A Public Policy Forecasting Audit*, J. Scott Armstrong, *et al.*, *available at* http://forecastingprinciples.com_ /PublicPolicy /PolBears.pdf (last visited July 15, 2008).

33.   The sea ice models relied on by the Service assume a one-to-one correlation between sea ice reduction and polar bear population declines.  They do not account for temperature variability (such as the fact that global temperatures have not increased in the last decade), or polar bear adaptability, or changes in global influences.  73 Fed. Reg. at 28,272-74.

34.   IPCC models do not predict the complete loss of sea ice nor the complete extirpation of the polar bear species.  Taylor and Dowsley, 2008.

35.   Polar bears have survived previous global warming periods with higher temperatures than today and with a severe reduction in sea ice.  73 Fed. Reg. at 28,255-56.

36.   Polar bears are already protected from direct harm through national and international laws and treaties.  73 Fed. Reg. at 28,281-88.

37.   The Service has not determined what constitutes a recoverable polar bear population and therefore cannot determine when the polar bear population may become extinct or in danger of extinction.

38.   The Service has not articulated a standard for determining "threatened" or "endangered" status for polar bears.

39.   According to the Secretary of Interior, the ESA listing will not provide any additional protections to the polar bear because it is already protected by the Marine Mammal Protection Act. *See* U.S. Dept. of the Interior, Remarks by Secretary Kempthorne, Press Conference on Polar Bear Listing (May 14, 2008), *available at* http://www.doi.gov/secretary/speeches/081405_speech.html (Kempthorne Remarks).

40.   According to the Secretary of Interior, the ESA listing will not address the risk that is the basis for the listing (*i.e.*, "this listing will not stop global climate change or prevent sea ice from melting" in the Arctic).  *Id.*

## SPECIFIC ALLEGATIONS THAT SUPPORT INJUNCTIVE RELIEF

41.   Plaintiffs hereby reallege and incorporate by reference the allegations contained in Paragraphs 1 through 40 as though fully set forth herein.

42.  If an injunction does not issue enjoining Defendants from enforcing the listing of the polar bear, Plaintiffs will be irreparably harmed by being subject to unnecessary and costly federal regulation promulgated contrary to applicable federal law.

43.  Plaintiffs have no plain, speedy, and adequate remedy at law.

44.  If not enjoined by this Court, Defendants will continue to enforce or rely on the listing in derogation of the rights of Plaintiffs and their members.

### SPECIFIC ALLEGATIONS SUPPORTING DECLARATORY RELIEF

45.  Plaintiffs hereby reallege and incorporate by reference the allegations contained in Paragraphs 1 through 44 as though fully set forth herein.

46.  An actual and substantial controversy exists between Plaintiffs and Defendants over Defendants' duty to comply with the ESA and APA in listing the polar bear as a "threatened" species.

47.  This case is presently justiciable because Defendants' failure to comply with these laws is the direct result of final agency action that has caused and will continue to cause immediate and concrete injury to Plaintiff associations and their members by subjecting them  to unnecessary and costly federal regulation promulgated contrary to applicable federal law.  Plaintiffs and their members have a vital interest in knowing whether the Final Rule listing the polar bear is statutorily valid.

48.  Declaratory relief is, therefore, appropriate to resolve this controversy.

## CLAIMS FOR RELIEF

### First Claim for Relief

### Current Regulatory Mechanisms Are Adequate To Protect the Polar Bear
### (Violation of the ESA and APA)

49.   Plaintiffs incorporate herein by this reference all the allegations set forth in Paragraphs 1 through 48.

50.   One of the factors that must be considered in determining a species' status as threatened or endangered is the "inadequacy of existing regulatory mechanisms."   16 U.S.C. § 1533(a)(1). Although the Service considered this factor, it erroneously concluded that listing was required.

51.   In the Final Rule, the Service concluded that "existing regulatory mechanisms at the national and international level are adequate to address actual and potential threats to polar bears from direct take, disturbance by humans, and incidental or harassment take."  73 Fed. Reg. 28,288.  This conclusion compels a finding that the listing of the polar bear is not warranted.  However, the Service decided to list the polar bear as "threatened" on the basis that existing regulatory mechanisms do not adequately address "the primary threat to polar bears" which the Service described as the loss of sea ice due to global warming.  *Id*.  But the Service failed to take into account the fact that the listing itself fails to address this "primary threat to the polar bears."

