### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

---

IN RE POLAR BEAR ENDANGERED
SPECIES ACT LISTING AND § 4(d)
RULE LITIGATION

---

This Document Relates To:
*Safari Club International, et
al. v. Salazar, et al*, No. 08-
881 (EGS)

Misc. Action No. 08-764 (EGS)
MDL Docket No. 1993

---

### <u>MEMORANDUM OPINION</u>

Plaintiffs Safari Club International ("SCI") and Safari Club International Foundation ("SCIF") bring this action pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.* ("APA"), against defendants Ken Salazar, Secretary of the Interior, H. Dale Hall, Director of the United States Fish and Wildlife Service, and the United States Fish and Wildlife Service (collectively "FWS"), challenging the FWS's legal determination that the listing of the Polar Bear as threatened under the Endangered Species Act creates a ban on the import of sport-hunted polar bear trophies otherwise legal under the Marine Mammal Protection Act.  Pending before the Court is defendants' Motion for Judgment on the Pleadings on the grounds that (1) plaintiffs fail to state a claim upon which relief can be granted, because plaintiffs fail to challenge a final agency action as required for judicial review under the APA; or, in the

alternative, (2) plaintiffs lack standing to bring this action.[1]
Upon consideration of the defendants' motion, the plaintiffs'
opposition, the defendants' reply, the relevant law, and for the
reasons stated herein, the defendants' motion is **DENIED.**

**I.    BACKGROUND**

**A.    Statutory Background**[2]

The Endangered Species Act, 16 U.S.C. § § 1531 *et seq.*, was
enacted in 1973 "to provide a means whereby the ecosystems upon
which endangered species and threatened species depend may be
conserved, [and] to provide a program for the conservation of
such endangered species and threatened species . . . ."  16
U.S.C. § 1531(b).  Once a species is listed as endangered or
threatened, statutory prohibitions help ensure the survival and
recovery of the species.  An endangered species is "in danger of
extinction throughout all or a significant portion of its range,"

---

[1] Defendants originally filed a Motion to Dismiss.
Plaintiffs note that because defendants filed an Answer in
response to plaintiffs' Complaint prior to filing their motion,
defendants motion should be a motion for judgment on the
pleadings, pursuant to Fed. R. Civ. P. 12(c).  Opposition of
Plaintiffs Safari Club International and Safari Club
International Foundation to Motion to Dismiss ("Pl. Opp'n.") at
6.  Defendants do not dispute this and ask the Court to treat
their Motion to Dismiss as a motion for judgment on the
pleadings.  Federal Defendants' Reply Memorandum in Support of
Motion to Dismiss Plaintiffs' Complaint ("Def. Reply").

[2] The Statutory Background section is taken largely, and at
times verbatim, from the discussion in defendants' Memorandum in
Support of Motion to Dismiss Plaintiffs' Complaint ("Def. Mem.")
at 2-5.

while a threatened species is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range."  16 U.S.C. § 1532(6), (20).

The ESA delegates authority to determine whether to list a species as endangered or threatened to the Secretaries of Commerce and Interior.  The Secretary of the Interior has jurisdiction over the polar bear.  16 U.S.C. § 1532(15).

The Marine Mammal Protection Act ("MMPA"), 16 U.S.C. §§ 1361 *et seq.*, was enacted in 1972 in response to a decline in marine mammal populations.  Administration of the MMPA, like the ESA, is divided between the Department of the Interior and the Department of Commerce, and, as with the ESA, the MMPA gives the Secretary of the Interior jurisdiction over the polar bear.  16 U.S.C. § 1362(12)(A).

