## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ‎ ) | |
| **IN RE POLAR BEAR ENDANGERED** ) | |
| **SPECIES ACT LISTING AND § 4(d)** ) | |
| **RULE LITIGATION** ) | |
| ‎ ) | Misc. Action No. 1:08-mc-00764 (EGS) |
| ‎ ) | MDL Docket No. 1993 |
| **This Document Relates To:** ) | |
| ‎ ) | |
| *Center for Biological Diversity, et al. v.* ) | |
| *Salazar, et al.*, No. 1:08-cv-2113 ) | |
| ‎ ) | |
| *Defenders of Wildlife v.* ) | |
| *United States Dept. of the Interior,* ) | |
| No. 1:09-cv-153 ) | |

### REPLY IN SUPPORT OF ALASKAN DEFENDANT-INTERVENORS' CROSS-MOTION FOR SUMMARY JUDGMENT ON THE 4(d) RULE CLAIMS AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON THE 4(d) RULE CLAIMS

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................... 1

II.  ARGUMENT .......................................................................................................... 4

    A.   Section 4(d) Contains Two Separate and Distinct Grants of Authority ................ 4

    B.   CBD Fails to State Claims for Relief Under the ESA and APA ......................... 5

        1.   CBD challenges a discretionary agency decision .................................... 6

        2.   The (q)(2) and (q)(4) limitations are not final agency action ................... 7

        3.   The APA's final agency action requirement applies to ESA claims ........ 9

    C.   The (q)(2) and (q)(4) Limitations Are Not Arbitrary or Capricious,
        Regardless of Whether the "Necessary and Advisable" Standard Applies ........ 10

        1.   The (q)(2) limitation is reasoned and supported by the record ............... 10

        2.   The (q)(4) limitation is reasoned and supported by the record ............... 12

    D.   CBD's NEPA Claims Should Be Dismissed ...................................................... 13

    E.   Remedy ............................................................................................................... 14

III. CONCLUSION ..................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Alsea Valley Alliance v. Lautenbacher*,
  No. 06-6093-HO, 2007 U.S. Dist. LEXIS 60203 (D. Or. Aug. 14, 2007) ...............................6

*Am. Bird Conservancy v. Kempthorne*,
  2007 U.S. Dist. LEXIS 75544 (D.N.J. Oct. 9, 2007).................................................................7

*\*Am. Forest Res. Council v. Hall*,
  533 F. Supp. 2d 84 (D.D.C. 2008).........................................................................................13

*\*Bennett v. Spear*,
  520 U.S. 154 (1997)..........................................................................................................7, 8, 9

*CBD v. U.S. Fish & Wildlife Serv.*,
  450 F.3d 930 (9th Cir. 2006) ...................................................................................................6

*Defenders of Wildlife v. Gutierrez*,
  532 F.3d 913 (D.C. Cir. 2008).................................................................................................9

*Defenders of Wildlife v. Kempthorne*,
  No. 04-1230, 2006 U.S. Dist. LEXIS 71137 (D.D.C. Sept. 29, 2006).....................................6

*Defenders of Wildlife v. Tuggle*,
  607 F. Supp. 2d 1095 (D. Ariz. 2009) .................................................................................7, 8

*Dickinson v. Zurko*,
  527 U.S. 150 (1999)..................................................................................................................9

*Louisiana ex rel. Guste v. Verity*,
  853 F.2d 322 (5th Cir. 1988) ...................................................................................................5

*Milk Indus. Found. v. Glickman*,
  132 F.3d 1467 (D.C. Cir. 1998)..............................................................................................12

*\*Nat'l Home Builders Ass'n v. Norton*,
  415 F.3d 8 (D.C. Cir. 2005).................................................................................................7, 9

*Nat'l Wilderness Inst. v. United States Army Corps of Engineers*,
  Civ. No. 01-0273, 2005 U.S. Dist. LEXIS 5159 (D.D.C. Mar. 23, 2005)...............................7

*Sierra Club v. Clark*,
  755 F.2d 608 (8th Cir. 1985) ...................................................................................................5

*Sweet Home Chapter of Communities for a Great Oregon v. Babbitt*, 1 F.3d 1 (D.C. Cir. 1993) ................................................................................................................................4, 5

*Trout Unlimited v. Lohn*,
 559 F.3d 946 (9th Cir. 2009) ........................................................................................6

