**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| IN RE POLAR BEAR ENDANGERED ) <br> SPECIES ACT LISTING AND § 4(d) ) <br> RULE LITIGATION ) <br> ) <br> ) <br> _____) <br> ) <br> ) <br> This Document Relates To: ) <br> CONSERVATION FORCE et al. v. ) <br> KEMPTHORNE et al., No. 09-245 (EGS) ) <br> ) <br> _____) | Misc. Action No. 08-764 (EGS) <br> MDL Docket No. 1993 |

**SUPPLEMENTAL MEMORANDA DISCUSSION ON APPLICATION OF**
**DEFENDERS OF WILDLIFE, ET AL. V. SALAZAR, ET AL., NOS. 09-77 AND**
**09-82, 2010 WL 3084194 (D. MONT. AUG. 5, 2010)**

This is a supplemental memoranda of Conservation Force, et al. in response to the Court's Minute Order of 8/10/2010 to discuss the above cited case.

The case does not have any negative bearing on the issues presented by Conservation Force, et al. in their case challenging the polar bear listing. First, Defenders Montana case concerned an "endangered" listed, domestic species and the Government's delisting rationale directly contradicted its own rules and prior findings. Although DPS are favored, the division of DPS is not. The Montana Court points out that DPS are favored but further division of DPS below that level is not. The downlisting of Minnesota wolves was permitted because "the Service reclassified those wolves as a separate and complete DPS…," but the larger Rocky Mountain populations could not be divided below the DPS level of all those states in that DPS.

Unlike the Montana case, the concern of Conservation Force is exclusively the initial threatened listing of foreign populations of polar bear that it believes shuld have been **whole** DPS's.

The Montana Court also explicitly distinguishes threatened listed species from endangered. See footnote on page 29, distinguishing *Trout Unlimited*, "However, there the DPS was listed as threatened – not endangered."

The Montana ruling is that "the Endangered Species Act does not allow a distinct population segment to be subdivided," page 6 of opinion. The Court does not re-determine what constitutes a DPS. Significantly, the Service had already made the DPS determination and was trying to de-list different segments within the same DPS. The listing treatment of different DPS's was not the issue. Had the Service not predetermined that all the wolves in the states in issue formed one DPS, there would not have been a violation of the ESA. ("No one has taken issue with the DPS designation," page 19.) In the polar bear cases, Conservation Force, et al. is concerned with whether or not some management unites should be DPS's, not if any DPS should be further divided into smaller units.

The Montana Court cites *Trout Unlimited,* 559 F.3d at 946 quoted from *Nat'l Ass'n of Home Builders v. Norton*, 346 F.3d 835, 842 (9th Cir. 2003) that

> *The ability to designate and list [distinct population segments] allows the [agency] to provide different levels of protection to different populations of the same species.*

That is in accord with Conservation Force's position that at least some Canadian populations (DPS's) should not have been listed. The DPS designation was created by Congress to spare such populations from listing, as cited by the Montana Court.

"Congress defined 'species' to be nothing smaller than a DPS," for listing purposes (page 22). Conservation Force's claim in the polar bear suit is that Canada's management units are based upon their biological distinctiveness and management boundaries, and should have been treated as distinct populations, not that those management units should have been further subdivided. The issue in the polar bear cases is what is a distinct population and should they be recognized in consideration of Canada's management programs instead of lumped together, those projected negatively and those not projected negatively alike, all at once and as one, prematurely, for the mere convenience of the Agency.

The Montana Court noted that the Service had previously published that "the ESA does not allow wolves to be delisted on a state-by-state basis," page 35, citing 70 F.R. 1296. The Montana case turns on this prior contradiction.

The case is clear that Congress created DPS's to provide different treatment of distinct population segments, not to prohibit different listings of populations that are DPS.

Though the Montana decision does not contradict Conservation Force's position, it most certainly supports the points made in favor of not listing Canada's bear. Citing S. Rep No. 96-151, page 44 of Opinion, the Court favorably quotes the history of the Act:

> *Representative Dingell expressed concerns that if alligators had to be listed at the taxonomic level then state management through hunting would not be allowed in states with healthy populations. Id. (S. Rep. No. 96-151) This discussion on the definition of species makes two things clear. Of primary concern is the notion that in 1978 Congress reasoned that if the definition of species excluded subspecies and populations the Service would have to list an entire species even if the species was not in danger of extinction in certain geographical areas. Additionally, broad listings would be intrusive and harmful to state management practices*

> *because with listing came the requisite protections that would ban hunting in those states.*
>
> Page 45 of Court Opinion

This is consistent with Conservation Force's position that Canada populations of polar bear should not have been listed over Canada's objection because it was a premature intrusion harmful to Canadian management practices that heavily relied upon the revenue and incentives arising from American tourist hunting.

The Montana case does not concern a foreign species. The reason to DPS is even greater with foreign species:

> *The Committee also received testimony stating that "the Secretary has listed some foreign species as endangered throughout their entire range without considering whether their population status varies from country to country." There may be nations where a combination of a healthy population and effective management programs permit the sport hunting of such species without adversely affecting its status. The failure to recognize this may result in the foreign nations being denied much-needed revenues derived from license fees that are used to fund their wildlife conservation and management programs. If the Secretary is in receipt of biological information from a foreign nation with respect to a resident game species listed as "**endangered**," he should evaluate the status of such species within the country in question. The evaluation should consider the effectiveness of management programs such as artificial propagation, and whether these programs permit sport hunting of listed species in nations where it otherwise might be detrimental to the species. The evaluation should also determine whether the specific country in question has a management program for the species, whether the species' population can sustain a sport hunting harvest, and whether the sport hunting enhances the survival of the species. If the Secretary determines that sport hunting in such country will assist in the conservation of a listed species, he should issue appropriate regulations to facilitate the import of sport-hunted trophies of such specimens. **The above-mentioned criteria should be taken into account in future listings of game species as well.***

(Senate Report No. 97-418. Emphasis Added.)

In conclusion, the delisting (or not listing in polar bear case) of the Minnesota wolf is consistent with the position of Conservation Force that various Canadian populations that are not even forecasted to be at risk in the next 50 years should not have been intrusively listed to the detriment of Canada's bear.  In both deference to Canada's program and its management of those distinct populations, some populations should not have been lump listed for the mere convenience of the agency.

        Respectfully submitted,

        ___/s/_____
        John J. Jackson, III
        Attorney for Plaintiffs
        3240 S I-10 Service Rd. W, Ste. 200
        Metairie, LA  70001-6911
        Phone: 504-837-1233
        Fax: 504-837-1145
        Email: jjw-no@att.net
        D.C. Bar # 432019