## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE POLAR BEAR ENDANGERED SPECIES ACT LISTING AND § 4(d) RULE LITIGATION ) ) ) ) ) | Misc. Action No. 1:08-mc-00764 (EGS) MDL Docket No. 1993 |
| **This Document Relates To:** ) | |
| *Center for Biological Diversity, et al. v. Salazar, et al.*, No. 1:08-cv-2113 ) ) | |
| *Defenders of Wildlife v. United States Dept. of the Interior,* No. 1:09-cv-153 ) ) ) ) | |

**DEFENDANT-INTERVENOR ALASKA OIL AND GAS ASSOCIATION'S SUPPLEMENTAL MEMORANDUM REGARDING *DEFENDERS OF WILDLIFE v. SALAZAR***

# I.   INTRODUCTION

This memorandum is submitted by Defendant-Intervenor Alaska Oil and Gas Association in response to and in compliance with the Court's Minute Order of August 11, 2010.[1] In its Order, the Court directed the parties to address the recently issued district court opinion in *Defenders of Wildlife v. Salazar,* Nos. CV 09-77 and CV 09-82, 2010 U.S. Dist. LEXIS 80851 (D. Mont. Aug. 5, 2010) (hereinafter "*Defenders*"), and to discuss "how that opinion applies, if at all, to the issues presented in this case." As explained below, the *Defenders* decision provides neither applicable authority nor probative analysis with respect to the claims and issues pending in this litigation.

## II.   THE *DEFENDERS* DECISION IS NOT APPLICABLE IN THIS CASE

### A.   Neither The Context In Which The *Defenders* Case Arose, Nor The Court's Holdings, Are Relevant To The Polar Bear Litigation

The *Defenders* case arose in the context of the U.S. Fish and Wildlife Service's ("Service") designation of a gray wolf subpopulation in some western states as the "northern Rocky Mountain" gray wolf distinct population segment ("DPS"), and a related decision by the Service to remove a portion of the DPS from ESA protections. In particular, in an April 2, 2009 final rule, the Service removed the ESA protections for gray wolves throughout the northern Rocky Mountain DPS except for Wyoming. *See Defenders*, 2010 U.S. Dist. LEXIS 80851 at *9. In promulgating the rule, the Service determined that the northern Rocky Mountain gray wolf population qualified as a DPS, and that the DPS had consistently met established recovery goals. However, the Wyoming component of the DPS was excluded from the proposed delisting

---

[1] Pursuant to the Court's Order encouraging the parties to file joint memoranda, the State of Alaska and Defendant-Intervenors Arctic Slope Regional Corporation, Edison Electric Institute, Chamber of Commerce of the United States of America, National Mining Association, and National Association of Manufacturers join in this memorandum.

1

because, unlike wolf conservation regulatory programs in other relevant states, the Wyoming program did not meet the ESA's requirements for ensuring recovery for the foreseeable future. *Id.* at *15.

Numerous parties challenged the Service's April 2009 decision on a wide variety of grounds. *Id.* at *8-9 (court's identification of fourteen separate claims by two groupings of plaintiffs). However, none of the grounds on which *Defenders* was decided is relevant to the pending claims asserted in the polar bear ESA listing and 4(d) rule litigation. Notably, no claims in *Defenders* addressed the listing of a threatened species or the validity of a 4(d) rule for any threatened species.

In its August 2010 decision, the Court determined that the rule delisting the gray wolf must be set aside. *Id.* at *7. The holdings of the case are: (i) that the ESA does not allow the Service to segment a species so as to apply the protections afforded by the ESA to only portion of a listed DPS or species; and (ii) the legislative history of the ESA does not support interpretation of the phrase "significant portion of its range" such that a species DPS may be further subdivided for purposes of the ESA. *Id.* As succinctly summarized by the court, "[t]he plain language of the ESA does not allow the agency to divide a DPS into a smaller taxonomy." *Id.* at *10.

These holdings do not inform either the listing or the 4(d) rule issues before the Court in the polar bear case. The crux of the issue presented in *Defenders* was whether "the Service violated the plain terms of the ESA by listing something less than a DPS as endangered." *Id*. at *21. The issues presented in this case, in contrast, involve: (i) whether the Service's decision to list the polar bear species as threatened throughout its entire range should be upheld based on the administrative record (*i.e.,* whether the polar bear either should not have been listed at all or

2

should have been listed as endangered); (ii) whether the Service should have designated some polar bear subpopulations as DPSs and then either not listed one or more of these DPSs or listed these DPSs as endangered; (iii) whether the Service's companion promulgation of a polar bear 4(d) rule is compatible with the ESA and is supported by the administrative record; and (iv) whether the Service failed to comply with the procedural requirements of NEPA in promulgating the polar bear 4(d) rule.

### B.     The Defenders Case Is Neither Precedent Nor Useful Authority

In addition to the unrelated context and holdings in the *Defenders* case, the district court's decision does not provide any otherwise precedent setting or useful authority relevant to the claims and arguments in the polar bear litigation.  For example, although the court's decision is premised upon application of various principles of statutory construction, and also addresses application of *Chevron* deference to the Service's interpretation of the ESA, these legal principles are not novel.  The *Defenders* decision does not establish new or different precedent regarding statutory construction or regarding *Chevron* deference.

The *Defenders* decision does allude to the fact that the ESA makes distinctions between the flexibility afforded the Service in the case of a threatened species in contrast to the mandates applicable to an endangered species.  *Id.* at *34 n.2.  The court's decision also includes a few references to the general obligation of federal agencies to seek to conserve a species once it is listed under the ESA.  *See, e.g., id*. at *5, *18.  However, these general statements are not holdings of the case or central to the court's decision.  Moreover, although plaintiffs in this case argue that the 4(d) rule issues turn on application of the ESA's conservation obligation as to threatened species, the summary statements in the *Defenders* case do not provide any analysis or discussion that is probative or otherwise useful to this Court.

### III.   CONCLUSION

In response to the Court's Minute Order, the Defendant-Intervenor Alaska Oil and Gas Association hereby advises this Court that the *Defenders* decision does not apply as precedent or as other useful authority to the issues presented in the polar bear listing and 4(d) litigation.

DATED this 24th day of August, 2010.

/s/ Jeffrey W. Leppo
Jeffrey W. Leppo (D.C. Bar No. 493482)
Ryan P. Steen (Admitted *Pro Hac Vice*)
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, Washington  98101
Telephone:  (206) 386-7641
Facsimile:  (206) 386-7500
jwleppo@stoel.com
rpsteen@stoel.com

*Attorneys for Defendant-Intervenor*
*Alaska Oil and Gas Association*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 24, 2010, I electronically filed the foregoing *Defendant-Intervenors' Supplemental Memorandum Regarding* Defenders of Wildlife v. Salazar with the Clerk of the Court for the United States District Court – District of Columbia by using the CM/ECF system.  Participants in this case No. 1:08-mc-00764 (EGS) who are registered CM/ECF users will be served by the CM/ECF system.

       /s/ Jeffrey W. Leppo