UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE POLAR BEAR ENDANGERED SPECIES ACT LISTING AND § 4(d) RULE LITIGATION<br><br>This Document Relates To:<br><br>No. 1:08-cv-2113, *Center for Biological Diversity, et al. v. Kempthorne, et al.*<br>No. 1:08-cv-1689, *California Cattlemen's Ass'n, et al. v. Salazar;*<br>No. 1:09-cv-245, *Conservation Force et al. v. Salazar, et al.;*<br>No. 1:08-cv-1550, *Safari Club Int'l, et al. v. Salazar, et al.;*<br>No. 1:08-cv-1352, *State of Alaska v. Salazar, et al*. | Misc. Action No. 08-0764 (EGS)<br>MDL Docket No. 1993 |

**SUPPLEMENTAL BRIEF OF CENTER FOR BIOLOGICAL DIVERSITY, NATURAL RESOURCES DEFENSE COUNCIL, GREENPEACE, INC., HUMANE SOCIETY OF THE UNITED STATES, DEFENDERS OF WILDLIFE, AND INTERNATIONAL FUND FOR ANIMAL WELFARE RE THE RELEVANCE OF *DEFENDERS OF WILDLIFE v. SALAZAR***

On August 10, 2010 the Court issued an Order requesting supplemental briefing on the relevance of the opinion recently issued in *Defenders of Wildlife et al v. Salazar et al.*, Nos. 09-77 and 09-82, 2010 WL 3084194 (D. Mont. Aug. 5, 2010) to these consolidated cases. The Center for Biological Diversity, Natural Resources Defense Council, Greenpeace, Inc., ("CBD et al."), along with the Humane Society of the United States, Defenders of Wildlife, and International Fund for Animal Welfare ("HSUS et al.") provide the following in response.[1]

In short, CBD et al. and HSUS et al. believe that the opinion in *Defenders* correctly reflects how the terms "significant portion of range" and "distinct population segment" must be interpreted when determining whether a species, or population segment thereof, warrants the protections of the Endangered Species Act (ESA).  *Defenders* provides a detailed analysis of terms that are implicated in the challenges to the polar bear listing rule and is therefore informative to the issues facing this Court.  Nevertheless, as explained below, this Court need neither follow nor reject the holding in *Defenders* to resolve the claims before it, as the questions presented in *Defenders* go not to the question of *whether* the May 15, 2008 listing rule for the polar bear should be remanded to the Fish and Wildlife Service, but instead only to the question of *what the Service should do following* any such remand should this Court find flaws with that listing decision.  As such, while the questions addressed by *Defenders* may very well be at the core of any *subsequent* litigation over a *new* Service decision following a potential remand, they are not critical to the claims currently at issue regarding the 2008 polar bear listing decision.

**A.     The Holding of *Defenders of Wildlife***

The primary issue addressed by the Court in *Defenders* is when and how populations of a species can be protected under the ESA below the taxonomic species or subspecies level.  The ruling turned on the definition of "species" under the Act, which includes distinct population segments (DPSs), as well as the definitions of "endangered species" and "threatened species,"

---

[1] CBD et al. are plaintiffs in case number 1:08-cv-2113, and CBD et al. and Defenders of Wildlife are defendant-intervenors in cases 1:08-cv-1689, 1:09-cv-245, 1:08-cv-1550 and 1:08-cv-1352.  HSUS et al. are defendant-intervenors in case 1:09-cv-245.

1

which include the phrase "significant portion of its range."[2]

In *Defenders* it was undisputed that the northern Rocky Mountain gray wolf DPS, comprised of wolves in Montana, Idaho and Wyoming, is a valid DPS and therefore a "species" under the ESA. *Id*. at 19. It was also undisputed that the DPS is in danger of extinction in Wyoming, and that Wyoming is a "significant portion of its range." *Id.* The crux of the debate in the case was, once the Service defines a "species" (the northern Rocky Mountain gray wolf DPS), concludes that a given area (Wyoming) of the species' range is a "significant portion of its range," and further concludes that the species is in danger of extinction in that part of its range, whether the entire species' range (Montana, Idaho, Wyoming), or only the identified significant portion (Wyoming), is entitled to protection under the ESA. With the wolf, the Service applied the ESA's protections only to Wyoming, effectively delisting those parts of the DPS in Montana and Idaho. After a thorough review of the statutory structure, legislative history, and caselaw, Judge Molloy struck down the Service's action as inconsistent with the ESA. *Id*. at 47.

