# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **IN RE POLAR BEAR ENDANGERED** ) | |
| **SPECIES ACT LISTING AND § 4(d) RULE** ) | Misc. Action No. 08-0764 (EGS) |
| **LITIGATION** ) | MDL DOCKET NO. 1993 |
| ) | |
| ) | |
| **This Document Relates To Case:** ) | |
| **08-1550 (Safari Club Listing)** ) | |
| ) | |
| ) | |
| ) | |

### SUPPLEMENTAL MEMORANDUM
### BY PLAINTIFFS SAFARI CLUB INTERNATIONAL
### AND SAFARI CLUB INTERNATIONAL FOUNDATION
### REGARDING THE DISTRICT COURT DECISION IN DEFENDERS
### OF WILDLIFE v. SALAZAR, NOS. 09-77 AND 09-82,
### 2010 WL 3084194 (D. MONT. AUG. 5, 2010)

Douglas S. Burdin
D.C. Bar No. 434107
Anna M. Seidman
D.C. Bar No. 417091
Safari Club International
501 2nd Street, NE
Washington, DC 20002
Tel:  (202) 543-8733
Facsimile:  (202) 543-1205
dburdin@safariclub.org
aseidman@safariclub.org

*Counsel for Plaintiffs*
*Safari Club International and*
*Safari Club International Foundation*

A.     **Introduction**

Plaintiffs Safari Club International and Safari Club International Foundation ("SCI and SCIF") file this supplemental memorandum in compliance with the Court's Minute Order of August 10, 2010. The *Defenders* case[1] is not binding here and is only somewhat relevant to the polar bear listing case. The *Defenders* case discussed and analyzed the ability of the Fish and Wildlife Service ("Service") (1) to designate a "species" differently (*i.e.,* endangered, threatened, or not listed at all) in different portions of its range; and (2) to list distinct population segments ("DPS") of the same species differently. The *Defenders* case should not have any significant impact on this court's ruling regarding SCI and SCIF's claims, primarily because the main legal issue in the *Defenders* case is not present here. The parties in *Defenders* disputed whether the Service had the authority to designate different portions of the wolves' range within a species (defined in *Defenders* as a DPS) differently. Here, no party disputes that the Service possesses this authority. SCI and SCIF argue that the Service failed to properly consider using this authority to ***not*** list the polar bear in certain portions of its range or in certain DPSs.

B.     **The *Defenders* Case Has no Direct Bearing on SCI and SCIF's Argument on Range**

In their merits briefs in the listing case, SCI and SCIF explained that the Service failed to properly consider using its authority to ***not*** list the polar bear in portions of its range, primarily in the Archipelago ecoregion and the Convergent Ice ecoregion.[2] Instead, the Service unreasonably concluded that the polar bear is threatened (likely to become endangered in the foreseeable future) throughout its range and did not even analyze whether the bears in any portion of its

---

[1] *Defenders of Wildlife v. Salazar*, 09-77, 09-82, 2010 WL 3084194 (D. Mont. Aug. 5, 2010).

[2] SCI and SCIF discussed the "range" and DPS arguments in their briefs on the merits. Supp. Memo. in Support of MSJ (listing case), pages 5-8, Dkt. 123 (Oct. 20, 2009) ("Opening Supp. Br."); Supp. Reply Br., pages 2-8, Dkt. 164 (March 4, 2010) ("Reply Supp. Br."); *see also* Opening Supp. Br. at 3 fn.3 (incorporating Conservation Force's DPS argument).

range are not currently threatened. The Service made this conclusion despite the fact that the government's own speculative predictions indicate that 6,000-8,000 polar bears would persist past 45 years (the too-long foreseeable future) and be relatively concentrated in the Archipelago and Convergent Ice ecosystems. Opening Supp. Br. at 5-8; Reply Supp. Br. at 2-8.

