.uUNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE POLAR BEAR ENDANGERED SPECIES ACT LISTING AND § 4(d) RULE LITIGATION ) ) ) ) ) | |
| | Misc. Action No. 1:08-mc-00764 (EGS) MDL Docket No. 1993 |
| This Document Relates To: ) | |
| *Center for Biological Diversity, et al. v. Salazar, et al.*, No. 1:08-cv-2113 ) ) | |
| *Defenders of Wildlife v. United States Dept. of the Interior,* No. 1:09-cv-153 ) ) ) ) | |

**DEFENDANT-INTERVENORS ALASKA OIL AND GAS ASSOCIATION'S AND ARCTIC SLOPE REGIONAL CORPORATION'S SUPPLEMENTAL MEMORANDUM REGARDING ISSUES RAISED IN COURT'S OCTOBER 14, 2010 MINUTE ORDER**

I.     INTRODUCTION

Defendant-Intervenors Alaska Oil and Gas Association ("AOGA") and Arctic Slope Regional Corporation ("ASRC") respectfully submit this memorandum in compliance with the Court's Minute Order of October 14, 2010.[1]  The Court directed the parties to address how and when, in the event the Court issues a remand to the U.S. Fish and Wildlife Service (the "Service") to consider whether "the polar bear is endangered across all or a significant portion of its range," the Court should review and resolve (1) the remaining issues raised in the Listing Rule cases,[2] and (2) the remaining aspects of this litigation, such as the 4(d) Rule challenge.  As explained below, in the event this Court issues a remand for further consideration of the Listing Rule, the Court should stay its review and resolution of the 4(d) Rule challenge pending the completion of any such remand.[3]

II.    ARGUMENT

As explained in AOGA and ASRC's briefing on the Listing Rule, and as acknowledged by plaintiffs Center for Biological Diversity et al. ("CBD"), the viability of the 4(d) Rule is

---

[1] Pursuant to the Court's suggestion that parties file joint memoranda, Defendant-Intervenors Edison Electric Institute, American Petroleum Institute, National Mining Association, American Iron and Steel Institute, U.S. Chamber of Commerce, National Petrochemical and Refiners Association, and National Association of Manufacturers join in this memorandum, in particular as to the 4(d) Rule issues.

[2] AOGA and ASRC intervened in order to defend the Listing Rule, and have not taken positions on any of the other Listing Rule issues.  We do submit, however, that as a matter of fairness and efficiency this Court should rule upon all challenges to the Listing Rule now because none of the Listing Rule challenges, consolidated here in this multi-district litigation, are first-in-time or otherwise entitled to priority.  Those claims challenge the Listing Rule on a variety of different bases and we submit that, if any remand were to occur, it should be based on the Court's review and adjudication of all of competing claims challenging the Listing Rule.

[3] AOGA and ASRC firmly believe that the Service's Listing Rule determination should be upheld and that a remand is not warranted, based on the record and applicable law.  This memorandum addresses the remand scenario raised by the Court, but does not reflect a change in the parties' view that the Listing Rule should be upheld.

dependent upon the listing of the polar bear as a "threatened" species throughout all or portions of its range. Dkt. 151 at 6-8; Dkt. 125 at 22 (CBD's argument that the Service's threatened listing "allowed the Secretary to promulgate a 4(d) rule for the species"). In the event this Court issues a remand on any aspect of the Listing Rule, the threatened listing should remain in place pending the Service's issuance of a new or amended rule upon completion of the remand.[4] If the Service finds on remand that the polar bear should be listed as an "endangered" species in portions of its range or across any subset of the species, then the 4(d) Rule will be of no force and effect in the areas in which the polar bear is classified as endangered. Additionally, if the Service finds on any remand that the polar bear is "endangered" in all portions of its range, then the 4(d) Rule will be wholly inapplicable and the 4(d) Rule challenge will be moot.[5] Consequently, any adjudication of the 4(d) Rule challenge should await the final outcome of any remand. Under these circumstances, it would be most efficient for the Court and for the parties if the 4(d) Rule challenge is stayed pending the completion of any remand to the Service on the Listing Rule.

