# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**IN RE POLAR BEAR ENDANGERED SPECIES ACT LISTING AND § 4(d) RULE LITIGATION**

**Misc. Action No. 08-0764 (EGS)**

**MDL Docket No. 1993**

**This Document Relates To These Listing Rule Cases:**

*State of Alaska v. Salazar, et al.*, No. 1:08-cv-1352;
*Safari Club Int'l, et al. v. Salazar, et al.*, No. 1:08-cv-1550;
*California Cattlemen's Ass'n, et al. v. Salazar, et al.*, No. 1:08-cv-1689;
*Center for Biological Diversity, et al., v. Salazar, et al.*, No. 1:08-cv-2113;
*Conservation Force, et al. v. Salazar, et al.*, No. 1:09-cv-245

**PLAINTIFFS STATE OF ALASKA; SAFARI CLUB INTERNATIONAL, ET AL.; CONSERVATION FORCE, ET AL.; AND CALIFORNIA CATTLEMEN'S ASSOCIATION, ET AL.'S SUPPLEMENTAL MEMORANDUM RESPONDING TO COURT'S OCTOBER 20, 2010 <u>MINUTE ORDER REGARDING NOTICE AND COMMENT RULEMAKING</u>**

Plaintiffs Alaska; Safari Club International, et al.; Conservation Force, et al.; and California Cattlemen's Association, et al. (hereafter "Joint Plaintiffs") submit this supplemental memorandum pursuant to the Court's October 20, 2010 minute order.

## Introduction

The Court's limited remand of the polar bear Final Rule to the U.S. Fish and Wildlife Service ("Service") for an explanation of the Service's interpretation of the phrase "in danger of extinction" in the statutory definition of an "endangered species" would not require additional notice and comment rulemaking for at least the following reasons:

I.     The Service has already conducted extensive public comment rulemaking on the listing decision and the limited remand would be for the explanation or explication of one part of that rulemaking, not to reopen the entire rulemaking. The public has already had an opportunity to comment on whether the polar bear is a threatened or endangered species and was on notice of how those terms were being applied in the rulemaking.

II.    Unlike in the Western Great Lakes wolf case, *HSUS v. Kempthorne,* 579 F. Supp. 2d 7, 21 (D.D.C. 2008), presumably the Court will not be vacating the polar bear listing rule (*see* Transcript of Oct. 20, 2010 Hearing ("Tr.") (attached as Exhibit 1) at p. 13, L. 15-16).  Therefore, the cases requiring an agency to conduct a new rulemaking following vacatur and remand of a rule are inapplicable here.

III.   The legal analysis that the Service will explain or conduct on the limited remand under *Chevron* Steps 1 and 2 is akin to an interpretive rule under the Administrative Procedure Act ("APA"), which does not require notice and comment rulemaking.

IV.  ESA Section 4(h)(2), referenced by CBD at the October 20, 2010 hearing (*see* Tr. (Ex. 1) at p. 61, L. 8 - p. 62, L. 14), provides an opportunity for public notice and comment on the Service's establishment of "guidelines" related to the "criteria for making the findings required under [Section 4(b)(3)] with respect to petitions [for listings]," 16 U.S.C. § 1533(h)(2).  Read in context, that provision is inapplicable here.  The Court has proposed a limited remand on an interpretive legal issue in a single discrete listing rulemaking.  The listing rulemaking itself was already conducted pursuant to notice-and-comment procedures.  This is not the Service's establishment of "guidelines" for listing petition findings under Section 4(a)(2).

Thus, the Court was correct in its initial conclusion during the Hearing that this limited remand would not require further notice and comment rulemaking.  (Tr. (Ex. 1) at p. 54, L. 11 - p. 55, L. 13.)

## Argument

I.  **The Service Has Already Conducted Extensive Notice And Comment Rulemaking And A Limited Remand Would Be A Continuation Of That Proceeding.**

The polar bear Listing Rule followed extensive public notice and comment.  (Tr. (Ex. 1) at p. 34, L. 3-4 (FWS Counsel:  "[there were] over a million comments on the original rule.").) The public had an opportunity to comment on the legal and factual basis for the proposed rule to list the polar bear, including on such key terms as the application of the phrase "in danger of extinction" in the definition of an "endangered species," and the definition of a "threatened species."  (*See, e.g.*, ARL124979-82 (comments of State of Alaska on elements of and application of "threatened" definition); ARL052996 (proposed listing rule noting "endangered" and "threatened" definitions; stating "we do not believe the species is presently in danger of extinction throughout all or a significant portion of its range").)

