# UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **IN RE POLAR BEAR ENDANGERED SPECIES ACT LISTING AND § 4(d) RULE LITIGATION** | **Misc. Action No. 08-0764 (EGS)** <br> **MDL Docket No. 1993** |
| **This Document Relates To:** | |
| **No. 1:08-cv-2113,** *Center for Biological Diversity, et al. v. Kempthorne, et al.* | |

## SUPPLEMENTAL BRIEF OF CENTER FOR BIOLOGICAL DIVERSITY, NATURAL RESOURCES DEFENSE COUNCIL AND GREENPEACE RE THE NEED FOR NOTICE AND COMMENT FOLLOWING A REMAND OF THE LISTING RULE

The Center for Biological Diversity, Natural Resources Defense Council, and Greenpeace, Inc., ("CBD et al.") provide the following in response to the Court's October 20, 2010 Order requesting briefing on the following question:

> Is the agency required to follow "notice and comment" rule-making procedures on remand if the court were to remand to the agency for the limited purpose of providing additional explanation for its interpretation of the phrase "in danger of extinction" in the polar bear Listing Rule?

October 20, 2010 Order (no Dkt. #).

CBD et al. believe that if the Listing Rule is remanded for further explanation of the phrase "in danger of extinction," for the Secretary's interpretation to warrant deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984), the Secretary would almost certainly have to subject the interpretation to notice and comment. *See United States v. Mead Corp.,* 533 U.S. 218, 226-27 (2001). Moreover, the Endangered Species Act ("ESA") itself explicitly requires that all guidelines and criteria promulgated by the Secretary related to listing determinations also be subject to notice and comment. 16 U.S.C. § 1533(h).

In short, if the Secretary's interpretation of the phrase "in danger of extinction" is to have the "force of law" required for *Chevron* deference under *Mead*, then it would clearly also be a guideline or criteria triggering the notice and comment provisions of Section 4(h) of the ESA. As such, if the Court is still inclined to remand the Listing Rule to the Secretary for further interpretation of the phrase "in danger of extinction," for the remand to have utility beyond providing the Secretary an opportunity to articulate a post-hoc explanation for decisions already made, the remand must be structured so as to allow publication of, and public comment on, the Secretary's proposed interpretation.

## A.     The Reasons for and Potential Scope of Remand

CBD et al.'s primary claim in this case is that the Secretary of the Interior failed to rely solely upon the best available science when determining that the polar bear warranted listing as "threatened" rather than "endangered." *See* CBD Opening Br. Dkt #125 at 23-45, CBD Reply

CBD et al's Supplemental Brief Re                    Misc. Action No. 08-0764 (EGS)
Notice and Comment

Br., Dkt. #172 at 9-33. Evaluating this claim involves at least two components: (1) did the Secretary actually *use* the best available science when making his decision, and (2) did the Secretary *apply* the correct legal standard when determining the polar bear was not "endangered." While the first question is record-dependant, the answer to the second question turns on the definitions of "threatened species" and "endangered species" under the ESA.

A species is "endangered" if it "is *in danger of extinction* throughout all or a significant portion of its range." 16 U.S.C. § 1532(6) (emphasis added). A species is "threatened" if it "is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20). It his briefs (but not in the polar bear Listing Rule itself) the Secretary argues that for a species to merit listing as "endangered," the plain language of the ESA – namely the phrase "in danger of extinction" – requires that extinction risk to a species be "imminent." *See, e.g.*, FWS Response Br., Dkt # 138 at 3 ("The Service's 'threatened' determination for the polar bear conformed precisely to the plain language of ESA and Congressional intent…"); *id.* at 50 ("the phrase 'in danger of' connotes a substantial and immediate risk of extinction, whereas the terms 'likely' and 'foreseeable future' connote a risk that is comparatively lower or less imminent."). CBD et al. dispute that the plain language of the ESA requires "imminent" extinction before a species may be listed as "endangered," and that, in any event, the Secretary's determination that the polar bear was not "in danger of extinction" in all or at least a significant portion of its range is not supported by the record. *See, e.g.* CBD Reply Br., Dkt #172 at 5-33.[1]

At oral argument the Court indicated that it did not accept the Secretary's contention that