52.   When the Secretary announced the listing of the polar bear he also declared the Service would permit any activity under the ESA that is already permissible under other species protection laws, like the Marine Mammal Protection Act.  *See*  Kempthorne Remarks, *available at* http://www.doi.gov/secretary/ speeches/081405_speech.html.  The Secretary also acknowledged that "this listing will not stop global climate change or prevent any sea ice from melting."  *Id*.  In

other words, the Secretary admitted that the listing will not address the primary threat to the polar

bears.

53.   If the ESA listing itself does not provide additional protections to the polar bear—either

because existing regulatory mechanisms are adequate, as the Secretary found in this case, or because

the ESA does not allow the regulation of activities with uncertain global influences, as the Secretary

believed in this case—then the listing was nonsensical and irrational.

54.   By these acts or omissions, Federal Defendants violated the ESA, 16 U.S.C. § 1533(a)(1).

Also, listing the polar bear in the Final Rule was arbitrary and capricious, an abuse of discretion, or

otherwise not in accordance with the law in violation of the APA, 5 U.S.C. § 706**.**

**Second Claim for Relief**

**Failure To Articulate an Objective Standard**
**for Determining Threatened Status**
**(Violation of the ESA and APA)**

55.   Plaintiffs incorporate herein by this reference all the allegations set forth in Paragraphs

1 through 54.

56.   Under the ESA, a species may be listed only if it is "threatened" or "endangered" because

of any one of five factors, including the condition of the habitat or range,  overutilization, disease or

predation, the inadequacy of existing regulations, or other natural or manmade factors.  16 U.S.C.

§ 1533 (a)(1).  But these factors do not tell us when a species, such as the polar bear, warrants

"threatened" or "endangered." status.  At most, the listing factors provide a framework for identifying

risks to species survival.  But a list of risks does not reveal anything about the viability of the species

or the imminence or level of risk to which the species may be subject .  Nor does it provide in itself

an objective basis for determining when  a species is "threatened," *i.e.*, "likely to become an

endangered species within the foreseeable future throughout all or a significant portion of its range."

16 U.S.C. § 1532(20).  Therefore, to avoid arbitrary listings, the Service must articulate an objective

standard to evaluate when a species will be deemed "threatened" or "endangered."  It is not enough

to recite the factors and draw a conclusion.  A reviewing court and the interested public must be able

to identify the objective standard applied and determine whether the standard has been met.  But the

Service has  not  articulated any objective standard under which the polar bear can be determined to

be  "threatened."

57.  Other than citing unverified forecasts of declines in habitat, the Service has not articulated

any standard that would indicate why the polar bear is currently "threatened."  It cannot be

determined, therefore, if the polar bear warrants a "threatened" status when the habitat or population

has decreased by 10%, 20%, or even 75%.  Without defining when a species is "threatened," no

objective test for listing can be applied.  It is not enough that the Service identify a trend downward

without ascertaining whether we are at the front or back end of that trend and when the trend reaches

a critical threshold meriting a finding of "threatened" status.

58.  By these acts or omissions, Federal Defendants violated the ESA, 16 U.S.C. § 1533(a)(1).

Also, listing the polar bear in the Final Rule without articulating an objective standard was arbitrary

and capricious, an abuse of discretion, or otherwise not in accordance with the law in violation of the

APA, 5 U.S.C. § 706.

### Third Claim for Relief

### Failure To Demonstrate the Polar Bear Is Threatened
### (Violation of the ESA and APA)

59.  Plaintiffs incorporate herein by this reference all the allegations set forth in Paragraphs

1 through 58.

60. A "threatened" species is "any species which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." 16 U.S.C. § 1532(20). But the Service never explained why the polar bear should be deemed "threatened" at this time. The Final Rule repeatedly admonishes that forecasted population numbers and estimated future time periods are not to be taken at face value. Instead, the Rule states that the trend in sea ice is worrisome and that the listing is warranted because melting sea ice will negatively affect polar bear populations, perhaps resulting in a steady decline in abundance. 73 Fed. Reg. at 28,275-77. This is not enough. The climate models relied on by the Service forecast a 10-22% decline in sea ice over the next forty-five years. Under accepted norms, a 10-22% decline in carrying capacity, habitat, or even actual bear population does not constitute a threat of endangerment within the foreseeable future as the law requires. This is especially true given the polar bear population has (1) increased over the past fifty years while sea ice trends have developed, (2) the polar bear population is the highest in recorded history, and (3) three-quarters of the nineteen polar bear populations are either increasing, stable, or indeterminate in size.