The MMPA prohibits the taking or importation of marine mammals or marine mammal parts, unless a specified exception applies.  16 U.S.C. § 1371(a).  The term "take" means "to harass, hunt, capture, or kill, or attempt to harass, hunt, capture, or kill any marine mammal."  16 U.S.C. § 1362(13).  One exception to the general prohibition allows the Secretary of the Interior to issue permits authorizing the take of marine mammals for importation of polar bear parts taken in sport hunts in Canada, provided that specific requirements are met.  16 U.S.C. § 1374(c)(5).  However, where the marine mammal at issue is

"depleted," the MMPA further restricts the purposes for which such permits may be issued.  16 U.S.C. § 1371(a)(3)(B).  Species that are listed as endangered or threatened under the ESA, such as the polar bear, are considered "depleted" for purposes of the MMPA.  16 U.S.C. § 1362(1)(C).  Where a species is depleted, the Secretary may not allow importation "[e]xcept for scientific research purposes, photography for educational purposes, or enhancing the survival or recovery of [the] species or stock . . . ."  16 U.S.C. § 1371(a)(3)(B).  In addition, section 1372(b) of the MMPA contains additional restrictions on importations of a marine mammal from a species or stock that has been designated as depleted.  That section reads in relevant part:

> Except pursuant to a permit for scientific research, or for enhancing the survival or recovery of a species or stock . . ., it is unlawful to import into the United States any marine mammal if such mammal was -
>
> . . .
>
> (3) taken from a species or population stock which the Secretary has, by regulation published in the Federal Register, designated as a depleted species or stock; . . .

Accordingly, where a marine mammal is from a species or stock with a depleted status, Section 1372(b) allows importation only for purposes of scientific research or enhancement of the survival or recovery of the species or stock.

**B.      Factual Background**

**1.     The Final Rule**

On May 15, 2008, the FWS issued a final rule listing the
polar bear as a threatened species throughout its range.  *See* 73
Fed. Reg. 28,212 (May 15, 2008) ("Final Rule").  In responding to
comments the FWS had received regarding the proposed designation
of the polar bear as a threatened species, the FWS noted in the
Final Rule that

> [U]nder the MMPA, the polar bear will be considered a
> 'depleted' species on the effective date of this
> listing.  As a depleted species, imports could only be
> authorized under the MMPA if the import enhanced the
> survival of the species or was for scientific research.
> Therefore, authorization for the import of sport-hunted
> trophies will no longer be available under section
> 104(c)(5) of the MMPA.

73 Fed. Reg. at 28236.  Moreover, in response to a comment that
the FWS had not considered "the negative impacts of listing [the
polar bear as threatened] on the long-term management of polar
bears developed in Canada that intergrates susbistence harvest
allocations with a token sport harvest[,]" the FWS stated

> We acknowledge the important contribution to
> conservation from scientifically-based sustainable use
> programs.  Significant benefits to polar bear
> management in Canada have accrued as a result of the
> 1994 amendments to the MMPA that allow U.S. citizens
> who legally sport-harvest a polar bear from an MMPA-
> approved population in Canada to bring their trophies
> back into the United States.
>
> . . .
>
> While we recognize these benefits, the Service must
> list a species when the best scientific and commercial

information available shows that the species meets the
definition of endangered or threatened.  The effect of
the listing, in this case an end to the import
provision under Section 104(c)(5) of the MMPA, is not
one of the listing factors.  Furthermore, the benefits
accrued to the species through the import program do
not offset or reduce the overall threat to polar bears
from loss of sea ice habitat.

*Id.* at 28242.

### 2.   **Plaintiff's Complaint**

Plaintiffs bring this suit under the Administrative
Procedure Act, 5 U.S.C. §§ 551 *et seq.* ("APA"), to challenge "the
FWS's legal determination that the listing of the polar bear as
threatened under the ESA creates a ban on the import of sport-
hunted polar bear trophies otherwise legal under the MMPA."
Compl. ¶ 2.  According to the Complaint, SCI's mission's are "the
conservation of wildlife, protection of the hunter, and education
of the public concerning hunting and its use as a conservation
tool."  Compl. ¶ 15.  SCI has approximately 53,000 members from
the United States and around the world, many of whom have hunted
polar bears and/or intend to hunt polar bears, and most of whom
desire to import into the United States the trophy of any polar
bear they have harvested or will harvest.  *Id*.  SCI has a "sister
organization," SCIF, created for the purpose of carrying out its
conservation mission.  *Id*. at ¶ 16.