**FEDERAL STATUTES**

5 U.S.C. § 551(13) ............................................................................................................8

5 U.S.C. § 559....................................................................................................................9

16 U.S.C. § 1533(d) ................................................................................................1, 2, 4, 6

16 U.S.C. § 1538(a)(1).......................................................................................................4

16 U.S.C. § 1540(g)(1)(C) ..............................................................................................6, 7

## I. INTRODUCTION

"The Secretary *may* by regulation prohibit with respect to any threatened species any act prohibited under [Section 9] . . . ." 16 U.S.C. § 1533(d) (emphasis added). For all the arguments before the Court regarding the merits or alleged deficiencies of the 4(d) Rule, the relevant issues in this case ultimately hinge on this plain statutory language. Acting pursuant to the undisputed discretion granted by this provision, the Secretary broadly applied the Endangered Species Act's ("ESA") Section 9 take prohibitions to the polar bear, except in the two discrete circumstances challenged by Plaintiffs:[1] the "(q)(2) limitation" and the "(q)(4) limitation." Whether evaluated against the Administrative Procedure Act's ("APA") rational basis standard of review or the inapplicable "necessary and advisable" standard argued by CBD, the Secretary's decision to not apply the Section 9 take prohibitions in these two instances is well supported by an extensive administrative record and applicable law. Indeed, the briefing to date establishes the following undisputed, relevant points:

- The ESA expressly applies the Section 9 take prohibitions only to *endangered* species, not to *threatened* species.

- Section 4(d) contains two *separate* grants of authority: (i) the Service may apply the Section 9 take prohibitions to threatened species, and (ii) the Service is to issue any such regulations it deems necessary and advisable to provide for the conservation of a species.[2] The Service's application of the Section 9 take prohibitions to threatened species is *discretionary*.

---

[1] Plaintiffs Defenders of Wildlife, Center for Biological Diversity, Natural Resources Defense Council, and Greenpeace, Inc. are collectively referred to in this brief as "Plaintiffs" or "CBD."

[2] While initially resisting this well-established interpretation, CBD now admits that Section 4(d) does, in fact, contain two separate grants of authority. Dkt. 203 at 5.

- When the Service issued the final rule listing the polar bear as a threatened species under the ESA, it contemporaneously issued a special rule under Section 4(d) of the ESA, broadly applying the Section 9 take prohibitions to the polar bear in all but two discrete instances (the (q)(2) and (q)(4) limitations).

- Plaintiffs challenge *only* the (q)(2) and (q)(4) limitations, and do not challenge the 4(d) Rule's general application of the Section 9 take prohibitions to the polar bear.

- All ESA protections other than the Section 9 take prohibitions continue to apply to the activities covered by the (q)(2) and (q)(4) limitations. These protections include the ESA's provisions for designation of critical habitat, inter-agency consultation on federal actions under Section 7, and recovery planning under Section 4(f). In addition to these protections, all of the protections of the Marine Mammal Protection Act ("MMPA") continue to apply to the polar bear.

Despite conceding that Section 4(d) contains two separate and distinct grants of authority, CBD insists that the Section 4(d) "necessary and advisable" standard applies to both grants of authority. According to CBD, the Service *must* apply the take prohibitions to a threatened species and can decline to do so only if the Service finds it is "necessary and advisable to provide for the conservation of such species." 16 U.S.C. § 1533(d). However, this interpretation directly conflicts with the statute's plain language, which expressly defaults to *not* extending the take prohibitions to threatened species while allowing that the Service "may" do so in its discretion and without condition. It is this fundamental flaw in CBD's reading of Section 4(d) that dooms CBD's challenges to the 4(d) Rule.

First and foremost, CBD's claims should be denied because they challenge only those portions of the 4(d) Rule in which the Service, in its complete discretion, left the legal status quo

2

unchanged. Activities addressed by either the (q)(2) or (q)(4) limitation are regulated the same under the statutory default (no application of the take prohibitions) as they are under the 4(d) Rule. Consequently, the Service's decision not to apply the Section 9 take prohibitions in these instances is not "final agency action," and CBD's ESA, APA, and National Environmental Policy Act ("NEPA") claims should be dismissed on this basis alone. CBD's ESA claim should also be dismissed as a threshold matter because ESA citizen suits under Section 11(g)(1)(C) may only challenge *mandatory* agency action.