Fundamentally then, the question addressed by the Court was whether the "significant portion of its range" language dictated "where" rather than "when" a species was to be afforded the protections of the ESA. The Service argued that only the significant portion (the "where") should receive protection, while plaintiffs argued that being imperiled in a significant portion of its range (the "when") necessitated protection of the entire species. The Court agreed with plaintiffs, finding that Congress added the "significant portion of range" language to add greater flexibility in when a species could be listed.

> Congress described the addition of "significant portion of its range" to be a "significant shift" in "when" a species is endangered. Prior to 1973, a species was considered endangered only "*when* it [was] threatened with worldwide extinction." H.R. Rep. 93-412 at 11... The legislative history shows that the

---

[2] The term "species" is defined to include species, subspecies, and "any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." 16 U.S.C. § 1532 (16). A species is "endangered" if it "is in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6). A species is "threatened" if it "is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." 16 U.S.C. § 1532(20).

2

> addition of the "portion of its range" phrase alters *when* a species can be listed, but in no way suggests that the phrase changes what must be listed and protected.

Id. at (46-47)(citations omitted; emphasis in original).

In sum, *Defenders* stands for the proposition that if a "species" (species, subspecies or DPS) is in danger of extinction in a significant portion of its range, then the entire "species" must be listed as endangered. If the Service wishes to list (or delist) less than the global taxonomic species or subspecies, it can only do so by identifying and listing (or delisting) a DPS of that species. It cannot subdivide the DPS so as to list (or delist) a population smaller than a DPS.

**B.    The "Significant Portion of its Range" Analysis in the Polar Bear Listing Rule**

In the final polar bear listing rule the Service found that "the entire species meets the definition of threatened under the Act due to the loss of sea ice habitat." ARL117298. While the Service concluded that certain portions of the polar bear range "may" be significant, the agency concluded that in no such areas was the polar bear in danger of extinction (i.e. "endangered").

> [W]e have determined that when analyzed on a population or even an ecoregion level, the available data show that there are no significant portions of the range in which the species is currently in danger of extinction. Because we find that the polar bear is not endangered in the five portions of the range that we previously determined to warrant further consideration (two ecoregions and three populations), we need not address the question of significance for those five portions.

ARL117301. Because the Service concluded the polar bear was not in danger of extinction in any significant portion of its range, it never reached the question addressed in *Defenders*: namely whether the bear should then be listed as "endangered" in all of its range, or only in the significant portion.[3]

**C.    The Challenges to the Polar Bear Listing Rule**

In *Defenders* there was no dispute that the wolf was in danger of extinction in a

---

[3] The Service did however assert that *if* it had found the bear to be in danger of extinction in any significant portion of its range it would have listed the bear *only* in that portion of its range: "If the Service determines that both a portion of the range of a species is significant and the species is threatened or endangered there, the Service will specify that portion of the range as threatened or endangered pursuant to section 4(c)(1) of the Act." ARL117299. Such a position is directly at odds with the holding of *Defenders*.

3

significant portion of its range, only a dispute as to the legal ramifications flowing from that fact. In contrast, with the polar bear the fundamental dispute is *whether* the bear is in danger of extinction in all or a significant portion of its range.[4] In their briefs, CBD et al. argue that the record clearly demonstrates that the polar bear is *currently* in danger of extinction in *at least* a significant portion of its range and therefore meets the definition of an "endangered species" rather than a "threatened species." CBD Br. at 22-36 (Dkt # 125). Safari Club and Conservation Force argue that the polar bear is not even threatened "throughout all" of its range, and therefore should have only been listed as "threatened" (if at all) in the portions of its range where the impacts are most dire (i.e. the same areas that CBD et al. believe must trigger an "endangered" listing). Safari Club Br. at 5-8 (Dkt # 123 ); Conservation Force Br. at 14 (Dkt. #126).[5]

If the Court agrees with CBD et al. and finds that the polar bear is currently in danger of extinction in a significant portion of its range (such as, for example, in the Divergent Ice Ecoregion where the USGS forecast over an 80% chance of extinction by mid-century), the appropriate remedy would be to remand the final rule to the Service to make a new listing determination consistent with the Court's order. The current "threatened" listing for the species would remain in place pending the completion of the remand. While Judge Molloy's ruling in *Defenders* would presumably inform the Service during the remand, and CBD et al. would expect that a lawful result of such a remand would be a listing as "endangered" for the full

---

[4] There is also a dispute as to whether Service properly concluded that the global polar bear species was not comprised of multiple DPSs. *See* CBD Br. at 36-40 (Dkt # 125). Given the Service concluded there were no "species" (i.e. subspecies or DPSs) of polar bears other than the global species, the "species" for purposes of the "significant portion of range" analysis is the full species. In contrast, with the wolf in *Defenders*, the "species" was the northern Rockies DPS. If this Court rules for CBD et al. on the "significant portion of range issue," it need never reach the question of whether the Service properly found no DPSs of the polar bear.