Importantly, the parties here all *agree* that the Service possesses the authority to designate different portions of a species' range differently under the ESA (*e.g.,* apply the protections of the ESA to some portions and not to others).[3] The Federal Defendants certainly are convinced that they have this authority.[4] Even Plaintiffs/Defendant Intervenors Center for Biological Diversity *et al.* asserted a claim based on the range argument and did not appear to dispute SCI and SCIF's arguments about this authority. Third Am. Compl. of CBD et al., Dkt. 30, ¶¶ 115-122; Cross-Motion for Summ. J. by SCI and SCIF, Dkt. 144, page 10.

The question of whether the Service possesses this authority is not before this Court because there is no case or controversy between the parties on this issue. Therefore, the Court has no reason to look to the *Defenders* case for guidance on the range issue. If the Court remands the polar bear rule to the Service and the Service uses its range authority, a party with standing could challenge the use of that authority. Then, this Court arguably would have jurisdiction to conduct the same type of judicial review conducted by the *Defenders* court. For

---

[3] *See* Memorandum from the Department of the Interior's Office of the Solicitor, M-37013, dated March 16, 2007, ARL059064, 059076-79 (the Service possesses the authority to designate only that portion of the species' range which is threatened or endangered, leaving the rest of the range not subject to ESA restrictions).

[4] The Service has used its range authority on numerous occasions to designate different portions of a species' range differently under the ESA. *See, e.g.,* Final Rule To Amend the Listing for the Preble's Meadow Jumping Mouse (Zapus hudsonius preblei) To Specify Over What Portion of Its Range the Subspecies Is Threatened, 73 Fed. Reg. 39790, 39801-02 (July 10, 2008) (keeping listing for portion of subspecies' range in Colorado, delisting portion of subspecies' range in Wyoming); 12-Month Finding on a Petition To List the Gunnison's Prairie Dog as Threatened or Endangered, 73 Fed. Reg. 6660, 6675-76 (February 5, 2008) (candidate species listing in portion of range).

example, in the *Defenders* case, the parties disputed whether the Service had the authority to not designate the portion of the DPS of wolves in Idaho and Montana, and leave those wolves in Wyoming subject to the restrictions of an endangered listing.[5]  No such dispute exists here.

Even if this Court had occasion to determine whether the Service has the "range" authority, it should not follow the Montana court because the *Defenders* court was wrong in its conclusion.  SCI and SCIF assume that the Court does not want a full discussion of the flaws in the *Defenders* decision in this five-page memorandum.  In short, however, the *Defenders* court too readily concluded that the plain language of the ESA precluded the Service's interpretation of the statute (an interpretation explained in the comprehensive Solicitor's memorandum cited in footnote 3).  While the government and SCI and SCIF conclude that the ESA is clear that the Service has this authority, at the very least, the ESA is ambiguous about this authority (*i.e.,* it is not clear the Service lacks this authority).  Two provisions of the ESA help establish the range authority or at least create ambiguity about that authority.  The *Defenders* Court should have deferred to the Service's legal interpretation of its authority.

First, Section 4, the listing provision, directs the Service to publish a list of threatened and endangered species.  More specifically, it directs the Service to "specify with respect to such species over what portion of its range it is endangered or threatened, …." 16 U.S.C. § 1533(c)(1).  If Congress did not intend the Service to have the authority to designate something less than the species' entire range, Congress would not have included the words "over what portion" in this directive.  Instead, it would have said something like "specify the species'

---

[5] The *Defenders* case involved the **delisting** of a recovered species in the United States.  The Service concluded that the 1,639 wolves in this DPS were biologically recovered and had met recovery goals.  See Wolf Final Rule, 74 Fed. Reg. 15123, 15135 (Feb. 27, 2007).  The different treatment based on state lines involved the state management plans that would largely govern management of the wolves post-delisting.  The Service found Idaho's and Montana's plan sufficient, but concluded that Wyoming's plan was not adequate.  *Id.* at 15123-25.