In addition, the 4(d) Rule should remain in effect during any remand because it helps conserve the species. For example, when a 1400-pound polar bear starts destroying a campsite on the North Slope of Alaska, the 4(d) Rule allows private citizens – who are most likely Alaska Natives – to take reasonable steps to scare the bear away without killing it. *See generally* Dkt. 183, at 10-13, 19-20. Absent the 4(d) Rule, private citizens would not be permitted to take these steps to defuse an encounter with a "problem" bear and the situation is much more likely to

---

[4] CBD has previously recognized that the threatened listing should remain intact upon any remand. Dkt. 125 at 45 (CBD's request that the threatened listing remain in place pending completion of a remand).

[5] Of course, the Service could also find that the polar bear is not "endangered" in any portion of its range.

2

escalate to a fatal encounter.[6]  Likewise, an Alaska Native could legally kill the bear for subsistence uses under the ESA, but would not be permitted to scare it away unless the 4(d) Rule remains in place.  *See* 16 U.S.C. § 1539(e).[7]  If the 4(d) Rule does not remain in place, these preventable deaths will likely occur in the immediate future – not potentially 70 years from now, as the Service's models predict as alleged consequences of climate change.

Finally, based on a well-established record that oil and gas activities occurring in compliance with the Marine Mammal Protection Act ("MMPA") are not a threat to polar bears, the 4(d) Rule provides an important and significant take limitation for MMPA-compliant activities.  Vast investment, operations, and management systems on the North Slope of Alaska have been built on the long-standing, judicially-sustained regulatory regime under the MMPA, the disruption of which will have significant and severe consequences.  For this additional reason, the 4(d) Rule should remain intact pending the outcome of any remand.

### III.    CONCLUSION

In response to the Court's Minute Order of October 14, 2010, Defendant-Intervenors AOGA and ASRC hereby advise the Court that, in the event the Court issues a remand to the Service on any aspects of the Listing Rule, it should issue a stay with respect to the 4(d) Rule challenge, pending the completion of the remand.

---

[6] "The nonlethal deterrence . . . provision would not result in injury to the bear or removal of the bear from the population and could, instead, prevent serious injury or death to the bear by preventing escalation of an incident to the point where the bear is killed in self-defense." AR4D012933.  If no 4(d) Rule is in place, attempting to scare the bear away would constitute intentional "harassment" under the ESA, leading to a fine of up to $20,000 and imprisonment of up to one year.  *See* 16 U.S.C. § 1375(a)(1), (b).

[7] The 4(d) Rule also promotes better relationships with the Alaska Native community whose cooperation is essential for conservation efforts on the North Slope.  *See* AR4D012937. Vacating the 4(d) rule will weaken those relationships and weaken the conservation efforts.

3

DATED this 18th day of October, 2010.

/s/ Ryan P. Steen
Jeffrey W. Leppo (D.C. Bar No. 493482)
Ryan P. Steen (Admitted *Pro Hac Vice*)
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, Washington  98101
Telephone:  (206) 386-7641
Facsimile:  (206) 386-7500
jwleppo@stoel.com
rpsteen@stoel.com

*Attorneys for Defendant-Intervenor*
*Alaska Oil and Gas Association*

/s/ Margaret P. Strand
Margaret P. Strand (D.C. Bar No. 936419)
John F. Cooney (D.C. Bar No. 936336)
David L. Feinberg (D.C. Bar No. 982635)
VENABLE LLP
575 7th Street, N.W.
Washington, D.C.  20004
Telephone:  (202) 344-4699
Facsimile:  (202) 344-8300
mnstrand@venable.com
jfcooney@venable.com

/s/ Kevin M. Cuddy
Jeffrey M. Feldman
Kevin M. Cuddy
FELDMAN ORLANSKY & SANDERS
500 L Street, Suite 400
Anchorage, Alaska  99501
Telephone:  (907) 272-3538
Feldman@frozenlaw.com
cuddy@frozenlaw.com

*Attorneys for Defendant-Intervenor*
*Arctic Slope Regional Corporation*

4

5

## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2010, I electronically filed the foregoing *Defendant-Intervenors Alaska Oil and Gas Association's and Arctic Slope Regional Corporation's Supplemental Memorandum Regarding Issues Raised in Court's October 14, 2010 Minute Order* with the Clerk of the Court for the United States District Court – District of Columbia by using the CM/ECF system.  Participants in this case No. 1:08-mc-00764 (EGS) who are registered CM/ECF users will be served by the CM/ECF system.

/s/ Ryan P. Steen