The meaning of the definition of an endangered species, and specifically the phrase "in danger of extinction," was central to the polar bear listing for two reasons:  (1) parties were free to argue in comments that the Service should list the polar bear as endangered instead of threatened (as Plaintiffs Center for Biological Diversity *et al.* did); and (2) the definition, and application of the definition, for an endangered species is incorporated into the definition of a threatened species, 16 U.S.C. § 1532(20) (threatened species is one "likely to become an endangered species within the foreseeable future").

Presumably the Service has already taken account of comments, if any, that addressed the proper meaning of an endangered species and the term "in danger of extinction," whether under a *Chevron* Step 1—plain meaning—analysis, or a *Chevron* Step 2—agency interpretation of ambiguous statute—analysis.  (*See, e.g.*, ARL117242 (Final Rule addressing comment that species is "not in imminent danger of extinction"); ARL117301 (Service Final Rule finding that "there are no significant portions of the range in which the species is currently in danger of extinction").)

The Service need not afford notice and comment on an issue, particularly a legal issue, on which the public already has had an opportunity to comment.[1]  Even if the Service were required

---

[1] Another notice and comment principle support this conclusion.  Changes in agency position from a proposed rule to a "final rule" do not require another round of notice-and-comment as long as the final rule is the "logical outgrowth" of the proposed rule.  The important thing is that the purpose of notice-and-comment has been adequately served, and that will be the case as long as any new round of notice-and-comment would not provide commenters with their first opportunity to offer new and different criticisms that the agency might find convincing.  *Ass'n of Battery Recyclers, Inc. v. EPA*, 208 F.3d 1047, 1058-59 (D.C. Cir. 2000).  Here, (1) any clarification of the Service's legal interpretation of "in danger of extinction" is a logical outgrowth of the proposed listing determination, (2) the purpose of notice-and-comment has been adequately served, and (3) there is no likelihood that the Service might find further

(continued)

to revisit its assessment of the species' status in light of an interpretation of the meaning of "in danger of extinction" that differs from its current view of "imminent" or "current" danger of extinction, the rulemaking record—including the public comments—would provide the needed record.  *See Mobil Oil Corp. v. U.S. Envtl. Prot. Agency*, 35 F.3d 579, 584-85 (D.C. Cir. 1994) ("If the original record is still fresh, a new round of notice and comment might be unnecessary.").[2]

In the Florida black bear case, the Court remanded a decision not to list the species as threatened for further explanation "why the black bear did not warrant protection due to the inadequacy of existing regulatory mechanisms." *Defenders of Wildlife v. Kempthorne,* 535 F. Supp. 2d 121, 124 (D.D.C. 2008).  Specifically, the Court wanted to know whether the regulatory mechanisms cited in the decision not to list "were in effect at the time of the decision, or whether they were instead future or speculative regulatory mechanisms." *Id.*  The Court's remand directed the Service to provide further analysis and explanation, and a new decision if the analysis changed the Service's conclusion, based on the existing record. *Id.* at 126 and n.2 (citing *Am. Wildlands v. Norton,* 193 F. Supp. 2d 244, 257 (D.D.C. 2002) (a remand for the limited purpose of further explanation of unclear grounds for a decision is "well within the

---

(footnote, cont'd)
comments on the relevant phrase "convincing" so as to upset a decades-old approach to how that phrase has been interpreted.

[2] While the Service must fairly consider the issue on remand, it practically may be unlikely that during a *Chevron* Step 2 analysis the Service would significantly alter the interpretation of the meaning of "in danger of extinction" that it has held for 30-35 years.  Instead, the Service likely will explain explicitly the reasoning implicit in its longstanding interpretation.  (*See* Tr. (Ex. 1) at p. 34, L. 19  - p. 35, L. 4 (FWS Counsel:  "If [the Service] applied the same interpretation—if it read the law the way it's been reading it—well, your Honor, [the Service has] been reading the law this way for 30 years, but if they come back and say, yeah, we're going to keep reading it the way we've been reading it for 35 years, which is presumably what they're going to do, . . . . it's just further explanation for your Honor on this Chevron 2 step.").)

powers of the court.")).  As the agency only considered regulatory mechanisms existing at the

time of its original decision, and the public had already commented on that issue, the agency did

not provide another public notice and comment opportunity and the Court did not require one.