---

[1] CBD et al. assert that, if anything, the plain language of the definitions of "threatened" and "endangered," when read together, compels a finding that the polar bear qualifies for listing as "endangered." As conceded by the Secretary in his briefing, "[t]he ESA defines a threatened species as one that is likely to become in danger of extinction – not extinct – within the foreseeable future." FWS Response Br., Dkt. #138 at 118. Given the polar bear has a greater than 80% chance of extinction in at least a significant portion of its range, it is far more *likely* to be an *extinct* species than an "endangered" species within the foreseeable future. As such, the bear cannot be merely "threatened" – i.e. it is in fact not "*likely* to become an endangered species;" rather it is likely to become an extinct species. It must therefore be "endangered." *See* CBD Opening Br., Dkt # 125 at 22-23; CBD Reply Br., Dkt #172 at 5-8.

CBD et al's Supplemental Brief Re                     Misc. Action No. 08-0764 (EGS)
Notice and Comment

the plain meaning of the ESA requires a species' extinction to be "imminent" before it could be listed as "endangered." However, the Court indicated that it believed that the phrase "in danger of extinction" was ambiguous and that it was inclined to remand the Listing Rule to the Secretary for the limited purpose of clarifying his interpretation of the phrase "in danger of extinction." Citing *Humane Soc'y of the United States v. Kempthorne*, 579 F. Supp. 2d 7 (D.D.C. 2008); *Peter Pan Bus Lines, Inc. v. Fed. Motor Carrier Safety Admin.,* 471 F.3d 1350, 1354 (D.C. Cir. 2006); *Sec'y of Labor, Mine Safety & Health Admin. v. Nat'l Cement Co. of Cal., Inc.,* 494 F.3d 1066, 1075 (D.C. Cir. 2007).

Under *Humane Society* and its underlying Circuit cases, when an agency erroneously believes the plain language of a statute compels a certain result, since the agency never gets beyond *Chevron* step one, there is no *Chevron* step two decision to which a court can defer:

> *Chevron* step 2 deference is reserved for those instances when an agency recognizes that the Congress's intent is not plain from the statute's face and proceeds to grapple with that ambiguity. On the other hand, deference to an agency's interpretation of a statute is not appropriate when the agency wrongly believes that its interpretation is compelled by Congress. . . .

*Humane Society*, 579 F. Supp. 2d at 20 (internal quotations and citations omitted).

In *Humane Society*, as here, the Secretary asserted that the plain meaning of a term in the ESA was clear from the statute, foreclosing plaintiffs' arguments to the contrary. The court rejected the Secretary's assertion and found the term at issue to be ambiguous. Moreover, because the Secretary had never acknowledged the ambiguity of the term, the agency had never carried out a *Chevron* step two analysis to which the court could defer:

> Because the ESA is ambiguous with respect to the issue at hand, the Court is required to defer to any permissible agency construction under *Chevron* step two. In this case, however, there is no permissible construction to which the Court can defer. The Final Rule and FWS' papers rely exclusively on a "plain meaning" reading of the ESA which the Court already has rejected.

*Humane Society*, 579 F. Supp. 2d at 19. Consequently, the court remanded the decision to the Secretary to interpret the ambiguous term consistent with statutory purposes. *Id.* at 20-21.

While this Court could follow the path articulated in *Humane Society* in remanding the

3

rule to the Secretary to interpret the phrase "in danger of extinction," two critical points bear noting. First, unlike the dispute in *Humane Society*, where the agency had articulated its position in the final listing decision challenged, for the polar bear, the Secretary's assertion that the plain meaning of the ESA requires "imminent" risk of extinction appears for the first time in the agency's briefs. It is not articulated anywhere in the polar bear Listing Rule itself. *Cf. Humane Soc'y*, 579 F. Supp. 2d at 19 ("*The Final Rule* and FWS' papers rely exclusively on a 'plain meaning' reading of the ESA") (emphasis added). Thus, the *Humane Society* line of cases seems inapplicable, because in this instance the Court need not consider upholding the polar bear Listing Rule on a basis not articulated in the rule itself. *See, e.g. Gerber v. Norton*, 294 F.3d 173, 184 (D.C. Cir. 2002) ("We do not generally give credence to such post hoc rationalizations, but rather consider only the regulatory rationale actually offered by the agency during the development of the regulation.")(citations omitted); *see also Peter Pan Bus Lines,* 471 F.3d at 1354 n.3 ("[I]t is the expertise of the agency, not its lawyers, that must be brought to bear on this issue in the first instance.") (quotations omitted).