61. There is no way to determine from the Final Rule why the predicted level of sea ice justifies listing the species as "threatened" as opposed to "endangered" or why listing is required at all. Under the APA, the agency must not only consider the relevant factors, it must also articulate "a rational connection between the facts found and the choice made." *Natural Resources Defense Council v. United States Department of Interior*, 113 F.3d 1121, 1124 (9th Cir. 1997). But no such connection is apparent from the Final Rule. Neither the public nor a reviewing court can determine how and why the Service determined the polar bear is "threatened" at this time.

62.  By these acts or omissions, Federal Defendants violated the ESA, 16 U.S.C. § 1533(a)(1). Also, listing the polar bear in the Final Rule was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law in violation of the APA, 5 U.S.C. § 706.

### Fourth Claim for Relief

### Failure To Use Best Scientific and Commercial Data
### (Violation of the ESA and APA)

63.  Plaintiffs incorporate herein by this reference all the allegations set forth in Paragraphs 1 through 62.

64.  The Service is required to use the "best scientific and commercial data available" in making listing decisions.  *See* 16 U.S.C. § 1533(b)(1)(A).  However, the Service failed to do so. Instead of basing its listing decision on known facts derived from actual observation, which show a thriving polar bear population, the Service relied on Arctic climate models that the Service acknowledged are inherently inaccurate due to the complexities of climate forecasting, *see* 73 Fed. Reg. at 28,228.  Independent researchers from the Wharton School of the University of Pennsylvania and Harvard University conducted an audit of these models.  They determined that these models lack the minimum scientific protocols for forecasting and that "[a]s a consequence their forecasts are unscientific and of no consequence to decision makers."  *See Armstrong,* et al. (2008).  The Service also relied on dire predictions of polar bear survival from a subjective "prototype" model put forward by Amstrup, Steven C. (2007), *cited in* 73 Fed. Reg. at 28,274, that the Service characterized as unconfirmed, only "preliminary," and "not final."  *See* 73 Fed. Reg. at 28,274.  Additionally, the Service cited unverifiable and unscientific anecdotal claims to support its listing decision.  *See id.* at 26,268.

65.   Contrary to speculative modeling and unsupported assumptions about future polar bear populations, actual demographic data demonstrate the polar bear population is likely to remain healthy in the foreseeable future.   The Polar Bear Specialist Group status report indicates that approximately three-quarters of the nineteen polar bear populations worldwide are either increasing, stable, or indeterminate.   *See* Aars, John (2006).   Only two populations are deemed declining due to sea ice conditions.   *See* Taylor and Dowlsey (2008).   According to the Final Rule, changes in population trends (*i.e.*, distribution and abundance) for ringed seals, a primary food source for polar bears, "will likely be the most important factor determining effects on polar bear populations." 73 Fed. Reg. at 28,261.   But the Final Rule fails to document actual declines in ringed seal distribution and abundance which, like the polar bear itself, are at an all time high:   "The most recent population estimates of ringed seals, the preferred prey of most polar bear populations, range to about 4 million or more, making them the most abundant seal species in the world."   *Id*.   In addition, melting sea ice will improve access to seal prey for those populations of polar bear that are currently ice bound.   *See* Taylor and Dowsley (2008).

66.   Moreover, although global temperatures have increased over the past fifty years, it is universally accepted that polar bear populations have increased range-wide.   Polar bears now number an estimated 25,000, up from 8,000-10,000 more than fifty years ago.   73 Fed. Reg. at 28,277.   Of equal importance, polar bears have already survived previous warming periods with higher temperatures than exist today and with significant reductions in sea ice.   *Id.* at 28,255.   Some populations remained stable or even increased during the most recent period of climate warming.   *See* Taylor and Dowsley (2008).

67.   By these acts or omissions, Federal Defendants violated the ESA, 16 U.S.C. § 1533(a)(1). Also, listing the polar bear in the Final Rule contrary to the best available scientific and commercial data, and the actual use of unverifiable, suspect, tentative, and speculative data,  was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law in violation of the APA, 5 U.S.C. § 706.