SCI, SCIF, and SCI's members complain that they are
adversely affected and aggrieved by the FWS's determination that
imports of sport-hunted trophies from approved populations in

-6-

Canada will no longer be allowed, and the agency's refusal to further process or accept applications for those import permits. *Id*. at ¶ 12.  Plaintiffs also allege that SCI and SCIF's interests in polar bear conservation and management efforts, which they maintain are supported by U.S. sport hunters in Canada, are harmed by the FWS's determination because those sport hunters may abandon sport hunting of polar bears if the imports are not allowed.  *Id*.

Plaintiffs ask this Court to (a) declare the FWS's determination erroneous; (b) set aside the portion of the Final Rule establishing the import ban; and (c) order the FWS to continue accepting and processing polar bear import permit applications under the MMPA and other applicable law.  *Id*. at ¶ 9.

## II.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed, but early enough not to delay trial.  "The standard for reviewing a motion for judgment on the pleadings is the same as that applied to a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6)."  *Rafeedie v. INS*, 795 F. Supp. 13, 18 (D.D.C. 1992).  To survive a motion to dismiss, a complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to

-7-

relief," and give the defendant "fair notice of the claims against him." *Aktieselskabet AF 21 November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 17 (D.C. Cir. 2008) (quoting *Ciralsky v. CIA*, 355 F.3d 661, 668-70 (D.C. Cir. 2004) (quoting Fed. R. Civ. P. 8(a))). "A court deciding a motion to dismiss must not make any judgment about the probability of the plaintiff's success, for a complaint may proceed even if it appears that a recovery is very remote and unlikely, and a complaint may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations." *Id.* (internal quotations and citations omitted). Furthermore, "the court must assume all the allegations in the complaint are true (even if doubtful in fact), and the court must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged." *Id.* (internal quotations and citations omitted).

## III. DISCUSSION

Defendants argue that they are entitled to judgment on the pleadings because (1) plaintiffs have failed to state a claim upon which relief can be granted because the action they challenge is not final agency action for purposes of the APA; and (2) because plaintiffs lack standing to challenge the statements in the Final Rule related to the importation of polar bear trophies. For the following reasons, the Court rejects both arguments.

**A.    Failure to State a Claim**

The APA requires that the agency action in question must be final before a party may seek judicial review.  5 U.S.C. § 704. As both parties point out, the Supreme Court has established a two-part test to determine when an agency action is considered "final" for purposes of judicial review.  *See* Def. Mem. at 9 and Pl. Opp'n. at 8 (citing in *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)).  In *Bennett*, the Supreme Court held

> As a general matter, two conditions must be satisfied
> for agency action to be 'final': First, the action must
> mark the 'consummation' of the agency's decisionmaking
> process, . . . -it must not be of a merely tentative or
> interlocutory nature.  And second, the action must be
> one by which 'rights or obligations have been
> determined,' or from which 'legal consequences will
> flow[.]'

520 U.S. at 177-78 (internal citations omitted).

Defendants maintain that plaintiffs are only challenging "isolated statements in the preamble to the final regulation discussing the separate issue of how the listing of the polar bear under the ESA may affect the Service's future enforcement of the MMPA."  Def. Mem. at 9-10.  Defendants argue that rather than the consummation of the agency's decisionmaking process on any particular application for an import permit, these statements simply discuss the applicability of the MMPA, "which the agency will implement in future decisions if necessary."  *Id.* at 10. Defendants also contend that plaintiffs' challenge fails the second part of the *Bennett* test because the Final Rule did not

itself deny any pending import applications and therefore does not determine plaintiffs' rights or obligations. *Id.* In other words, according to the defendants, the Final Rule "merely summarizes the legal provisions the Service will apply moving forward," *id.*, and does not have "any legal effect on Plaintiffs or their individual members[.]" *Id.* at 11.