Notwithstanding the threshold defects in CBD's claims, both the (q)(2) and (q)(4) limitations comfortably withstand review under either the APA's rational basis standard of review or the "necessary and advisable" standard. While there are many reasons why the (q)(2) and (q)(4) limitations are rational, all of which are set forth in the record and the existing briefing, the patent flaw in CBD's challenge to these limitations is CBD's failure to identify any record evidence that contradicts or otherwise calls into question the Service's express findings that: (i) the activities covered by the (q)(2) limitation pose no threat to the polar bear species and actually benefit the species; and (ii) no causal connection can be drawn between specific activities occurring outside the polar bear's range and effects to the polar bear. Ultimately, CBD's claims boil down to a policy disagreement with the Secretary's reasoned application of Section 4(d) based on an uncontested record, which is no basis for reversal of the Service's decision under any standard of review. Accordingly, Alaskan Defendant-Intervenors respectfully request that the Court grant summary judgment in favor of the Federal Defendants and Defendant-Intervenors, and deny summary judgment to Plaintiffs on their 4(d) Rule claims.

## II.     ARGUMENT

A.     **Section 4(d) Contains Two Separate and Distinct Grants of Authority**

Congress specifically and intentionally chose not to apply the ESA's Section 9 take prohibitions to threatened species. 16 U.S.C. § 1538(a)(1). Instead, Congress granted the Service the unconstrained discretion to apply some or all of the take prohibitions to threatened species and, separately, to adopt other measures deemed "necessary and advisable to provide for the conservation" of threatened species:

> Whenever any species is listed as a threatened species pursuant to subsection (c) of this section, the Secretary shall issue such regulations as he deems necessary and advisable to provide for the conservation of such species. The Secretary may by regulation prohibit with respect to any threatened species any act prohibited under section 1538(a)(1) of this title, in the case of fish or wildlife, or section 1538(a)(2) of this title, in the case of plants, with respect to endangered species . . . .

16 U.S.C. § 1533(d). The D.C. Circuit Court of Appeals has confirmed that Section 4(d) contains two separate grants of authority. *See Sweet Home Chapter of Communities for a Great Oregon v. Babbitt* ("*Sweet Home*"), 1 F.3d 1, 7-8 (D.C. Cir. 1993) ("[T]he two sentences of § 1533(d) represent separate grants of authority."), *rev'd on other grounds*, 515 U.S. 687 (1995). Moreover, the *Sweet Home* Court explained that the Service could issue a rule pursuant to the second sentence of Section 4(d) – as it has done here – "without obligating it to support such actions with findings of necessity." *Id*. at 8.[3] Despite its initial disagreement, CBD now concedes that Section 4(d) contains two separate grants of authority. Dkt. 203 at 5.

CBD nevertheless contends that the Service's application of the Section 9 take prohibitions pursuant to the second sentence of Section 4(d) is somehow governed by the "necessary and advisable" language contained in Section 4(d)'s first sentence. Dkt. 203 at 5-6.

---

[3] The Court also found that Section 4(d)'s first sentence applies to rules adopting "protective measures *beyond* those contained in § 1538(a)(1)." *Id*.

4

As addressed by the Federal Defendants, the cases on which CBD stakes this tenuous position all predated *Sweet Home*, they are factually distinguishable, and, at least with respect to *Sierra Club v. Clark*, 755 F.2d 608 (8th Cir. 1985), they directly conflict with *Sweet Home*. *See* Dkt. 205 at 6; *see also* Dkt. 187 at 10, n.4.[4]  Moreover, CBD's construction reads a condition into Section 4(d)'s second sentence that effectively places the burden on the Service to justify that *not applying* the take prohibitions to a threatened species is "necessary and advisable." This construction is not supported by the statute's plain language, and it ignores the explicit statutory default – that the take prohibitions do not apply to threatened species.