[5] Alaska and California Cattlemen's Association simply argue that the bear did not meet the definition of a threatened or endangered species in *any* of its range, and therefore do not explicitly address the "significant portion of its range" issue.

4

species,[6] this Court need not at this point explicitly decide whether to follow *Defenders* or otherwise dictate the exact parameters the Service would need to follow on remand.

Similarly, if the Court were to agree with Safari Club and Conservation Force that the Service failed to adequately justify its range-wide listing of the polar bear as "threatened," the appropriate remedy would also be a remand to the Service, keeping the listing in place during any such remand. *See, e.g. Endangered Species Comm'n v. Babbitt*, 852 F. Supp. 32, 41-43 (D.D.C. 1994). Again, the specific holding of *Defenders* would not come into play until and unless the Service following the remand decided to list the polar bear as "threatened" *only* in those portions of its range where it determined the species was likely to become endangered in the foreseeable future, rather than throughout its range.[7]

In sum, the opinion in *Defenders* provides a detailed and convincing analysis of the history and proper meaning of the phrase "significant portion of its range." However, because the instant case concerns only the threshold question of *whether* the polar bear is in danger of extinction in a significant portion of its range, not what happens *once such a finding is made* by the Service, this Court need not reach the holding of *Defenders* in order to either uphold or remand the polar bear listing rule.

---

[6] In such case, under *Defenders*, the Service could avoid a species-wide "endangered" listing only if it found that the area(s) where the bear was currently in danger of extinction comprised a DPS, listed that DPS as "endangered," and listed other DPSs as "threatened" (assuming those DPSs were not also *currently* in danger or extinction). This would require a departure from the Service's position in the final listing rule that none of the polar bear populations satisfied the "discreteness" prong of the DPS policy. *See* ARL117297-98.

[7] Given the evidence in the record is overwhelming that the polar bear is currently in danger of extinction, or, at a minimum, is likely to become so in the foreseeable future, CBD et al. and HSUS et al. do not foresee any reasonable scenario in which the listing of the polar bear could lawfully be set aside in its entirety. However, *even if* this Court were to find that the Service had only established that the species was likely to become an endangered species in a significant portion of (rather than throughout) its range (for example in the Divergent or Seasonal Ice Ecoregions, but not the Archipelago Ecoregion), under *Defenders* the Service would still be required to list the polar bear as "threatened" range-wide. In such case this Court could adopt the holding in *Defenders* and uphold the listing of the species range-wide, thereby obviating the need for any remand.

5

DATE: August 24, 2010.                     Respectfully submitted,

 /s/ Brendan Cummings_____

Brendan R. Cummings
Kassia R. Siegel
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 549
Joshua Tree, CA 92252
Phone: (760) 366-2232
Facsimile: (760) 366-2669
bcummings@biologicaldiversity.org
ksiegel@biologicaldiversity.org

Benjamin Longstreth
Rebecca J. Riley
Andrew Wetzler
NATURAL RESOURCES DEFENSE
COUNCIL
2 N. Riverside Plaza, Suite 2250
Chicago, IL  60606
Telephone: 312-651-7913
Facsimile: 312-234-9633
rriley@nrdc.org
awetzler@nrdc.org

*Attorneys for Center for Biological Diversity, Natural Resources Defense Council, and Greenpeace, Inc.*

 /s/ Howard M. Crystal_____
Howard M. Crystal (DC Bar No. 446189)
MEYER GLITZENSTEIN & CRYSTAL
1601 Connecticut Ave., NW Suite 700
Washington, DC  20009
Telephone: 202-588-5206
Facsimile: 202-588-5049
hcrystal@meyerglitz.com

Attorney for Humane Society of the United States, Defenders of Wildlife, and International Fund for Animal Welfare