3

range." The protections of the ESA then would apply wherever that "species" (whether a biological species or subspecies, or a DPS) existed (*i.e.,* throughout its range).

The second provision involves the definitions of "endangered" and "threatened," which each call for an analysis of the status of the species "throughout all *or* a significant portion of its range." 16 U.S.C. § 1532(6), (19) (emphasis added). The Service concludes that if a species is threatened or endangered in only a significant portion of its range, the Service has the ability to designate only those portions of the range where the species is threatened or endangered, and leave the rest of the range unprotected (as discussed above). If the Service lacked the authority to designate portions of the range differently, Congress would have had no reason to include the disjunctive "or" in these definitions. The Service would have to list a species throughout its range if that species was in danger of extinction (or likely to become so) in only a significant portion of its range. The inquiry would end with this conclusion. The Service would never have to determine the status of the species "throughout" its range. On the other hand, the Service's interpretation of its range authority gives meaning to all the words of these definitions.

The *Defenders* court attempts to explain away these statutory authorities (and potential sources of ambiguity) but never squarely addresses the government's arguments. *See Defenders,* 2010 WL 3084194, at *10-11. If nothing else, these provisions undermine that court's conclusion that the plain language of the ESA defeats the Service's range interpretation. These two statutory provisions should have led the *Defenders* court to defer to the Service's interpretation of the ESA provision at issue in that case.

In addition, even the *Defenders* court seems to agree that the legislative history suggests broad authority to list different populations differently under the ESA. *Id.* at *16-18. That court confirmed that the Service can use DPS designations to list different populations of the same

species differently.  *Id.* at *15.  The court even suggested that the Service has broad authority to create different ESA "species," based on factors such as state lines, and assign different listing statuses to these separate species.  *Id.* at *17.  These conclusions undermine the Service's decision to list the polar bear throughout its worldwide range.

Finally, the significance of the *Defenders* case, if any, may prove only temporary, as it appears that the *Defenders* case will be appealed to the Ninth Circuit by at least one party.[6]  For the reasons discussed above and numerous other arguments, it is at least possible that the *Defenders* decision will be overturned.  Regardless of what happens on appeal and whether it supports or undermines any party's arguments, the decision of the District Court for the District of Montana is not binding here, to the extent it is relevant.  Of course, this Court can look to the decisions of its sister District Court for guidance, but even that is not called for.

**C.     Conclusion**

Although the *Defenders* case is generally relevant to some of the arguments in the polar bear listing case, it should not change or significantly affect this Court's decision.  The main legal issue in the *Defenders* case – whether the Service even has the "range" authority – is not present in the instant case.  In any event, the *Defenders* case was wrongly decided, likely will be appealed, and is not binding on this Court.  If anything, it broadly supports that the Service should have better considered ***not*** listing at least some of the polar bears as threatened in some manner, whether by reference to certain portions of its range or by using DPSs.  This case confirms that Congress intended to give the Service some kind of authority to list or not list groups within a species to account for different situations.  The polar bear is a perfect example of a situation in which the Service should have exercised this authority by range or DPS.

---

[6] Press Release, [Montana] Confirms It Will Appeal Wolf Ruling, August 20, 2010, http://fwp.mt.gov/news/article.html?action=getArticle&id=9530.

Dated:  August 24, 2010.

                                      Respectfully Submitted,

                                      /s/ Douglas S. Burdin
                                      Douglas S. Burdin (D.C. Bar No. 434107)
                                      Anna M. Seidman (D.C. Bar No. 417091)
                                      Safari Club International
                                      501 2nd Street, NE
                                      Washington, DC 20002
                                      Tel:  (202) 543-8733
                                      Facsimile:  (202) 543-1205
                                      dburdin@safariclub.org
                                      aseidman@safariclub.org

                                      *Counsel for Plaintiffs*
                                      *Safari Club International and*
                                      *Safari Club International Foundation*