*See* Endangered and Threatened Wildlife and Plants; Reexamination of Regulatory Mechanisms

in Relation to the 1998 Florida Black Bear Petition Finding, 69 Fed. Reg. 2100-2108 (Jan. 14,

2004) (no mention of public comments); 535 F. Supp. 2d at 126 ("the 1998 Decision was

remanded for clarification as to whether the regulatory mechanisms that were in effect in 1998

adequately protected the black bear").  For similar reasons, public notice or comment is not

required for the Court's limited remand.

## II.     Presuming No Vacatur Of The Listing Rule, The Service Is Not Starting A New Proceeding That Might Require Notice And Comment Rulemaking.

Unlike the Western Great Lakes wolf case, here the Court initially has indicated that it

will not vacate the polar bear Final Rule.  (Tr. (Ex. 1) at p. 13, L. 15-16 ("[I]t would be—keep

the rule in place.  I would not vacate the rule.").)  In contrast, in *HSUS,* Judge Friedman vacated

the rule delisting the Western Great Lakes Distinct Population Segment of wolves.  *HSUS v.

Kempthorne,* 579 F. Supp. 2d 7, 21 (D.D.C. 2008).  The case law suggests that once a court

vacates an agency rule, then on remand, the agency must provide additional or new public notice

and comment.  *See, e.g., AFL-CIO v. Chao,* 496 F. Supp. 2d 76, 85 (D.D.C. 2007) (court

reversed agency rule issued on remand without notice and comment after court had vacated and

remanded prior rule in earlier case).  The *Chao* court explained that if the court takes a rule "off

the books and reinstates the prior regulatory regime," then the agency must follow notice and

comment rulemaking.  *Id.* (citing *Mobil Oil Corp.,* 35 F.3d at 584).

The Court made clear in the October 20 Hearing that its intent was not to vacate the

Listing Rule, or force the Service to accept and analyze any new data about the status of the

polar bear today, or make a new determination.  (*See, e.g.*, Tr. (Ex. 1) at p. 10, L. 18-20 (Court: "[T]he better part of wisdom is for the Court to remand for an adequate explanation without vacating the agency action"); *accord id*. at p. 13, L. 21-23 ("[i]t would be a remand for further explication . . . without vacating the agency action"); *see also id*. at p. 61, L. 19-21 (Court:  "I would not send it back for another determination.  The Court would remand for further explanation."); *id*. at p. 62, L. 15  - p. 63, L. 22.)  Because the Court is not vacating the Listing Rule, the APA does not require the Service to commence a new rulemaking.

### III.    The Service's *Chevron* Explanation Concerning The Interpretation Of "In Danger Of Extinction" In The Definition Of An Endangered Species Is Akin To An Interpretive Rule, Which Does Not Require Notice And Comment Rulemaking.

The Court's remand, as indicated at the Hearing, would involve the Service providing a legal analysis or explanation of how its interpretation of the phrase "in danger of extinction" in the statutory definition of an endangered species—i.e. in imminent or current danger of extinction—is a permissible construction of the statute (and possibly an explanation of how its interpretation is compelled by the plain meaning of the statute).  *See Chevron USA, Inc. v. NRDC,* 467 U.S. 837, 842-43 (1984).  As Judge Freidman phrased it, "[w]hen an agency wrongly concludes that its interpretation is mandated by the statute at issue, a court will not impose its own interpretation of the statute."  Rather, a court will allow the agency to " 'interpret the statutory language anew.' "  *HSUS,* 579 F. Supp. 2d at 13 (quoting *Peter Pan Bus Lines, Inc. v. Fed. Motor Carrier Safety Admin.,* 471 F.3d 1350, 1354 (D.C. Cir. 2006)).  The key in these cases is that the issue on remand, in contrast to the original overall issue of the rulemaking proceeding, is limited to the agency's interpretation of the statute at issue.

Under the APA, certain agency actions are not subject to notice and comment rulemaking, including "interpretive rules."  5 U.S.C. § 553(b)(3)(B).  The D.C. Circuit has ruled

that "a statutory interpretation that is 'employed in the course of an adjudication constitutes an

"interpretive" statement and as such is exempt from the APA notice and comment requirements,'

nonetheless, under *Chevron* the Secretary must 'offer a reasoned analysis' of her statutory

reading." *Sec'y of Labor v. Nat'l Cement Co. of Cal., Inc.,* 494 F.3d 1066, 1076 (D.C. Cir.

2007).  Although formal adjudication and informal rulemaking are different, both are covered by

the APA—*compare* 5 U.S.C. § 553 (rulemaking) *with id.* § 554 (adjudication).  Therefore, the

reasoning of the *National Cement* court would apply equally to a statutory interpretation

employed in the course of a remand of a prior rulemaking.