Second, assuming that a remand under *Humane Society* is appropriate, the whole point of such a remand is for the agency to develop an interpretation of the ambiguous term that would be subject to *Chevron* step two deference. *See, e.g.*, *Sec'y of Labor*, 494 F.3d at 1077 (remanding "to obtain from the Secretary a *Chevron* step 2 interpretation of [the ambiguous statutory provision], which addresses the problematic issues raised by [respondents]"). Consequently, if the Secretary on remand develops its interpretation in a manner *not* warranting *Chevron* deference, the very purpose of the limited remand would be undermined. As the Supreme Court has clarified, to be entitled to *Chevron* deference, an agency interpretation must have the "force of law." *Mead*, 533 U.S. 226-27. In this case, as demonstrated below, for the Secretary's interpretation of "in danger of extinction" to have the requisite force of law to merit *Chevron* deference, the Secretary must subject it to notice and comment rulemaking.[2]

---

[2] Separate from the question of whether the Secretary's interpretation following remand should merit *Chevron* deference, is the question of whether a new listing decision on remand *applying* that interpretation would also require public comment. General Administrative Procedure Act

**B.      Chevron Deference Applies Only to Agency Decision that Have the Force of Law**

Pursuant to Supreme Court precedent, courts afford varying degrees of deference to agency decisions depending on the circumstances. *Mead*, 533 U.S. at 228. However, *Chevron* deference is only appropriate when agency decisions have the "force of law:"

> [A]dministrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the *force of law*, and that the agency interpretation claiming deference was promulgated in the exercise of that authority.

Id. at 236-27 (emphasis added).

The surest way to demonstrate that an agency decision has the appropriate force of law is through notice and comment rulemaking:

> We have recognized a very good indicator of delegation meriting *Chevron* treatment in express congressional authorizations to engage in the process of rulemaking . . . that produces regulations or rulings for which deference is claimed . . . Thus, the overwhelming number of our cases applying *Chevron* deference have reviewed the fruits of notice-and-comment rulemaking . . .

*Id.* at 230-31.

Since *Chevron* deference is generally only appropriate for notice and comment rulemakings, less formal agency "interpretations contained in policy statements, agency manuals, and enforcement guidelines . . . are beyond the *Chevron* pale." *Id.* at 234, citing *Christensen v. Harris County*, 529 U.S. 576, 587 (2000). In *Christensen*, the Supreme Court denied *Chevron* deference for an agency opinion letter because "[i]nterpretations such as those in . . . policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law – do not warrant *Chevron*-style deference." 529 U.S. at 587. The Court noted such actions are "not subject to the rigors of the Administrative Procedure Act, including notice and comment" and are therefore entitled to less deference. *Id.*, citing *Reno v. Koray*, 515 U.S. 50 (U.S. 1995); *see also*

---

principles of rulemaking would seem to dictate that such comment would be required. S*ee, e.g.*, 74 Fed. Reg. 47483 (Sept. 16, 2009) (withdrawing delisting rule and reinstating ESA protections for wolf after the Secretary improperly responded to remand decision in *Humane Society* by issuing new final rule without any public comment).

CBD et al's Supplemental Brief Re                                    Misc. Action No. 08-0764 (EGS)
Notice and Comment

*Coeur Alaska, Inc. v. Southeast Alaska Conservation Council*, 129 S. Ct. 2458, 2473 (2009) (finding internal agency memorandum was "not subject to sufficiently formal procedures to merit *Chevron* deference"); *cf. Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 172 (2007) (in response to argument that regulations is merely "interpretive," noting "interpretive rules . . . enjoy no *Chevron* status as a class," citing *Mead*).[3]