### Fifth Claim for Relief

### The Service's Definition of "Foreseeable Future" Is Arbitrary
### (Violations of ESA and APA)

68.   Plaintiffs incorporate herein by this reference all the allegations set forth in Paragraphs 1 through 67.

69.   A "threatened" species is defined as "any species which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." 16 U.S.C. § 1532(20).  "Foreseeable future" is defined by the Final Rule as three generations of polar bears or forty-five years, using a mean generation time of fifteen years.  But this time line is inconsistent with standard international protocols which give a mean generation time for polar bears of twelve years instead of fifteen for a "foreseeable future" of thirty-six years, not forty-five years. Use of a proper generation time would greatly reduce the projected risks to polar bears.  The reason for the substitution of fifteen years for the generally accepted standard of twelve years was not satisfactorily articulated by Federal Defendants.

70.   By these acts or omissions, Federal Defendants violated the ESA, 16 U.S.C. § 1533(a)(1). Also, defining "foreseeable future" as forty-five years instead of thirty-six years in accordance with standard protocols in the Final Rule was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law in violation of the APA, 5 U.S.C. § 706.

**PRAYER FOR RELIEF**

**Wherefore, Plaintiffs pray**

**As to the First Claim for Relief:**

That this Court declare the Final Rule listing the polar bear, 73 Fed. Reg. 28,212, invalid under the ESA and/or APA because Defendants erroneously concluded the polar bear must be listed even though the listing provides no necessary added protections and would not address "the primary threat to the polar bear," pursuant to 16 U.S.C. § 1533(a)(1) and 5 U.S.C. § 706, and enjoin Defendants from enforcing or otherwise acting pursuant to the Final Rule.

**As to the Second Claim for Relief:**

That this Court declare the Final Rule listing the polar bear, 73 Fed. Reg. 28,212, invalid under the ESA and/or APA because Defendants failed to articulate an objective standard for determining the polar bear's "threatened" status, pursuant to 16 U.S.C. § 1533(a)(1) and 5 U.S.C. § 706, and enjoin Defendants from enforcing or otherwise acting pursuant to the Final Rule.

**As to the Third Claim for Relief:**

That this Court declare the Final Rule listing the polar bear, 73 Fed. Reg. 28,212, invalid under the ESA and/or APA because Defendants failed to demonstrate the polar bear is "threatened," pursuant to 16 U.S.C. § 1533(a)(1) and 5 U.S.C. § 706, and enjoin Defendants from enforcing or otherwise acting pursuant to the Final Rule.

**As to the Fourth Claim for Relief:**

That this Court declare the Final Rule listing the polar bear, 73 Fed. Reg. at 28,212, invalid under the ESA and APA because Defendants failed to use the best scientific and commercial data

available, pursuant to 16 U.S.C. § 1533(b)(1)(A) and 5 U.S.C. § 706, and enjoin Defendants from enforcing or otherwise acting pursuant to the Final Rule.

**As to the Fifth Claim for Relief:**

That this Court declare the Final Rule listing the polar bear, 73 Fed. Reg. 28,212, invalid under the ESA and/or APA because Defendants' definition of "foreseeable future" is arbitrary, pursuant to 16 U.S.C. § 1533(a)(1) and 5 U.S.C. § 706, and enjoin Defendants from enforcing or otherwise acting pursuant to the Final Rule.

**As to all claims for relief:**

That this Court issue a judgment and order vacating the Final Rule, 73 Fed. Reg. 28,212, and enjoining Defendants from enforcing or otherwise acting pursuant to the Final Rule; for an award of attorneys' fees, expenses, and costs; and for such other relief as the Court deems just and proper.

DATED: April 13, 2009.

Respectfully submitted,

_____/s/  THEODORE HADZI-ANTICH_____
THEODORE HADZI-ANTICH (D.C. Bar No. 251967)
Pacific Legal Foundation
3900 Lennane Drive, Suite 200
Sacramento, CA  95834
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

M. REED HOPPER (*Pro Hac Vice*)
DAMIEN S. SCHIFF (*Pro Hac Vice*)
Pacific Legal Foundation
3900 Lennane Drive, Suite 200
Sacramento, CA  95834
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

Attorneys for Plaintiffs

<u>CERTIFICATE OF SERVICE</u>

The foregoing FIRST AMENDED COMPLAINT OF PLAINTIFFS CALIFORNIA CATTLEMEN'S ASSOCIATION AND CONGRESS OF RACIAL EQUALITY was filed electronically on the date below.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

DATED:  April 13, 2009.


_____/s/ THEODORE HADZI-ANTICH_____
THEODORE HADZI-ANTICH