Plaintiffs, on the other hand, insist that they are challenging a final agency action, i.e., the defendants' legal determination that by listing the polar bear as a threatened species, the FWS can no longer issue import permits under the MMPA. Plaintiffs argue that although technically there may remain the additional step of the agency denying SCI members' permit applications, the FWS's determination in the Final Rule that import permits for polar bear trophies will no longer be granted is final for purposes of judicial review. This Court agrees.

In *Bennett v. Spear*, the FWS determined that a reclamation project undertaken by the Bureau of Reclamation ("Bureau"), another agency under the Secretary of the Interior's jurisdiction, would impact two species of endangered fish. The FWS issued a Biological Opinion identifying "reasonable and prudent alternatives" that the FWS believed would avoid harm to the fish, including maintenance of minimum water levels. 520 U.S. at 158-59. The Bureau informed the FWS that it intended to

operate the reclamation project in compliance with the terms of the Biological Opinion.  *Id*. at 159.  Plaintiff ranch operators and irrigation districts sued the FWS and the Secretary of the Interior, but not the Bureau or its officials, challenging the Biological Opinion.  *Id*. at 159.  Plaintiffs claimed that the "restrictions on water delivery 'recommended' by the Biological Opinion 'adversely affect plaintiffs by substantially reducing the quantity of available irrigation water[.]'" *Id*. at 160 (internal citations omitted).  The defendants moved to dismiss on the grounds that plaintiffs lacked standing and that the Biological Opinion was not final agency action for purposes of judicial review under the APA.  *Id*. at 161.

The defendants argued in *Bennett* that the Biological Opinion was not final agency action because it did not "conclusively determine how the reclamation project's water would be allocated."  *Id*. at 177.  The Supreme Court rejected this argument, finding that it was "uncontested" that the Biological Opinion was the "consummation" of the agency's decisionmaking process - the first part of the two-part test for final agency action - and that the second part of the test was also met because "the Biological Opinion and accompanying Incidental Take Statement alter the legal regime to which the action agency is subject, authorizing it to take the endangered species if (but only if) it complies with the prescribed conditions."  *Id*. at

-11-

178.  In other words, although there was another step between the
Biological Opinion and the plaintiffs' alleged harm, i.e., the
Bureau's compliance with the Biological Opinion, the Supreme
Court determined that the Biological Opinion was final agency
action for purposes of judicial review.

Similarly, in *Appalachian Power Co., et al. v. Environmental
Protection Agency*, 209 F.3d 1015 (D.C. Cir. 2000), the plaintiffs
challenged a Periodic Monitoring Guidance issued by the
Environmental Protection Agency that allegedly required states to
take certain action in connection with operating the states'
permit programs under the Clean Air Act.  The defendant
Environmental Protection Agency argued that the Guidance was not
final agency action for purposes of judicial review.  The Court
of Appeals for the District of Columbia Circuit rejected that
argument.

> The short of the matter is that the Guidance, insofar
> as relevant here, is final agency action, reflecting a
> settled agency position which has legal consequences
> both for State agencies administering their permit
> programs and for companies like those represented by
> petitioners who must obtain Title V permits in order to
> continue operating.

209 F.3d at 1023.

As plaintiffs SCI and SCIF correctly point out in their
opposition to defendants' motion, "here, if anything, the legal
determination SCI and SCIF are challenging is even more final, as
it definitively establishes that any applications for a Section

104(c)(5) permit will not be granted[,]" whereas in *Bennett* the
Bureau could at least theoretically have chosen not to follow the
Biological Opinion's restrictions.  Pl. Opp'n. at 10.  Moreover,
like the Guidance at issue in *Appalachian Power*, the FWS's
determination regarding the import ban reflects "a settled agency
position which has legal consequences both for" the agency
administering the MMPA and for plaintiffs' members "who must
obtain [import] permits in order to continue" importing polar
bear trophies.  209 F.3d at 1023.  In fact, the defendants
themselves attached to their motion a letter dated July 29, 2008,
from the FWS to an individual who had submitted an application
for an import permit, which demonstrates this point.[3]  The letter
refers to the Final Rule and then states,