**B.     CBD Fails to State Claims for Relief Under the ESA and APA**

In this lawsuit, CBD alleges claims under ESA Section 11(g)(1)(C) and APA Section 706(2) challenging the Service's *failure* to apply the Section 9 take prohibitions to the activities addressed by the (q)(2) and (q)(4) limitations.  Neither of these claims is viable.  As set forth in the Alaskan Defendant-Intervenors' opening brief (Dkt. 187), CBD fails to state claims for relief under both the ESA and APA because:  (i) CBD challenges a discretionary agency decision; (ii) CBD challenges the Service's inaction, not a final agency action; (iii) ESA citizen suits under Section 11(g)(1)(C) may only challenge *mandatory* agency action; and (iv) APA claims under Section 706(2) may only challenge final agency action.  In response, CBD offers nothing to suggest that an ESA Section 11(g)(1)(C) citizen suit may be used to challenge a discretionary decision (because it cannot); nor does CBD demonstrate that its claims challenge anything other than the Service's inaction.  *See* Dkt. 203 at 25-29.

---

[4] CBD does not fully describe the Section 4(d) portions of *Louisiana ex rel. Guste v. Verity*, 853 F.2d 322, 332-33 (5th Cir. 1988).  After recognizing the first grant of authority in Section 4(d), the *Guste* court went on to recognize Section 4(d)'s second and *additional* grant of "discretionary authority to prohibit by regulation the taking of *any* threatened species of fish and wildlife." *Id*. at 333.

### 1. CBD challenges a discretionary agency decision

The Service's decision to issue the 4(d) Rule, and apply the Section 9 take prohibitions in some instances but not others, was plainly discretionary. *See* 16 U.S.C. § 1533(d) ("The Secretary *may* by regulation prohibit with respect to any threatened species any act prohibited under section [9 of the ESA] . . . .") (emphasis added); *see also CBD v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 935 (9th Cir. 2006) ("When 'may' and 'shall' are both used in a statute, the normal inference is that each is being used in its ordinary sense – the one being permissive, the other mandatory.") (internal quotation marks and citation omitted). Courts have systematically held that the Service's decisions under this permissive language are discretionary. *See Trout Unlimited v. Lohn*, 559 F.3d 946, 950 (9th Cir. 2009) ("A threatened species, on the other hand, is subject to NMFS's discretionary protection."); *Defenders of Wildlife v. Kempthorne*, No. 04-1230, 2006 U.S. Dist. LEXIS 71137, at *8 (D.D.C. Sept. 29, 2006) (Services may, but are not required, to extend prohibitions of Section 9 to threatened species); *Alsea Valley Alliance v. Lautenbacher*, No. 06-6093-HO, 2007 U.S. Dist. LEXIS 60203, at *18 (D. Or. Aug. 14, 2007) ("[T]he Secretary is not required to prohibit taking of threatened species."). CBD even admits, as it must, that Section 4(d) decisions are discretionary. *See* Dkt. 203 at 5 ("second sentence of Section 4(d) implies a greater degree of discretion"), 42 (referring to "Secretary's discretion to fashion a 4(d) rule").

CBD challenges the (q)(2) and (q)(4) limitations under Section 11(g)(1)(C) of the ESA, which expressly limits ESA citizen suits to situations in which "there is alleged a failure of the Secretary to perform any act or duty under section [4 of the ESA] which is *not* discretionary with the Secretary." *See* Dkt. 30 at 28-29; 16 U.S.C. § 1540(g)(1)(C) (emphasis added). Here, CBD challenges a discretionary decision and, consequently, its Section 11(g)(1)(C) claim must be

6

denied.[5] *See Defenders of Wildlife v. Tuggle*, 607 F. Supp. 2d 1095, 1098 (D. Ariz. 2009) ("16 U.S.C. § 1540(g)(1)(C) ... authorizes suits against the Secretary for failing to perform a non-discretionary act or duty under § 1533 of ESA"); *see also Am. Bird Conservancy v. Kempthorne*, No. 06-2641, 2007 U.S. Dist. LEXIS 75544 (D.N.J. Oct. 9, 2007) (holding that exercise of emergency listing authority was not mandatory and, therefore, ESA did not provide basis for judicial review of plaintiff's 1540(g)(1)(C) claim); *Nat'l Wilderness Inst. v. United States Army Corps of Eng'rs*, Civ. No. 01-0273, 2005 U.S. Dist. LEXIS 5159 (D.D.C. Mar. 23, 2005) (to state claim under either 16 U.S.C. § 1540(g)(1)(C) or APA, designation of critical habitat for shortnose sturgeon must be non-discretionary function).