 The D.C. Circuit's finding in a case that an agency's action was an interpretive rule, and

not a legislative or substantive rule requiring notice and comment rulemaking, sheds light on this

issue.  The court explained:

> In light of these general principles, we find that the May 30 rule
> constitutes an interpretative rule.  We note, to begin with, that the
> agency regarded its rule as interpretative. *See* 45 Fed. Reg. 36,396
> (May 30, 1980) ("*Action:* Interpretive Rule").  Moreover, EPA's
> entire justification for the rule is comprised of **reasoned statutory
> interpretation, with reference to the language, purpose and
> legislative history of section 207(c)**. *See id.* at 36397-98. Indeed,
> the language of the rule itself indicates its interpretative nature.
> *See* 40 C.F.R. Subpart S App. A ("The purpose of this rule is to set
> forth EPA's interpretation . . . under section 207(c)(1) of the Clean
> Air Act. . . .")  Finally, and most importantly, the rule did not
> create any new rights or duties; instead, **it simply restated the
> consistent practice of the agency** in conducting recalls pursuant
> to section 207(c).

*General Motors, Inc. v. Ruckelhaus,* 742 F.2d 1561, 1565 (D.C. Cir. 1982) (emphasis added).

 The first bolded section of this passage appears to mirror the approach the agency must

take under *Chevron* Steps 1 and 2.  Under Step 1, the agency and court use "all the 'traditional

tools of statutory construction,' including textual analysis, structural analysis, and (when

appropriate) legislative history."  *HSUS,* 579 F. Supp. 2d at 12 (citing *Chevron,* 467 U.S. at 843

n.9).  Under Step 2, "[r]easonableness in this context means … the compatibility of the agency's interpretation with the policy goals … or objectives of Congress."  *Id.* at 13.  In addition, as discussed above, the Service's decision on remand likely will confirm, with reasoned explanation, the Service's longstanding understanding and interpretation of the meaning of "in danger of extinction" in the definition of an "endangered species."

Other cases addressing "interpretive rules" confirm the similarities with what the Service will be tasked on remand.[3]  The D.C. Circuit explained that "[u]ltimately, an interpretive statement simply indicates an agency's reading of a statute or a rule.  It does not intend to create new rights or duties, but only reminds affected parties of existing duties."  *Orengo Caraballo v. Reich*, 11 F.3d 186, 195 (D.C. Cir. 1993) (citation and internal quotations omitted).  In another case, the D.C. Circuit explained "[a] rule that clarifies a statutory term is the classic example of an interpretative rule," and explained the holding of another case as "interpretative rule 'serves an advisory function explaining the meaning given by the agency to a particular word or phrase in a statute or rule it administers'."  *Nat'l Family Planning and Reprod. Health Ass'n v. Sullivan,* 979 F.2d 227, 236 (D.C. Cir. 1992) (citations omitted).

## IV.    ESA Section 4(h)(2) Is Inapplicable To The Service's Obligations On Remand.

CBD suggested at the Hearing that ESA Section 4(h)(2), 16 U.S.C. § 1533(h)(2), would call for an opportunity for public notice and comment on the Service's explanation of its interpretation of the statutory phrase "in danger of extinction" in the definition of "endangered."

---

[3] "The distinction between rules or statements which are subject to the notice and comment requirements of § 553 and rules or statements which are exempt from those procedures is notoriously 'hazy.' "  *Orengo Caraballo v. Reich*, 11 F.3d 186, 194 (D.C. Cir. 1993) (quoting *Am. Hosp. Ass'n v. Bowen,* 834 F.2d 1037, 1045 (D.C. Cir. 1987)).  Nonetheless, these cases can be instructive.

But read in context, Section 4(h)(2) does not require additional notice and comment in these circumstances.

Under Section 4(h)(2), Congress directed the Service to establish "agency guidelines" for, among other things, "criteria for making the findings required under such subsection [4(b)(3)] with respect to petitions [for listing a species as threatened or endangered]." 16 U.S.C. § 1533(h)(2). The referenced subsection is that part of ESA Section 4 addressing the procedures for the Service's response to the petition of an interested person "to add a species to, or remove a species from, either of the lists [of threatened or endangered species] published under subsection (c) of this section [4]." *Id.* § 1533(b)(3)(A). The Service did develop such guidelines for petition finding criteria, developed them pursuant to public notice and comment procedures, and promulgated those guidelines as regulations at 50 C.F.R. § 424.14. *See, e.g.*, 50 C.F.R. § 424.14(b) (describing factors for Service to consider in making a finding on a petition to list, delist, or reclassify a species).