Notwithstanding the rule that *Chevron* deference generally requires notice and comment rulemaking, the Supreme Court has found narrow circumstances in which *Chevron* deference may be appropriate, even when full notice and comment rulemaking procedures have not been followed. *Mead*, 533 U.S. at 230-31 ("as significant as notice-and-comment is in pointing to *Chevron* authority, the want of that procedure here does not decide the case, for we have sometimes found reasons for *Chevron* deference even when no such administrative formality was required and none was afforded."). The Court in *Mead* acknowledges that – in cases where an agency does not have express notice and comment rulemaking authority – a statute may nonetheless "implicit[ly]" provide authority to issue "rules carrying the force of law" by authorizing an agency to act in other ways. *Id.* at 228, 232.[4]

Here, there is no question the Secretary *has* the authority to "promulgate such regulations as may be appropriate to enforce" the ESA, and in fact is required to promulgate any new

---

[3] *See also Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 487-88 (2004) (citing *Christensen* and finding the agency's interpretation "presented in internal guidance memoranda, . . . does not qualify for the dispositive force described in *Chevron*"); *Power v. Barnhart*, 292 F.3d 781, 785-86 (D.C. Cir. 2002) (noting agency's concession that *Chevron* does not apply to agency's Hearings Manual); *Am. Fed'n of Gov't Employees v. Veneman*, 284 F.3d 125, 129 (D.C. Cir. 2002) (holding that model meat inspection program had "no more status than opinion letters, policy statements, agency manuals, and enforcement guidelines, all of which are undeserving of *Chevron* deference"); *Loggerhead Turtle v. Cnty. Council of Volusia Cnty., Fla.*, 148 F.3d 1231, 1243, 1243 n.11 (11th Cir. 1998) (holding ESA handbook to be "informal publication" not binding on the court).

[4] For example, in *Thompson*, the D.C. Circuit accorded *Chevron* deference even though the agency did not do notice and comment rulemaking because the statute "manifested its intent that the Secretary's determinations, based on interpretation of the relevant statutory provisions, should have the force of law" through other mandates. *Pharm. Research & Mfrs. of Am. v. Thompson*, 362 F.3d 817, 821 (D.C. Cir. 2004).

CBD et al's Supplemental Brief Re                    Misc. Action No. 08-0764 (EGS)
Notice and Comment

"guidelines" or "criteria for making the findings . . . with respect to [listing] petitions," pursuant to notice and comment rulemaking, as described in detail below. 16 U.S.C. §§ 1540(f); 1533(h)(2). If the Secretary promulgates "regulations" "in exercise of [its ESA] authority," including complying with notice and comment procedures required by law, *Chevron* deference is unquestionably appropriate. *Mead*, 533 U.S. at 231 (citing seventeen Supreme Court cases applying *Chevron* deference to notice and comment rulemakings).[5] However, because the ESA in no way delegates the Secretary the authority to issue policy statements, manuals, or memoranda "with the force of law," any interpretation of "in danger of extinction" that fails to comply with the ESA's rulemaking authority cannot be afforded *Chevron* deference.[6] *Mead*, at 236-27.

In *Public Citizen v. HHS*, the D.C. Circuit addressed issues similar to those present here. 332 F.3d 654 at 660 (D.C. Cir. 2003). While noting that "*Chevron* deference is not necessarily limited to regulations that are the product of notice-and-comment rulemaking," the court first noted the Supreme Court's long standing holding that "agency manuals" and other informal policy statements do not receive *Chevron* deference. *Id.* (citing *Mead*, 533 U.S. at 234 and *Christensen*, 529 U.S. at 587). Further, the court found that "while the [relevant] statute expressly authorizes the Secretary to promulgate 'regulations' to carry out its provisions,…it contains no mention of agency manuals," and thus no indication Congress intended *Chevron*-

---

[5] *See Northwest Ecosystem Alliance v. FWS*, 475 F.3d 1136, 1141-1142 (9th Cir. 2007) (finding Secretary's distinct population segment policy warrants *Chevron* deference because it had been subject to notice and comment pursuant to Section 4(h) of the ESA).

[6] In *Barnhart v. Walton*, the Supreme Court also found that, even absent notice and comment, "the interstitial nature of the legal question, the related expertise of the Agency, the importance of the question to administration of the statute, the complexity of that administration, and the careful consideration the Agency has given the question over a long period of time all indicate that *Chevron* provides the appropriate legal lens through which to view the legality of the Agency interpretation here at issue." 535 U.S. 212, 222 (2002). Regardless of whether these criteria are different than those required under *Mead*, they criteria are simply not met here. The Secretary has obviously not given the issue "careful consideration" "over a long period of time," given his current interpretation appears for the first time in litigation briefs.