> We are writing to inform you that as of the effective
> date of the listing, May 15, 2008, importation of a
> polar bear from Canada as a sport-hunted trophy that
> was taken after February 18, 1997, is no longer an
> activity that can be authorized under the Marine Mammal
> Protection Act (MMPA).  Therefore, we are unable to
> continue processing the application that you submitted
> to the U.S. Fish and Wildlife Service.
>
> . . .
>
> Since there is no permit authorization available to conduct

---

[3] To be clear, the Court need not, and does not, rely on this
letter to reach its conclusion that the challenged action in this
case is final agency action.  However, because defendants have
included the letter "for the Court's information," *see* Def. Mem.
at 11, n.2, the Court will reference the letter to illustrate the
FWS's position that the Final Rule precludes the granting of any
permit to import a sport-hunted polar bear trophy into the United
States.

your requested activity, we are administratively closing
your application file and returning the $100.00 permit
application processing fee you submitted with your
application.

. . .

In the future, should the MMPA be amended in a manner that
would allow for the importation of polar bear sport-hunted
trophies, we encourage you to submit a new permit
application to our office.

Def. Mem. Ex. 1 (July 29, 2008 Letter from Timothy J. Van

Norman, Chief, Branch of Permits, Fish and Wildlife Service to

import applicant (recipient's name and address redacted)).

The letter expressly states the FWS's position that in view

of the Final Rule, sport-hunted polar bear trophy importation "is

no longer an activity that can be authorized under the Marine

Mammal Protection Act," and, as a result, the application file is

being administratively closed.  The language in the Final Rule is

not of a "merely tentative or interlocutory nature[,]" but rather

represents the "'consummation' of the agency's decisionmaking

process" and, as that language and the July 29, 2008 letter

clearly indicate, the Final Rule is "one by which 'rights or

obligations have been determined,'" specifically, the right to

obtain an import permit.  *See Bennett*, 520 U.S. at 177-78

(internal citations omitted).[4]

---

[4] On March 24, 2009, defendants filed a Notice of
Supplemental Authority, citing *Natural Resources Defense Council
v. EPA*, 559 F.3d 561 (D.C. Cir. 2009) ("*NRDC*"), as support for
their position that the statements in the Final Rule regarding
the import ban are not final agency action.  In *NRDC*, however,

Accordingly, this Court finds that the action challenged by SCI and SCIF is final agency action for purposes of judicial review pursuant to the APA.

**B.   STANDING**

Defendants argue in the alternative that plaintiffs' suit must be dismissed for lack of standing because plaintiffs have not alleged facts to establish that they have suffered an injury-in-fact that is fairly traceable to the challenged action.  To satisfy Article III of the Constitution's "case" or "controversy" requirement, a plaintiff ordinarily must establish that (1) he or she has "suffered an 'injury-in-fact'"; (2) there is a "causal connection between the injury and the conduct complained of"; and (3) the injury will likely be 'redressed by a favorable decision[.]'" *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Defendants maintain that plaintiffs have not met any of these three requirements and, in addition, that as an

---

the Court of Appeals for the D.C. Circuit found that in the preamble that plaintiff challenged, the agency "spoke in the conditional, suggesting that events in the various categories 'may be exceptional events' or 'may qualify for exclusion under this rule provided that all other requirements are met.'" 559 F.3d at 565 (citing 72 Fed. Reg. 13,564-65)(May 15, 2008).  The court also found that "[o]ther statements were equivocal, such as the declaration, repeated several times in different forms, that certain events are to be evaluated 'on a case-to-case basis.'" *Id.*  In contrast, the language the FWS used in the Final Rule and in the letter quoted herein is not in the least "conditional" or "equivocal," and there is no indication that permit applications to import sport-hunted polar bear trophies will be evaluated on a "case-to-case basis."

associational plaintiff SCI lacks standing because it cannot
establish that "at least one of its members would have standing
to sue in his own right[.]" *See Sierra Club v. EPA*, 292 F.3d 895,
898 (D.C. Cir. 2002).