### 2.     The (q)(2) and (q)(4) limitations are not final agency action

The (q)(2) and (q)(4) limitations are not final agency action because the Service's election to not apply the Section 9 take prohibitions in these instances does not amount to an action in which "'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (*quoting Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)); *see also Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 15 (D.C. Cir. 2005) ("[I]f the practical effect of the agency action is not a certain change in the legal obligations of a party, the action is non-final for the purpose of judicial review."). CBD offers no specific reasons showing how these requirements are satisfied.

---

[5] CBD's statement that "Section 4 claims … are generally ESA citizen suits" is misleading. In *Bennett v. Spear*, 520 U.S. 154 (1997), the only case CBD relies upon in making this statement, the Court addressed the Service's designation of critical habitat (not the application of the take prohibitions via Section 4(d)), which involved the Secretary's mandatory (not discretionary) duties. *Id*. at 172. *Bennett* did not address the question of whether Section 4(d) claims challenging discretionary federal action are subject to ESA citizen suits.

CBD generally insists that the 4(d) Rule "fundamentally affects the legal status of the affected species and the obligations of federal and non-federal parties toward that species." Dkt. 203 at 28. However, CBD identifies no facts or specific federal conduct to support this assertion. *Tuggle*, 607 F. Supp. 2d at 1099 ("Plaintiffs have the burden of identifying specific federal conduct and explaining how it is 'final agency action'. . . .") (*quoting Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990)). Alaska Defendant-Intervenors have established – without contradiction – that the (q)(2) and (q)(4) limitations will not change the legal status quo. Dkt. 187 at 15-17. Specifically, under the (q)(2) limitation, MMPA-authorized activities may be conducted within the range of the polar bear just as they were before the 4(d) Rule. Similarly, activities may continue to occur outside of the range of the polar bear without being subject to the ESA's take prohibitions.[6] Because CBD does not demonstrate how the legal status quo is altered in these two instances, it fails to meet its burden to identify "specific federal conduct" to satisfy the second prong of *Bennett*'s "final agency action" test. *Id*.

CBD also confuses the Service's action – i.e., the application of the Section 9 take prohibitions – with the Service's inaction – i.e., not applying the take prohibitions. Alaska Defendant-Intervenors do not dispute that the Service's broad *application* of the Section 9 take prohibitions under the 4(d) Rule is a final action. However, this action does not automatically convert the Service's inaction — the (q)(2) and (q)(4) limitations – into agency action. The APA is clear that portions of an agency rule may be final and other portions may not be final. 5 U.S.C. § 551(13) ("agency action" is "whole *or a part* of an agency rule") (emphasis added).

---

[6] As a consequence of the listing decision (not the 4(d) Rule), ESA protections other than the Section 9 take prohibitions continue to apply to the activities covered by the (q)(2) and (q)(4) limitations. These protections include the ESA's provisions for designation of critical habitat, inter-agency consultation on federal actions under Section 7, and recovery planning under Section 4(f). In addition to these protections, all of the protections of the MMPA continue to apply to the polar bear.

Because CBD has challenged the part of the 4(d) Rule in which the Service did not act, it has failed to satisfy *Bennett*'s second "final agency action" prong.[7]

### 3. The APA's final agency action requirement applies to ESA claims

CBD attempts to rescue its ESA claims by arguing that the APA final agency action requirement does not apply to ESA citizen suits. Dkt. 203 at 26. However, the D.C. Circuit Court of Appeals has expressly held that

> [t]he APA authorizes judicial review of agency action made reviewable by statute and *final agency action* for which there is no other adequate remedy in a court. There exists no statutory review provision in the ESA that authorizes judicial review of agency action beyond that provided for in the APA. Thus, an agency action must be final in order to be judicially reviewable.

*Norton*, 415 F.3d at 13 (internal quotation marks and citations omitted).[8]  *Norton* is consistent with the plain language of the APA, which provides that the APA governs in all cases seeking review of federal agency action "except to the extent" a "[s]ubsequent statute ... expressly" modifies the APA. 5 U.S.C. § 559. Section 11(g) of the ESA does not expressly modify the APA and, therefore, the APA's final agency action requirement applies to ESA citizen suits.[9]

---

[7] In response to Alaskan Defendant-Intevenors' argument that the final agency action requirement has not been satisfied, CBD suggests that, to its knowledge, no 4(d) rule challenges have been deemed unreviewable. *See* Dkt. 203 at 28-29. However, the issue raised by Alaskan Defendant-Intervenors – namely, whether the Service's election to *not* apply the Section 9 take prohibitions constitutes final agency action – is not addressed in any of the cases cited by CBD. In short, to the Alaskan-Defendant-Intervenors' knowledge, this precise issue is a matter of first impression.