Thus, the provisions of Section 4(h)(2) are not implicated by the Court's proposed remand here. The Service has (i) already separately established and published the guidelines for criteria for listing petitions contemplated by Section 4(h)(2); (ii) the Service's additional legal explanation of its interpretation of the statutory phrase "in danger of extinction" on remand is not the general establishment of a guideline for the criteria for making the findings on listing petitions, but is instead the agency's explanation of how it interpreted the statutory phrase to make its finding on the specific polar bear listing petition applying the criteria identified in 50 C.F.R. § 424.14(b); and (iii) the Service's legal interpretation in this specific rulemaking context, and specifically on limited remand from the Court here for further explanation of the

determination already made on the petition, is not the type of agency action normally requiring additional notice and comment, *see supra* at 2-8.

CBD also suggested that in order for the *Chevron* Step 2 analysis to apply following the limited remand, the agency's interpretation of the statutory phrase must have been made as the result of notice-and-comment rulemaking or formal adjudication. (*See.* Tr. (Ex. 1) at p. 62, L. 6-8 (CBD counsel: "I don't think you can have *Chevron* deference attach without notice-and-comment").) But as the Supreme Court indicated in *U.S. v. Mead Corp.*, 533 U.S. 218, 231 (2001), whether an interpretation was the product of a formal notice-and-comment rulemaking proceeding is not dispositive of the applicability of *Chevron* deference. *Id.* ("[W]e have sometimes found reasons for *Chevron* deference when no such administrative formality was required and none was afforded. . . ."). Thus, the Court's application of the *Chevron* standard to provide the limited remand to the Service here does not compel that the Service apply a notice-and-comment process on remand. This is so because the limited remand is part of the already undertaken notice-and-comment proceeding that led to the polar bear listing decision. In any event, as the Supreme Court observed in *Mead*, *Chevron* does not compel that all agency statutory interpretations to which *Chevron* deference may apply be made in notice-and-comment proceedings. *Id.*

## Conclusion

For the above reasons, the Service's explanation on remand of its interpretation of the phrase "in danger of extinction" in the statutory definition of "endangered," as applied to the polar bear Final Rule, need not be subject to additional notice and comment under the circumstances of this case.

DATED this 27th day of October, 2010.

Respectfully submitted,

**Counsel for Safari Club International and Safari Club International Foundation**

/s/ Douglas S. Burdin
Douglas S. Burdin (DC Bar No. 434107)
Safari Club International
501 2nd Street N.E.
Washington, DC  20002
Telephone:  (202) 543-8733
Facsimile:  (202) 543-1205
Email:  dburdin@safariclub.org

**Counsel for the State of Alaska**

/s/ Murray D. Feldman
Murray D. Feldman
Holland & Hart LLP
P.O. Box 2527
Boise, Idaho  83701-2527
Telephone:  (208) 342-5000
Facsimile:  (208) 343-8869
Email:  mfeldman@hollandhart.com

Craig D. Galli (DC Bar No. 414395)
Holland & Hart LLP
60 E. South Temple, Suite 2000
Salt Lake City, UT  84111-1031
Telephone:  (801) 799-5800
Facsimile:  (801) 364-9124
Email:  cgalli@hollandhart.com

Bradley E. Meyen
Assistant Attorney General
State of Alaska
Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, AK  99501
Telephone:  (907) 269-5232
Facsimile:  (907) 279-2834
Email:  brad.meyen@alaska.gov

**Counsel for Conservation Force et al.**

/s/ John J. Jackson III
John J. Jackson III
Conservation Force
3240 S I-10 Road W., Suite 200
Metairie, LA  70001
Telephone:  (504) 837-1233
Facsimile:  (504) 837-1145
Email:  jjw-no@att.net

**Counsel for California Cattlemen's Association
and the Congress for Racial Equality**

/s/ M. Reed Hopper
M. Reed Hopper
Theodore Hadzi-Antich (DC Bar No. 251967)
Damien S. Schiff
Pacific Legal Foundation
3900 Lennane Dr., Suite 200
Sacramento, CA  95834
Telephone:  (916) 419-7111
Facsimile:  (916) 419-7747
Email: mrh@pacificlegal.org
        tha@pacificlegal.org
        dms@pacificlegal.org

4944696_4.DOC