CBD et al's Supplemental Brief Re Notice and Comment                    Misc. Action No. 08-0764 (EGS)

type deference for the less formal interpretations. *Id.*[7]

In sum, absent notice and comment rulemaking, or some other application of authority that has the force of law, any interpretation by the Secretary of the phrase "in danger of extinction" would not be subject to *Chevron* deference. Conversely, if the Secretary issues an interpretation of the phrase that *does* have the force of law, then it would squarely fall within ESA Section 4(h)'s requirement that all such interpretations be subject to notice and comment.

## C.    The ESA Itself Requires Notice and Comment

Regardless of whether notice and comment on the Secretary's interpretation of "in danger of extinction" is required for purposes of establishing *Chevron* deference, such comment is required by the ESA itself. The ESA requires the Secretary to "provide to the public notice of, and opportunity to submit written comments on, any guideline (including any amendment thereto)" relating to "(1) procedures for recording the receipt and the disposition of petitions submitted under subsection (b)(3) of this section; [and] (2) criteria for making the findings required under such subsection with respect to petitions." 16 U.S.C. § 1533(h).

The "findings required" under subsection (b)(3) are whether a petitioned species warrants listing as "threatened" or "endangered." 16 U.S.C. § 1533(b)(3). As such any legally-binding interpretation of when a species is "in danger of extinction" – i.e. "endangered" – is necessarily a "guideline" relating to "criteria" for making findings under Section 1533(b)(3). In other words, if the interpretation has the force of law necessary for *Chevron* deference, it necessarily implicates

---

[7] Instead, for these less formal agency interpretations, a court may apply the less deferential *Skidmore* standard. *Mead*, 533 U.S. at 234, citing *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). Under the *Skidmore* standard, an agency's interpretations are "'entitled to respect' . . ., but only to the extent that those interpretations have the 'power to persuade.'" *Mead*, 533 U.S. at 235. Consequently, if, in this case, the Secretary issues his interpretation of "in danger of extinction" through a letter, a guidance memorandum, interpretive rule, or some other policy statement lacking notice and comment procedure, assuming the Court affords it *any* deference as more than just a post-hoc litigation position, the Court should defer to the interpretation only to the degree the Court finds the argument "persuasive." *Id.* Of course, if the Secretary on remand produces an interpretation that is *not* worthy of *Chevron* deference, there is little point for the Court to remand the Listing Rule for the Secretary *just* for the purposes of clarifying his interpretation. Instead, the Court could simply render a decision regarding CBD et al.'s claims based on the record currently before it.

CBD et al's Supplemental Brief Re                    Misc. Action No. 08-0764 (EGS)
Notice and Comment

Section 4(h) as it would have the impact on listing decisions beyond just the polar bear. The Secretary therefore must provide public notice and comment when he interprets the phrase "in danger of extinction" on remand.

In *Northwest Ecosystem Alliance*, the court addressed a similar situation, considering whether the Secretary's "policy statement" regarding the ESA's term "distinct population segment" ("DPS") must be afforded *Chevron* deference. 475 F.3d 1136 at 1141-1142 (9th Cir. 2007). As required by ESA section 1533(h)(2), the Secretary had provided public notice and the opportunity to comment on the policy. The court held that, while policy statements are not generally afforded *Chevron* deference because they lack notice and comment, the DPS policy was entitled to *Chevron* deference because the ESA expressly delegates the Secretary authority to "develop criteria for evaluating petitions to list endangered species" *and* requires the Secretary to "provide to the public notice of, and opportunity to submit written comments on, any guideline." *Id.*