At the outset, the Court notes that because the case is
"[a]t the pleading stage, general factual allegations of injury
resulting from the defendant's conduct may suffice, for on a
motion to dismiss[, similar to a motion for judgment on the
pleadings,] we 'presum[e] that general allegations embrace those
specific facts that are necessary to support the claim.'" *See
Bennett*, 520 U.S. at 168 (citing *Lujan v. Defenders of Wildlife*,
504 U.S. 555, 561 (1992) (quoting *Lujan v. National Wildlife
Federation*, 497 U.S. 871, 889 (1990)).  Here, SCI and SCIF have
plead general factual allegations of injury resulting from the
Final Rule sufficient to overcome the defendants' motion for
judgment on the pleadings.

### 1.   Plaintiffs' Allegations of an Injury-In-Fact

Defendants argue that plaintiffs have not alleged that the
Final Rule itself operated as a denial of any permit application
by an SCI member or that plaintiffs have suffered actual or
imminent injury.  Def. Mem. at 12-13.  Instead, defendants
contend that the plaintiffs' injury "stems from the possibility
that the Service will act in accordance with the statements in
the Final Rule regarding the MMPA's restrictions, thereby denying

import applications from Plaintiff's members."  In addition,

defendants argue that plaintiffs cannot rely on a "procedural

injury" - based on plaintiffs' allegation that the FWS violated

the APA by failing to give the public adequate notice and

opportunity to comment on the isuse of whether the polar bear is

depleted under the MMPA - because plaintiffs have not established

that the "procedures in question are designed to protect some

threatened concrete interest of [plaintiffs] that is the ultimate

basis of [their] standing."  Def. Mem. at 14 (quoting *Lujan*, 504

U.S. at 573, n.8 and citing *Florida Audubon Soc'y v. Bentsen*, 94

F.3d 658, 664 (D.C. Cir. 1996)).

Plaintiffs' Complaint alleges that since 1994, over 900

permits to import sport hunted-trophies have been issued by the

FWS, resulting in over $900,000 for polar bear research and

management programs.  Compl. ¶ 30.  Plaintiffs claim that in

March, April, and May of 2008, SCI members have successfully

sport-hunted polar bears from several of the Canadian polar bear

populations approved for imports under the MMPA, and that many of

these members submitted applications to import polar bear

trophies into the United States.  *Id*. at ¶ 4.  According to

plaintiffs, other members of SCI who had successfully hunted

polar bears during this time period have not yet submitted their

applications to FWS, and that "on information and belief," the

FWS has informed SCI members that it will not be processing any

permit applications to allow the import of polar bear trophies now that the species is listed as "threatened" under the ESA. *Id.*

As for particularized interests with respect to their procedural claim, plaintiffs also complain that the FWS's actions harm SCI and SCIF's interests in polar bear conservation and management efforts, because U.S. hunters may abandon sport-hunting of polar bears if imports are not allowed.  Compl. ¶¶ 12, 17.  Plaintiffs allege a direct injury to their conservation and management interest because U.S. hunters pay $40,000 to $50,000 per polar bear hunt, and much of those funds go the local native communities, providing "another incentive for these people to accept the Western-based science and management that facilitates polar bear conservation and that is required before the Service will approve a population for import."  *Id.* at ¶ 42.  Plaintiffs note that the FWS has itself recognized the benefits of sport hunting of polar bears and that the plaintiffs commented on the proposed listing at every available opportunity for public comments during the rulemaking process.  *Id.* at ¶¶ 18, 42.  Some SCI members have scheduled and even paid for polar bear hunts in 2009 and 2010, and still others may decide not to plan hunts because they will no longer be permitted to import any trophy they may obtain if the hunt is successful.  *Id.* at ¶ 39.