[8] CBD's suggestion that this issue has not been "squarely decided" by the D.C. Circuit is incorrect. In *Defenders of Wildlife v. Gutierrez*, 532 F.3d 913 (D.C. Cir. 2008), cited by CBD, the court did not address the issue because it found that the act at issue was a final agency action. In so doing, the court declined to revisit established D.C. Circuit law, as set forth in *Norton*.

[9] *See Bennett*, 520 U.S. at 174 (refusing to interpret ESA in way that would "effect a wholesale abrogation of the APA's 'final agency action' requirement"); *see also Dickinson v. Zurko*, 527 U.S. 150, 155 (1999) ("The APA was meant to bring uniformity to a field full of variation and diversity. It would frustrate that purpose to permit divergence on the basis of a requirement 'recognized' only as ambiguous.").

Moreover, even if CBD's ESA claim was not subject to the final agency action requirement, it would not change the fact that CBD has challenged a *discretionary* decision that is not subject to a Section 11(g)(1)(C) citizen suit as a threshold matter.

In sum, CBD has challenged a non-final, discretionary agency choice to not apply the Section 9(a) take prohibitions in two discrete instances. Because this decision is discretionary, CBD's Section 11(g)(1)(C) claim must be denied. Because the (q)(2) and (q)(4) limitations do not constitute "final agency action" – a prerequisite to an APA Section 706(2) claim – CBD's APA claim must also be denied.

### C. The (q)(2) and (q)(4) Limitations Are Not Arbitrary or Capricious, Regardless of Whether the "Necessary and Advisable" Standard Applies

If this Court nevertheless determines that CBD has stated a claim for relief under the APA or ESA, it should reject CBD's claims because the 4(d) Rule is not arbitrary or capricious. In its reply, CBD has offered no specific facts or reasons demonstrating that the Service's findings in support of the (q)(2) and (q)(4) limitations are incomplete, incorrect, or otherwise inadequate. CBD also does not show that the Service failed to draw reasoned conclusions from those express, uncontradicted findings. In sum, CBD's dispute with the (q)(2) and (q)(4) limitations amounts to nothing more than a policy disagreement, pitting CBD's preferences against the Service's informed, expert opinion. The (q)(2) and (q)(4) limitations are reasonable and well supported, and they should be upheld.

#### 1. The (q)(2) limitation is reasoned and supported by the record

The Service based its choice to not apply the Section 9 take prohibitions to MMPA- or CITES-compliant activities, in part, on this express finding:

> Our 36-year history of implementation of the MMPA, 33-year history of implementation of CITES, and our analysis of the ESA final listing rule for the species, which shows that none of the activities currently regulated under the MMPA and CITES are

10

>factors that threaten the polar bear throughout all or a significant
>portion of its range, demonstrate that these laws provide
>appropriate regulatory protection to polar bears for activities that
>are regulated under these laws.

AR4D012938. The Alaskan Defendant-Intervenors have set forth, in detail, the reasons the (q)(2) limitation is rational and withstands scrutiny under either the APA standard of review or the "necessary and advisable" standard argued by CBD. CBD offers no contradictory record (or extra-record) evidence that calls the Service's findings into question. Indeed, the record is rich with evidence demonstrating that the regulation of activities occurring within the polar bear's range under the MMPA has not resulted in any harm to polar bear populations and has even resulted in a benefit. *See* Dkt. 187 at 25-28. Perhaps most damning to CBD's criticism of the on-the-ground regulation of activities in polar bear habitat is the uncontradicted fact that "since 1991, … there has been no known instance of a polar bear being killed or of personnel being injured by a bear as a result of oil and gas industry activities in the areas covered by the incidental take regulations." AR4D012930. CBD has identified no facts or other record information that contradicts the well-established factual record.[10]

The Service considered the record evidence, acknowledged the similarities and differences between the MMPA and the ESA, and reasonably came to the conclusion that the ESA's Section 9 take prohibitions should not be extended to activities that are compliant with the