The court explained, "the formality § 1533(h) requires for policy statements is indistinguishable from notice-and-comment rulemaking under the APA," and "[t]hese procedural rigors, combined with the express congressional command to the [Secretary] to develop guidelines, distinguish the DPS Policy from garden-variety policy statements that do not enjoy *Chevron* status." *Id.* at 1142. *See also Trout Unlimited v. Lohn*, 559 F.3d 946, 954 (9th Cir. 2009) (holding that § 1533(h) required notice and comment procedures when the National Marine Fisheries Service promulgated its Hatchery Listing Policy and that the policy was entitled to *Chevron* deference because the agency had complied with § 1533(h)); *Maine v. Norton*, 257 F.Supp.2d 357, 384 (D. Me. 2003) (upholding DPS policy as subject to Chevron deference due to Section 4(h) notice and comment compliance). A policy or formal interpretation regarding the difference between "threatened" status and "endangered" status, like the DPS policy, is exactly the type of guideline contemplated by § 1533(h). It therefore *must* be subject to notice-and-comment procedures under the ESA and cannot be afforded *Chevron* deference if

such procedures are not adhered to.[8]

**D.     Conclusion**

As demonstrated above, any remand to the Secretary to explain his interpretation of "in danger of extinction" must be subject to public comment, both for purposes of being afforded *Chevron* deference and to comply with the separate ESA notice and comment requirements for listing determination guidelines. CBD et al. are acutely aware, however, that a public comment period on even a "limited remand" will take substantially more time than the Court anticipated following the October 20, 2010 hearing. Nevertheless, CBD et al. believe that such a remand could be completed within six months (two months for the Secretary to prepare a draft interpretation, two months of public comment, and two months for the Secretary respond to such comment in finalizing the interpretation).

Alternatively, given the length of time required for a limited remand, CBD et al. would suggest that the Court reconsider whether the Listing Rule should be remanded more broadly for a determination whether the polar bear warrants "endangered" listing in all or parts of its range based on other arguments raised by CBD et al. *Carlton v. Babbitt*, 900 F. Supp. 526, 534 (D.D.C. 1995) ("Since the Court is remanding to the agency for further consideration of 'other natural or manmade factors' on other grounds, the Court does not reach the issue of whether the agency's reliance on contiguity with the Canadian ecosystem lacks sufficient basis in the record. The Court assumes that on remand the FWS will give further consideration to this issue.").

---

[8] In *Northern California River Watch v. Wilcox*, No. 08-15780, 2010 U.S. App. LEXIS 17759 (August 25, 2010) the Ninth Circuit also recently considered when ambiguous terms in the ESA should be afforded *Chevron* deference. After first rejecting the Secretary's claim that the plain meaning of the contested statutory term could be discerned, the court next analyzed whether the Secretary had ever interpreted the phrase in a manner that could be subject to *Chevron* deference. *Id*. at *14-*34.  The court considered three final listing rules, all "promulgated by the FWS using formal rule-making authority," *Id*. at *26, and determined that in none of the rules had FWS set forth an official interpretation of the ambiguous language. *Id*. at *26-*29. The court further held that a policy manual discussing the ambiguous term did not have the force of law and thus did not warrant *Chevron* deference. *Id.* at *29-*34. Finally, the court rejected the Secretary's argument that its interpretation articulated in a brief was subject to deference. *Id.* at *34-*35. Having no interpretation to defer to the court proceeded to interpret the term itself.  *Id.* at *36.

CBD et al's Supplemental Brief Re                    Misc. Action No. 08-0764 (EGS)
Notice and Comment

DATE: October 27, 2010.                    Respectfully submitted,

                                           _/s/ Brendan Cummings_____
                                           Brendan R. Cummings
                                           Kassia R. Siegel
                                           CENTER FOR BIOLOGICAL DIVERSITY
                                           P.O. Box 549
                                           Joshua Tree, CA 92252
                                           Phone: (760) 366-2232
                                           Facsimile: (760) 366-2669
                                           bcummings@biologicaldiversity.org
                                           ksiegel@biologicaldiversity.org

                                           Benjamin Longstreth
                                           Rebecca J. Riley
                                           Andrew Wetzler
                                           NATURAL RESOURCES DEFENSE COUNCIL
                                           2 N. Riverside Plaza, Suite 2250
                                           Chicago, IL  60606
                                           Telephone: 312-651-7913
                                           Facsimile: 312-234-9633
                                           rriley@nrdc.org
                                           awetzler@nrdc.org

                                           *Attorneys for CBD et al.*

CBD et al's Supplemental Brief Re                    Misc. Action No. 08-0764 (EGS)
Notice and Comment