In *Bennett*, the Supreme Court found that the plaintiff ranch

operators and irrigation districts had established an injury-in-fact when the Biological Opinion was issued, despite the existence of an additional step between the agency's action and the plaintiffs' injury - that is the Bureau complying with the Biological Opinion - and the possibility (which does not exist in this case) that the Bureau might not follow the Biological Opinion.  As with the *Bennett* plaintiffs, SCI and SCIF have sufficiently plead an injury-in-fact, and they are not required to wait for the inevitable formal denial of their permit applications.  Moreover, plaintiffs have sufficiently plead that the "procedures in question" threaten a "concrete interest," i.e., an interest in conservation that is impacted by the import ban.

### 2.   The Causal Connection Between the Alleged Injury and the Defendants' Conduct

Defendants next argue that plaintiffs cannot establish a causal connection between their alleged injury and the defendants' conduct because "plaintiffs' allegations of harm hinge on speculation regarding the Service's future actions[.]"  Def. Mem. at 16 (citing *United Transp. Union v. ICC*, 891 F.2d 908, 912 (D.C. Cir. 1989) (court may "reject as speculative allegations of future injuries").  This argument is belied by the very language in the Final Rule:

> We note that, under the MMPA, the polar bear will be
> considered a "depleted" species on the effective date
> of this listing.  As a depleted species, imports could

> only be authorized under the MMPA if the import
> enhanced the survival of the species or was for
> scientific research.  Therefore, authorization for the
> import of sport-hunted trophies will no longer be
> available under section 104(c)(5) of the MMPA.

73 Fed. Reg. at 28236.  Plaintiffs' allegations that SCI members

can no longer obtain import permits are not "speculative"; the

Final Rule makes clear that the only possible response an

individual applying for a permit to import a sport-hunted polar

bear trophy can reasonably expect to receive is a denial of his

or her application.  In other words, the Final Rule is

determinative.  Therefore, plaintiffs have satisfied the causal

connection requirement.  *See, e.g., Bennett*, 520 U.S. at 170-71

(finding that plaintiffs had met their "relatively modest" burden

at the pleading stage to establish a causal connection between

their alleged injury and the agency's action, in view of the

"powerful coercive" and "virtually determinative" effect that the

FWS's Biological Opinion would inevitably have on the manner in

which the Bureau would operate the project at issue).

### 3.   Whether the Alleged Injury Would Be Redressed By A Favorable Decision

Finally, defendants argue that the "broad relief" sought by

plaintiffs, i.e., setting aside the portions of the preamble to

the Final Rule and enjoining the FWS from refusing to process

import applications, would be "inappropriate."  According to the

defendants, if the FWS denies specific applications, the

plaintiffs must seek judicial review of the denials pursuant to

the MMPA's statutory scheme.

Plaintiffs respond that the review procedures for a denial of an individual permit application under the MMPA are not an adequate substitute for an APA challenge to a rule that impacts numerous people.  Nor would those procedures address the injuries of SCI members who have hunted polar bears but have not applied for a permit because such an application would be futile, or who must decide whether to book or cancel a hunt without the ability to import any resulting trophy.  The Court agrees.  In *Bennett*, the Supreme Court found that setting aside the Biological Opinion would likely redress the plaintiff's injury because if the Biological Opinion was set aside, the Bureau would not impose the water level restrictions advised by that opinion.  520 U.S. at 171.  Similarly, this Court finds that if plaintiffs were to prevail on their claims and the Court were to enjoin the FWS from denying the import applications based on the Final Rule, plaintiffs' injuries would be redressed.

## IV.  CONCLUSION

For the reasons stated herein, the defendants' Motion for Judgment on the Pleadings is **DENIED.**  An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed by:        **Emmet G. Sullivan**
                  **United States District Judge**
                  **June 22, 2009**