---

[10] CBD's statement that "[a]lmost by definition, then, the MMPA does not adequately provide for the conservation of the polar bear; if it did, the ESA listing would not have been necessary" is inconsistent with CBD's position, and the Secretary's finding, that increased GHG emissions are the "primary threat" to the polar bear. *See* Dkt. 203 at 14, 39-40 ("It is *this* take exemption [referring to the (q)(4) limitation] that this case is primarily about."). As CBD well knows, the MMPA provisions at issue in the (q)(2) limitation have nothing to do with GHG emissions. The (q)(2) limitation speaks to the on-the-ground aspects of polar bear conservation that have, over the years, been proven to aid in the conservation of the polar bear. In any event, both the (q)(2) and (q)(4) limitations are rational and supported by the record, and CBD's attempt to mix and match the discrete activities covered by the two limitations, respectively, falls short.

MMPA or CITES. The decision should be upheld under either the (applicable) APA rational basis standard of review or the (inapplicable) "necessary and advisable" standard of review.[11]

### 2. The (q)(4) limitation is reasoned and supported by the record

The (q)(4) limitation is similarly well reasoned and supported by express and uncontested findings in the record. Specifically, CBD offers nothing that contradicts or otherwise calls into question the Service's finding that

> [t]here is no way to determine how the emissions from a specific action both influence climate change and then subsequently affect specific listed species, including polar bears. As we understand them, the best scientific data currently available do not draw a causal connection between GHG emissions resulting from a specific Federal action and effects on listed species or critical habitat by climate change.

AR4D012942. This finding represents the current and best available science and is entitled to "particularly deferential review." *Milk Indus. Found. v. Glickman*, 132 F.3d 1467, 1478 (D.C. Cir. 1998) (internal quotation marks and citation omitted). Not only does CBD fail to rebut this express finding, it also offers no explanation as to how the Service's act of affirmatively applying the Section 9 take prohibitions to activities outside the polar bear's range would serve the conservation of the species. To the contrary, the lack of a causal connection between climate change and specific activities supports the Service's decision to not apply the take prohibitions to those activities. Again, CBD's policy preference provides no basis for this Court to upset the Service's reasoned decision.

---

[11] Alaskan Defendant-Intervenors hereby adopt and incorporate by reference the Reply Brief in Support of Intervenor-Defendant Arctic Slope Regional Corporation's Cross-Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment on 4(d) Rule Claims (Dkt. 210), with the exception of footnote 4 as it pertains to the adoption of the Reply of the National Trade Associations in Support of the Federal Defendants' Cross-Motion for Summary Judgment on the 4(d) Rule (Dkt. 209) ("Trade Associations' Reply Brief"). *See infra* footnote 12.

CBD misinterprets the (q)(4) limitation as one that "exempts" activities outside of the range of the polar bear. *See* Dkt. 203 at 11 (arguing that, since no causal connection can be established, there is "no need to exempt [GHG-emitting activities] from Section 9"). In the 4(d) Rule, the Service did not "exempt" these activities; rather, it *declined to extend* the Section 9 take prohibitions to those activities. Whether GHG-emitting activities pose the "primary threat," a small threat, or no threat to the polar bear, the Service, pursuant to its discretion under Section 4(d), could have chosen to not apply the Section 9 take prohibitions to *any* GHG-emitting activities. The Secretary reasonably found that it could not extend the take prohibitions in this instance because there is no justification for it – no causal connection can be established**.** The Service's decision is entitled to deference and withstands scrutiny under either the APA rational basis standard of review or the "necessary and advisable" standard of review.[12]

### D.     CBD's NEPA Claims Should Be Dismissed

In the interests of efficiency, Alaskan Defendant-Intervenors incorporate the arguments set forth in the reply briefs of the Federal Defendants and the National Trade Associations demonstrating why the Service was not required to prepare a NEPA document with the issuance of the 4(d) Rule. Dkt. 205 at 25-33; Dkt. 209 at 11-12. Those arguments, along with those made by Alaskan Defendant-Intervenors in their opening brief, establish that NEPA review was not required because: (i) there was no "major federal action" under NEPA; (ii) there was no final agency action – "a prerequisite to a NEPA suit against a federal agency" (*Am. Forest Res. Council v. Hall*, 533 F. Supp. 2d 84, 90 (D.D.C. 2008)); and (iii) the 4(d) Rule effects no change to the physical environment or the legal status quo. For all of the reasons set forth in the briefing

---

[12] Alaskan Defendant-Intervenors hereby adopt and incorporate by reference Sections I.A., I.B., I.D., and II of the Trade Associations' Reply Brief (Dkt. 209) and Sections I and II of the Reply in Support of Federal Defendants' Cross-Motion for Summary Judgment on the 4(d) Rule (Dkt. 206-1 at 1-33).

of the Federal Defendants, the Alaskan Defendant-Intervenors, and the National Trade Associations, the Service was not required to conduct a NEPA review for the 4(d) Rule and, consequently, CBD's NEPA claim should be dismissed.

**E.     Remedy**

Because the Service properly promulgated the 4(d) Rule, it should be upheld and the Court need not reach the remedy issues raised by CBD.  However, should the Court determine that there is some legal flaw in the 4(d) Rule, then, as others have suggested,[13] no set aside of the 4(d) Rule should occur without detailed further briefing on the appropriateness of the remedy once a ruling on the merits is made.

### III.    CONCLUSION

For the foregoing reasons, the State of Alaska, the Arctic Slope Regional Corporation, and the Alaska Oil and Gas Association respectfully request that this Court grant summary judgment in favor of the Federal Defendants and Defendant-Intervenors, and deny summary judgment to Plaintiffs on their 4(d) Rule claims.

DATED this 16th day of August, 2010.

/s/ Jeffrey W. Leppo
Jeffrey W. Leppo (D.C. Bar No. 493482)
Ryan P. Steen (Admitted *Pro Hac Vice*)
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, Washington  98101
Telephone:  (206) 386-7641
Facsimile:  (206) 386-7500
jwleppo@stoel.com
rpsteen@stoel.com

*Attorneys for Defendant-Intervenor*
*Alaska Oil and Gas Association*

---

[13] *See* Trade Associations' Reply Brief (Dkt. 209) § III.  Defendant-Intervenor Alaska Oil and Gas Association hereby adopts and incorporates the arguments set forth in the Trade Associations' Reply Brief (Dkt. 209) § III.

/s/ Margaret P. Strand
Margaret P. Strand (D.C. Bar No. 936419)
John F. Cooney (D.C. Bar No. 936336)
David L. Feinberg (D.C. Bar No. 982635)
VENABLE LLP
575 7th Street, N.W.
Washington, D.C.  20004
Telephone:  (202) 344-4699
Facsimile:  (202) 344-8300
mnstrand@venable.com
jfcooney@venable.com

/s/ Kevin M. Cuddy
Jeffrey M. Feldman
Kevin M. Cuddy
FELDMAN ORLANSKY & SANDERS
500 L Street, Suite 400
Anchorage, Alaska  99501
Telephone:  (907) 272-3538
Feldman@frozenlaw.com
cuddy@frozenlaw.com

*Attorneys for Defendant-Intervenor*
*Arctic Slope Regional Corporation*

/s/Murray D. Feldman
Murray D. Feldman
Craig D. Galli (D.C. Bar No. 414395)
HOLLAND & HART LLP
P. O. Box 2527
Boise, Idaho  83701-2527
Telephone:  (208) 342-5000
Facsimile:  (208) 343-8869
mfeldman@hollandhart.com
cgalli@hollandhart.com

Bradley E. Meyen
Assistant Attorney General
State of Alaska
Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, Alaska  99501
Telephone:  (907) 269-5232
Facsimile:  (907) 279-2834
brad.meyen@alaska.gov

*Attorneys for Defendant-Intervenor*
*State of Alaska*

15

**CERTIFICATE OF SERVICE**

I hereby certify that on August 16, 2010, I electronically filed the foregoing *Reply In Support Of Alaskan Defendant-Intervenors' Cross-Motion For Summary Judgment On The 4(d) Rule Claims And In Opposition To Plaintiffs' Motion For Summary Judgment On The 4(d) Rule Claims* with the Clerk of the Court for the United States District Court – District of Columbia by using the CM/ECF system.  Participants in this case No. 1:08-mc-00764 (EGS) who are registered CM/ECF users will be served by the CM/ECF system.

/s/ Jeffrey W. Leppo