**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

IN RE POLAR BEAR ENDANGERED
SPECIES ACT LISTING AND § 4(d)
RULE LITIGATION

---

This Document Relates To:
ALL CASES

Misc. Action No. 08-764 (EGS)
MDL Docket No. 1993

---

<u>MEMORANDUM OPINION</u>

In May 2008, the U.S. Fish and Wildlife Service ("FWS")
issued its final rule listing the polar bear as a "threatened"
species under the Endangered Species Act of 1973, which affords
special protections to endangered and threatened fish and
wildlife species.  *See* Determination of Threatened Status for the
Polar Bear (*Ursus maritimus*) Throughout Its Range, 72 Fed. Reg.
28,212 (May 15, 2008) (the "Listing Rule").  The publication of
the Listing Rule triggered lawsuits by a number of organizations
and individuals: (1) the State of Alaska ("Alaska") (*State of
Alaska v. Salazar,*[1] *et al.*, Case No. 08-1352); (2) Safari Club
International and Safari Club International Foundation ("SCI")
(*Safari Club Int'l, et al. v. Salazar, et al.*, Case No. 08-1550);
(3) California Cattlemen's Association and the Congress of Racial
Equality ("CCA") (*California Cattlemen's Ass'n, et al. v.*

---

[1]     Pursuant to Fed. R. Civ. P. 25(d), Interior Secretary
Ken Salazar is automatically substituted as a defendant for his
predecessor, Dirk Kempthorne, who was sued in his official
capacity.

*Salazar, et al.*, Case No. 08-1689); (4) Center for Biological

Diversity, Natural Resources Defense Council, and Greenpeace

("CBD") (*Ctr. for Biological Diversity, et al. v. Salazar, et*

*al.*, Case No. 08-2113); and (5) Conservation Force, the

Inuvialuit Game Council, and numerous hunting and trapping

organizations as well as individuals (collectively, "CF")

(*Conservation Force, et al. v. Salazar, et al.*, Case No. 09-245).

These five actions were consolidated before this Court, along

with six related actions, pursuant to an order of the Judicial

Panel on Multi-District Litigation.[2]  *In re Polar Bear Endangered*

*Species Act Listing and 4(d) Rule Litigation,* Case No. 08-764,

Docket No. 1.[3]

---

[2]      On the same day that FWS issued its final rule listing
the polar bear as a threatened species, the Secretary of the
Interior published proposed regulations pursuant to 16 U.S.C.
§ 1533(d), which authorizes the Secretary to issue "such
regulations as he deems necessary and advisable to provide for
the conservation" of a threatened species.  *See* Special Rule for
the Polar Bear, 73 Fed. Reg. 28,306 (May 15, 2008) ("Interim 4(d)
Rule").  These regulations were later finalized and codified at
50 C.F.R. § 17.40(q) and are the subject of two additional
actions before this Court.  The four remaining actions challenge
the FWS's subsequent refusal to issue permits for importing
sport-hunted polar bear trophies under the Marine Mammal
Protection Act ("MMPA"), 16 U.S.C. §§ 1371 *et seq.*  These six
actions have been briefed separately from the Listing Rule cases;
therefore, the Court does not address either the 4(d) Rule or the
import ban challenges here.

[3]      Unless otherwise specified, all references to
pleadings, proceedings, hearings, opinions, and orders relate to
the case of *In re Polar Bear Endangered Species Act Listing and
4(d) Rule Litigation,* Case No. 08-764, and can be found on that
case's docket.

Each of these plaintiffs has challenged the Listing Rule under the Endangered Species Act ("ESA" or "the Act"), 16 U.S.C. §§ 1531 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.*, claiming that FWS's decision to list the polar bear as a threatened species was arbitrary and capricious and an abuse of agency discretion. Among other claims, plaintiff CBD contends that the decision to list the polar bear as "threatened" was arbitrary and capricious because the polar bear meets the definition of an "endangered" species under the ESA and thus qualifies for a higher level of protection. The remaining plaintiffs (collectively, the "Joint Plaintiffs") contend, among other things, that the decision to list the polar bear was arbitrary and capricious because the polar bear does not meet the definition of a threatened species and therefore does not qualify for ESA protections.[4]

---

[4]     Several groups have intervened to defend against the plaintiffs' challenges to the Listing Rule. Specifically, this Court permitted the Alaska Oil and Gas Association ("AOGA") and the Arctic Slope Regional Corporation ("ASRC") to intervene as defendants in *Center for Biological Diversity, et al. v. Salazar, et al.*, Case No. 08-2113, the challenge brought by plaintiff CBD. The Court also permitted SCI, a plaintiff in its own action, to intervene as a defendant in the action brought by plaintiff CBD. In addition, CBD was allowed to intervene as a defendant in the remaining challenges to the Listing Rule (*State of Alaska v. Salazar, et al.*, Case No. 08-1352; *Safari Club Int'l, et al. v. Salazar, et al.*, Case No. 08-1550; *California Cattlemen's Ass'n, et al. v. Salazar, et al.*, Case No. 08-1689; and *Conservation Force, et al. v. Salazar, et al.*, Case No. 09-245).

Pending before the Court are the parties' cross-motions for summary judgment.  Upon careful consideration of the plaintiffs' motions, the federal defendants' and defendant-intervenors' cross-motions, the various oppositions, replies, and supplemental briefs, the relevant law, the administrative record, statements made by counsel at the hearing held on October 20, 2010, and for the reasons stated herein, the Court concludes that FWS failed to adequately explain the legal basis for its Listing Rule.  The federal defendants contend that, as a matter of law, an "endangered species" must be in imminent danger of extinction.  The Court rejects the federal defendants' erroneous conclusion that an imminence requirement is mandated by the plain meaning of the statute.  Because the federal defendants failed to acknowledge ambiguities in the definition of an endangered species, this Court can neither defer to the agency's plain-meaning interpretation nor impose its own interpretation of the statute; instead the Court must remand the Listing Rule to the agency to treat the statutory language as ambiguous.  *See Peter Pan Bus Lines, Inc. v. Fed. Motor Carrier Safety Admin.*, 471 F.3d 1350, 1354 (D.C. Cir. 2006).  The Court therefore **REMANDS** the Listing Rule to the agency for this limited purpose.  Having found sufficient grounds to remand to the agency on this threshold issue, the Court defers ruling on the merits of the

parties' cross-motions for summary judgment.[5]  *See, e.g.*, *In re Checkosky*, 23 F.3d 452, 463 (D.C. Cir. 1993) (noting that "reviewing courts will often and quite properly pause before exercising full judicial review and remand to the agency for a more complete explanation of a troubling aspect of the agency's decision").

## I.   BACKGROUND

### A.   Statutory Background

The ESA has been described as "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation."  *Tennessee Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978).  Congress enacted the ESA "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species."  16 U.S.C. § 1531(b).  "The plain intent of Congress in enacting this statute was to halt and reverse the

---

[5]     The federal defendants contest plaintiff CCA's standing to challenge the Listing Rule.  *See* Federal Defendants' Combined Opposition to Plaintiffs' Motions for Summary Judgment and Cross-Motion for Summary Judgment on Listing Rule Claims ("FD Op. Mem.") at 20.  Because the Court does not reach the merits of CCA's claims at this time, the Court also defers ruling on its jurisdiction to decide those claims.  *See Warth v. Seldin*, 422 U.S. 490, 498 (1975) ("In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.").

trend toward species extinction, whatever the cost." *Tennessee Valley Auth.*, 437 U.S. at 184.

The ESA's protections are triggered when a species is designated as either "threatened" or "endangered."[6]  An "endangered species" is "any species which is in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6).  A "threatened species" is "any species which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20).  The ESA requires the Secretary of the Interior to publish and maintain a list of all species that have been designated as threatened or endangered.  *Id.* § 1533(c). Species are added to and removed from this list after notice and an opportunity for public comment, either on the initiative of the Secretary or as a result of a petition submitted by an "interested person."  *Id.* §§ 1533(b)(1), (3), (5).  The Secretary

---

[6]    A designation of "endangered" triggers a broad scope of protections, including a prohibition on "taking" individual members of the species.  *See* 16 U.S.C. § 1538(a)(1)(B). *See also id.* § 1532(19) (The term "take" means to "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct.").  A designation of "threatened" requires the Secretary to "issue such regulations as he deems necessary and advisable to provide for the conservation of such species."  *Id.* § 1533(d).

of the Interior is responsible for making listing determinations for the polar bear.[7]  *See* 50 C.F.R. § 402.01(b).

A listing determination is made on the basis of one or more of five statutorily prescribed factors: (1) present or threatened destruction, modification, or curtailment of a species' habitat or range; (2) overutilization for commercial, recreational, scientific, or educational purposes; (3) disease or predation; (4) the inadequacy of existing regulatory mechanisms; and (5) other natural or manmade factors affecting a species' continued existence.  16 U.S.C §§ 1533(a)(1)(A)-(E); *see also* 50 C.F.R. § 424.11(c).  The agency must list a species as long as "any one or a combination" of these factors demonstrates that it is threatened or endangered.  50 C.F.R. § 424.11(c).  The decision to list a species must be made "solely on the basis of the best scientific and commercial data available . . . after conducting a review of the status of the species and after taking into account those efforts, if any, being made by any State or foreign nation, or any political subdivision of a State or foreign nation, to protect such species."  16 U.S.C. § 1533(b)(1)(A).

---

[7]   The Secretary has generally delegated his responsibilities under the ESA to FWS.

B.    **Factual and Procedural Background**

Polar bears are marine mammals that are described as "ice-obligate," meaning that they are evolutionarily adapted to sea ice for their survival and primary habitat.  ARL 117216.[8]  There are approximately 20,000 to 25,000 polar bears worldwide, distributed in approximately nineteen populations throughout the Northern Hemisphere's ice-covered regions.  ARL 117216-19. Current estimates show that two of the nineteen polar bear populations are increasing in numbers, six populations are stable, and five populations are declining.  ARL 117221. Insufficient data are available to identify a trend for the remaining six populations.  ARL 117221.

On February 16, 2005, plaintiff Center for Biological Diversity submitted a petition to the Secretary of the Interior to list the polar bear as a threatened species under the ESA. Petition to List the Polar Bear (*Ursus maritimus*) as a Threatened Species Under the Endangered Species Act, ARL 4040-4209.  FWS issued its final rule listing the polar bear as a threatened species on May 15, 2008.[9]  *See generally* 72 Fed. Reg. 28,212.  In

_____

[8]    Citations to the administrative record for the Listing Rule are abbreviated "ARL."  Unless otherwise noted, all ARL citations in this section are to the Listing Rule itself.

[9]    The ESA requires the Secretary to respond to listing petitions within 90 days with an initial finding stating whether the petition "presents substantial scientific or commercial information indicating that the petitioned action may be

its Listing Rule, FWS found that the projected declines in sea ice over the next several decades will significantly impact polar bear reproduction and vital rates, ultimately leading to population-level declines.  ARL 117265, 117279.

Specifically, FWS found that all polar bear populations will be affected by substantial losses of sea ice within the foreseeable future (which it defined as 45 years), although different populations will be affected at different rates and to different degrees. ARL 117279.[10]  On this basis, FWS concluded

_____

warranted."  16 U.S.C. § 1533(b)(3)(A).  If the FWS determines on this basis that listing may be warranted, it must promptly commence a review of the species' status.  *Id.*  Within 12 months of receiving the listing petition, the agency must have completed its review and must make a finding that listing is either: (1) not warranted; (2) warranted, but precluded by other listing priorities; or (3) warranted, in which case the FWS must publish a proposed rule to list the species in the Federal Register.  *Id.* § 1533(b)(3)(B).  A final rule generally must be completed within one year of publication of the proposed rule.  *Id.* § 1533(b)(6). Plaintiff CBD sued FWS to enforce several of these deadlines for the polar bear. *See Ctr. for Biological Diversity v. Kempthorne*, No. 05-5191 (N.D. Cal. filed Dec. 15, 2005); *Ctr. for Biological Diversity v. Kempthorne*, No. 08-1339 (N.D. Cal. filed Mar. 10, 2008).  After FWS determined that listing the polar bear would be warranted and then published a proposed rule to list the species as threatened throughout its range, the district court in California directed FWS to publish its final listing determination for the polar bear by May 15, 2008.  *See Ctr. for Biological Diversity v. Kempthorne*, No. 08-1339, 2008 U.S. Dist. LEXIS 34753 (N.D. Cal. Apr. 28, 2008).  None of these actions are part of the multi-district litigation before this Court.

[10]   FWS recognized that preliminary polar bear population models show that projected changes in future sea ice conditions could result in loss of approximately two-thirds of the world's polar bears by the mid-21[st] century.  ARL 117278.

that projected habitat losses alone qualify the polar bear as a threatened species throughout its range.  ARL 117281.  FWS also found, however, that the polar bear is not currently endangered in any portion of its range because the species is abundant, any observed population declines have been gradual rather than precipitous, and reproduction and recruitment are still occurring in all polar bear populations.[11]  ARL 117219, 117299-300.

FWS's listing decision was challenged by organizational and individual plaintiffs, as described above.  Plaintiffs have identified a number of purported deficiencies in the Listing Rule, each of which forms the basis for a claim that FWS violated both the ESA and the APA.  The parties' cross-motions for summary judgment are ripe for determination by the Court.

## II.  STANDARD OF REVIEW

FWS's listing decisions are subject to review under the APA. *See, e.g.*, *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 997 (D.C. Cir. 2008).  Under the APA, federal agency actions are to be held unlawful and set aside where they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).  To make this finding, the court must determine whether the agency "considered the factors relevant to

---

[11]    Because FWS determined that no portion of the polar bear species is "in danger of extinction," FWS did not reach the question of whether the polar bear is endangered throughout a "significant portion of its range."  ARL 117301.

10

its decision and articulated a rational connection between the facts found and the choice made." *Keating v. FERC*, 569 F.3d 427, 433 (D.C. Cir. 2009) (citing *Balt. Gas & Elec. Co. v. Natural Res. Def. Council, Inc.*, 462 U.S. 87, 105 (1983)).

Here, the threshold question before the Court relates to FWS's interpretation of the definition of "endangered species" under the ESA.  The framework for reviewing an agency's interpretation of a statute that the agency is charged with administering is set forth in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).  The first step in this review process is for the court to determine "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842.  "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43.  In determining whether the statute unambiguously expresses the intent of Congress, the court should use all the "traditional tools of statutory construction," including looking to the text and structure of the statute, as well as its legislative history, if appropriate.  *See id.* at 843 n.9; *see also Bell Atlantic Tel. Co. v. FCC*, 131 F.3d 1044, 1047 (D.C. Cir. 1997).  If the court concludes that the statute is either silent or ambiguous with respect to the precise question

at issue, the second step of the court's review process is to
determine whether the interpretation proffered by the agency is
"based on a permissible construction of the statute."  *Chevron*,
467 U.S. at 843.  The court must defer to agency interpretations
that are not "arbitrary, capricious, or manifestly contrary to
the statute."  *Id.* at 844.

**III. DISCUSSION**

The Court's current inquiry arises out of plaintiff CBD's
claim that FWS misinterpreted and misapplied the ESA in
determining that the polar bear does not qualify for "endangered"
status.  Plaintiff CBD contends that FWS's decision to list the
polar bear as "threatened" rather than "endangered" on the basis
of its conclusion that the species is not facing imminent
extinction throughout any portion of its range is arbitrary,
capricious, and contrary to the best available science for the
polar bear.  Memorandum of Points and Authorities of Plaintiffs
Center for Biological Diversity, Natural Resources Defense
Council and Greenpeace, Inc. in Support of Motion for Summary
Judgment (Docket No. 125) ("CBD Op. Mem.") at 21.  In response,
the federal defendants argue that the agency's determination is
compelled by the plain meaning of the statute.  Federal
Defendants' Combined Opposition to Plaintiffs' Motions for
Summary Judgment and Cross-Motion for Summary Judgment on Listing
Rule Claims (Docket No. 137) ("FD Op. Mem.") at 44; *see also*

Transcript of Motions Hearing, October 20, 2010 ("Tr.") at 17. According to the federal defendants, the text, structure, and legislative history of the ESA plainly and unambiguously require that a species must be in imminent danger of extinction to be designated as endangered.  Therefore, before reaching the merits of CBD's claim, the Court must first address the threshold question of whether the ESA clearly expresses the intent of Congress to limit the "endangered" classification to only those species that are in danger of imminent extinction.  The federal defendants' arguments are explored below in turn.

As the federal defendants have conceded, Tr. at 19, the statutory definition of an "endangered species" does not expressly require that the species be in danger of imminent extinction.  An endangered species is defined as "any species which is in danger of extinction throughout all or a significant portion of its range."  16 U.S.C. § 1532(6).  Relying on ordinary meanings alone, this provision merely requires the Secretary to determine whether a species is "exposed to the harm of no longer existing."  *See United States v. Hill*, 896 F. Supp. 1057, 1062 (D. Colo. 1995) (citing Webster's Third New International Dictionary for definitions of "extinct" and "danger").[12]

_____

[12]    In *United States v. Hill*, the defendant - who was charged with attempting to sell parts of animals on the endangered species list - raised a constitutional challenge to the ESA, arguing that the phrase "in danger of extinction" could

13

Although nothing in the text of the ESA compels the agency's conclusion that an "endangered" designation requires imminent extinction, a plain meaning analysis does not end with the language of the relevant provision.  Instead, the Court must analyze "'the language and design of the statute as a whole.'" *Am. Scholastic TV Programming Found. v. FCC*, 46 F.3d 1173, 1178 (D.C. Cir. 1995) (quoting *Fort Stewart Sch. v. FLRA*, 495 U.S. 641, 645 (1990)).  According to the federal defendants, the structure and context of the statute clearly demonstrate that Congress intended to reserve an "endangered" designation for those species that are at risk of imminent extinction:

> While Congress did not provide express standards for distinguishing between endangered and threatened species, it is evident from the plain language of the ESA's definitions of those terms that Congress believed the immediacy of the impact from the threat(s) facing the species was in large measure what separated an endangered species from a threatened species.  While both categories are forward-looking, the phrase 'in danger of' connotes a risk of extinction that is both substantial and immediate, whereas the terms 'likely' and 'foreseeable future' connote a risk that is comparatively lower or less imminent.

---

not be defined with sufficient precision to constitute an "intelligible principle," in violation of the nondelegation doctrine.  896 F. Supp. at 1060.  Because the court's analysis of the phrase "in danger of extinction" did not arise in the context of a listing determination, it is not particularly useful for resolving the question of how that phrase should be interpreted and applied; however, it is instructive in demonstrating that the interpretation advanced by the federal defendants is not compelled by the text of the statute.  The phrase "in danger of extinction" does not appear to have been interpreted by any court in the context of an ESA listing decision.

14

FD Op. Mem. at 44.  Reading the definitions of an endangered species and a threatened species together, the federal defendants contend that the only possible difference between a threatened species and an endangered species is the temporal proximity of the threat.  FD Op. Mem. at 44.  Indeed, the federal defendants assert that without an imminence requirement the "threatened" category becomes superfluous,  Federal Defendants' Reply in Support of Their Combined Opposition to Plaintiffs Motions for Summary Judgment and Cross-Motion for Summary Judgment on Listing Rule Claims (Docket No. 195) ("FD Reply") at 25; *see also* Tr. at 21 ("[I]f you don't read imminent in there, you can't have a threatened category."), and argue that an interpretation that reads the "threatened" category out of the statute violates traditional principles of statutory construction.  *See, e.g.*, *Cal. Indep. Sys. Operator Corp. v. FERC*, 372 F.3d 395, 401 (D.C. Cir. 2004) ("Traditional principles of statutory construction counsel against reading acts of Congress to be superfluous.").

The Court agrees that there is a temporal element to the distinction between the categories of endangered and threatened species.[13]  However, on balance, the Court is not persuaded that

---

[13]   As defendant-intervenor AOGA correctly noted, an endangered species "is" in danger of extinction, in the present tense, whereas a threatened species is "likely to become" so endangered.  Defendant-Intervenors Alaska Oil and Gas Association's and Arctic Slope Regional Corporation's Cross-

this temporal distinction compels federal defendants' conclusion that to be "in danger of extinction" a species must be in imminent harm.  Specifically, the Court rejects the federal defendants' contention that the category of "threatened" species becomes superfluous in the absence of an imminence requirement because the distinction between the "threatened" and "endangered" categories is not based solely and unambiguously on the imminence of the species' anticipated extinction.

To the contrary, the Court finds that the overall structure of the ESA suggests that the definition of an endangered species was intentionally left ambiguous.  It is well-settled that Congress need not "supply administrative officials with a specific formula for their guidance in a field where flexibility and the adaptation of the congressional policy to infinitely variable conditions constitute the essence of the program." *Lichter v. United States*, 334 U.S. 742, 785 (1948).  Indeed, under the ESA, Congress broadly delegated responsibility to the Secretary to determine whether a species is "in danger of extinction" in light of the five statutory listing factors and the best available science for that species.[14]  *See Babbitt v.*

_____

Motion for Summary Judgment and Opposition to Plaintiffs' Center for Biological Diversity, et al's Motion for Summary Judgment on Listing Rule Claims (Docket No. 151) ("AOGA Op. Mem.") at 12-13.

[14]    Although imminence of harm is clearly one factor that the agency weighs in its decision-making process, it is not

*Sweet Home*, 515 U.S. 687, 708 (1995) ("The task of defining and listing endangered and threatened species requires an expertise and attention to detail that exceeds the normal province of Congress."). In making that determination, the agency cannot "rest simply on its parsing of the statutory language [but rather it] must bring its experience and expertise to bear in light of competing interests at stake." *PDK Labs., Inc. v. DEA*, 362 F.3d 786, 797-98 (D.C. Cir. 2004) (citing *Chevron*, 467 U.S. at 865-66). The definition of an "endangered species" is, therefore, inherently ambiguous.

For the foregoing reasons, the Court finds nothing in the text or structure of the statute to compel the conclusion that Congress intended to bind the agency to a particular formula for determining when a species is "in danger of extinction." Accordingly, the Court rejects the federal defendants' assertion that the structure of the statute clearly and unambiguously imposes a bright-line imminence requirement for all endangered species.

Even assuming the structure of the statute does not unambiguously express the intent of Congress, the federal

---

necessarily a limiting factor. In many cases, the agency might appropriately find that the imminence of a particular threat is the dispositive factor that warrants listing a species as "threatened" rather than "endangered," or vice versa. The agency nonetheless has broad discretion to decide that other factors outweigh the imminence of the threat.

defendants assert that the agency's plain-meaning interpretation is nonetheless compelled by the legislative history of the ESA. FD Op. Mem. at 50.  As the D.C. Circuit has stated, "we may consider a provision's legislative history . . . to determine whether Congress' intent is clear from the plain language of a statute." *City of Cleveland v. NRC*, 68 F.3d 1361, 1366 n.4 (D.C. Cir. 1995).  Defendant-intervenor AOGA, in its opening brief, points to several specific passages that it claims express the clear intent of Congress:

> An animal's continued existence must actually be in peril before it may be considered endangered . . . The threatened list will be composed of those species which are not presently in danger of extinction, but which are likely to become endangered if protective measures are not taken.  Senate Consideration and Passage of S. 1983 (July 24, 1973), *reprinted in* COMM. ON ENV'T AND PUBLIC WORKS, 97TH CONG., A LEGISLATIVE HISTORY OF THE ENDANGERED SPECIES ACT OF 1973, AS AMENDED IN 1976, 1977, 1978, AND 1981, at 375 (1982) [hereinafter LEGISLATIVE HISTORY].

> The bill provides a broadened concept of 'endangered species' by affording the Secretary the additional power to list animals which he determines are likely within the foreseeable future to become threatened with extinction.  This gives effect to the Secretary's ability to forecast population trends by permitting him to regulate these animals before the danger becomes imminent while long-range action has begun.  SEN. REP. NO. 93-307, at 3 (1973), *reprinted in* LEGISLATIVE HISTORY at 302.

> The bill must provide the Secretary with sufficient discretion in listing animals so that he may afford present protection to those species which are either in present danger of extinction or likely within the foreseeable future to become so endangered.  SEN. REP. NO. 93-307, at 3 (1973), *reprinted in* LEGISLATIVE HISTORY at 302.

18

> The bill contemplates the promulgation of two lists:
> one designating actually endangered or extinct species,
> and the other listing those which are threatened.
> House Consideration and Passage of H.R. 37 (Sept. 18,
> 1973), *reprinted in* LEGISLATIVE HISTORY at 197.

AOGA Op. Mem. at 14.  According to the federal defendants, these
passages show that Congress created the "threatened" category in
1973 to allow the agency to take steps to protect a species
before extinction becomes imminent.  FD Reply at 22.  The federal
defendants infer, therefore, that the original "endangered"
category was only intended to encompass those species at the
brink of extinction.  FD Reply at 22; *see also* Tr. at 27-28.

Upon careful review of the legislative history, the Court is
unpersuaded by the federal defendants' contention that the
legislative history unambiguously requires imminent extinction
for a species to be designated as endangered.  Indeed, the Court
notes that the word "imminent" appears once in the entire
legislative history, in a passage that refers only cryptically to
the definition of an endangered species.  SEN. REP. NO. 93-307, at
3 (1973).  This single statement is not sufficient to overcome a
fundamental ambiguity in the text and structure of the statute.
*See Humane Soc'y of the United States v. Kempthorne*, 579 F. Supp.
2d 7, 20 (D.D.C. 2008) (Friedman, J.) (finding single
inconclusive statement from the legislative history insufficient
to dispel ambiguity in the ESA).  Moreover, although the
legislative history does emphasize that an endangered species

"is" (currently or presently or actually) in danger of extinction, whereas a threatened species is "likely to become" so endangered, this basic distinction is already apparent from the text of the statute itself and does not compel a conclusion that an endangered species must be in danger of *imminent* extinction.

Having carefully considered the text, structure, and legislative history of the ESA, the Court is persuaded that Congress intended to allow the agency flexibility to make a case-by-case determination of when a species is "in danger of extinction," based on the five statutory listing factors and the best available science for that species. Therefore, the Court finds that the ESA does not compel the federal defendants' plain-meaning interpretation that an endangered species must be in danger of imminent extinction. For the reasons stated above, the Court concludes that the statute is "silent or ambiguous with respect to the specific issue" before the Court. *Chevron,* 467 U.S. at 843.[15]

---

[15]    Because the Court finds that the statute is ambiguous, the Court declines to adopt CBD's alternative plain-meaning interpretation of the definition of an endangered species, which would mandate that any species at high risk of extinction is necessarily "in danger of extinction." *See* CBD Op. Mem. at 22. In any case, where the agency has relied exclusively on an erroneous plain-meaning interpretation of a statute that the court has found to be ambiguous, the court is not empowered to "choose between competing meanings." *PDK Labs.,* 362 F.3d at 798.

Upon finding the definition of an endangered species to be ambiguous, the Court would normally be required to defer to any permissible agency construction of the statute under step two of the *Chevron* analysis. *Id.* In this case, however, there is no permissible construction to which the Court can defer. Counsel conceded at oral argument that the agency does not seek deference to its interpretation of the definition of an endangered species under step two of the *Chevron* test and instead relies exclusively on a plain-meaning interpretation of the ESA.[16] Tr. at 17, 26. As "*Chevron* step 2 deference is reserved for those instances when an agency recognizes that the Congress's intent is not plain from the statute's face," *Peter Pan Bus Lines, Inc.*, 471 F.3d at 1354, this Court is precluded from according the agency's interpretation deference under *Chevron*. *See Sec'y of Labor*, *Mine Safety and Health Admin. v. Nat'l Cement Co. of California, Inc.*,

---

[16]   The federal defendants' discussion of this issue in their briefs is cursory at best. Indeed, the federal defendants fail to mention the *Chevron* framework entirely with respect to the statutory definition of an endangered species. This is puzzling in light of the fact that the federal defendants have invoked *Chevron* with respect to other portions of the statute. For example, the federal defendants contend that FWS's interpretation of the term "foreseeable future" in the definition of a threatened species is entitled to deference under *Chevron* step two. FD Op. Mem. at 69-70, 72-79. The federal defendants further contend that the statutory phrase "taking into account," 16 U.S.C. § 1533(b)(1), has a plain meaning under *Chevron* step one, but that "at a minimum, if the Court were to find the 'taking into account' language ambiguous, the Service's interpretation is reasonable and entitled to deference under step II of *Chevron*." FD Reply at 40, n.16.

494 F.3d 1066, 1075 (D.C. Cir. 2007) ("Because the Secretary did not recognize the ambiguities inherent in the statutory terms, we do not defer to her plain meaning interpretation."); *see also PDK Labs.,* 362 F.3d at 798 ("Deference to an agency's interpretation of a statute is not appropriate when the agency wrongly believes that [its] interpretation is compelled by Congress." (citations omitted)); *Humane Soc'y*, 579 F. Supp. 2d at 20.

Therefore, having found that the agency wrongly relied on an erroneous plain-meaning reading of the definition of an endangered species, the Court must "remand for [the agency] to treat the statutory language as ambiguous." *Nat'l Cement Co.*, 494 F.3d at 1075; *see also PDK Labs.*, 362 F.3d at 798 ("The law of this circuit requires in those circumstances that we withhold *Chevron* deference and remand to the agency so that it can fill in the gap."). The Court therefore will remand the Listing Rule to FWS for the agency to provide a reasonable interpretation of the definition of an "endangered species," as applied to its listing determination for the polar bear.[17]  *See Humane Soc'y*, 579 F.

---

[17]    A remand for this narrow purpose is particularly appropriate here, where the agency has not purported to interpret the statutory definition of an endangered species in the Listing Rule itself.  Ultimately, it is "[t]he expertise of the agency, not its lawyers," that "must be brought to bear on this issue in the first instance." *Pub. Citizen v. FMCSA*, 374 F.3d 1209, 1218 (D.C. Cir. 2004) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88) (1943)).  This Court can only uphold an agency decision based on the grounds relied upon by the agency itself and cannot exercise its duty of judicial review on the basis of the *post hoc*

Supp. 2d at 15.  On remand, the agency should bring its expertise and experience to bear on the question of whether its determination that the polar bear is "threatened" throughout its range is warranted, in light of the Court's finding that the definition of an endangered species is ambiguous.  "At a minimum, the agency must explain how its interpretation of the statute conforms to the text, structure and legislative history of the ESA; how its interpretation is consistent with judicial interpretations of the ESA (if there are any on point); and how its interpretation serves the ESA's policy objectives.  It must also address any legitimate concerns that its interpretation could undermine those policy objectives."  *Humane Soc'y*, 579 F. Supp. 2d at 20-21; *see also Nat'l Cement Co.*, 494 F.3d at 1076-77.

The Court is persuaded that a remand for this limited purpose will not require the agency to undertake additional notice-and-comment rulemaking procedures.[18]  *See In re Checkosky*,

---

rationalizations of agency counsel.  *See Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419 (1971).  The remedy prescribed here will enable the Court to perform its duties of full judicial review.  *See Local 814, Int'l Brotherhood of Teamsters, et al. v. NLRB*, 546 F.2d 989, 992 (D.C. Cir. 1976) (noting that the Supreme Court "specifically approved the procedure of requesting an administrative body to provide additional explanation for an inadequately articulated decision"(citing *Citizens*, 401 U.S. at 420)).

[18]    The Court finds persuasive the federal defendants' arguments, set out in supplemental briefing, that no additional

23 F.3d at 465 ("In fashioning a remedy for an agency's failure to present an adequate statement of basis and purpose, this court may either remand for specific procedures to cure the deficiency without vacating [the] rule, or it may vacate the rule, thus requiring the agency to initiate another rulemaking proceeding if it would seek to confront the problem anew." (citing *Indep. U.S. Tanker Owners Comm. v. Dole*, 809 F.2d 847, 854-55 (D.C. Cir. 1987)(internal citations omitted))).

Because the Court does not rule on the lawfulness of the Listing Rule at this time, the Listing Rule shall remain in force during the remand period. *In re Checkosky*, 23 F.3d 452, 462-63 (D.C. Cir. 1993).

## IV. CONCLUSION

For the foregoing reasons, the Court hereby remands the Listing Rule to the agency for the limited purpose of providing additional explanation for the legal basis of its listing

---

notice-and-comment procedures are required for the limited remand that the Court prescribes. *See generally* Federal Defendants' Supplemental Memorandum in Response to the Court's Minute Order of October 20, 2010 (Docket No. 230); Federal Defendants' Response to Supplemental Memorandum Filed October 27, 2010 (Docket No. 232).  In ordering a limited remand, the Court does not require the agency to conduct additional fact-finding, nor does the Court require the agency to adopt independent, broad-based criteria for defining the statutory term "in danger of extinction."  However, should the agency determine upon review that no reasonable interpretation of the statute supports its existing "threatened" designation for the polar bear, new rulemaking procedures may be warranted.

determination, and for such further action as it may wish to take in light of the Court's finding that the definition of an "endangered species" under the ESA is ambiguous.  The federal defendants are directed to submit the agency's supplemental explanation and supporting materials, if any, by no later than December 23, 2010.  All other parties to the Listing Cases are directed to file responsive briefs by no later than January 18, 2011.  The federal defendants shall be permitted to file a reply by no later than February 1, 2011.  These deadlines are firm, and no extensions will be granted absent extraordinary circumstances.

The Court hereby schedules a hearing for February 23, 2011, at 10:00 a.m. in Courtroom 24A, at which time the Court shall hear arguments on this issue, as well as the remaining issues briefed by the parties in the Listing Rule cases.

The hearing currently scheduled for January 25, 2011, at 10:00 a.m. in the 4(d) Rule cases (*Ctr. for Biological Diversity, et al. v. Salazar, et al.*, Case No. 08-2113; *Defenders of Wildlife v. U.S. Dep't of the Interior*, Case No. 09-153) is hereby rescheduled to April 13, 2011, at 10:00 a.m. in Courtroom 24A.  The Court also schedules a hearing in the Import Ban cases (*Safari Club Int'l, et al. v. Salazar, et al.*, Case No. 08-881; *Hershey v. Salazar, et al.*, Case No. 09-324; *Kreider v. Salazar, et al.*, Case No. 09-325; *Atcheson, et al. v. Salazar, et al.*, Case No. 09-941) for April 13, 2011, at 2:00 p.m. in Courtroom

24A.  Further instructions to counsel will follow as the hearing date approaches.

An Order consistent with this Memorandum Opinion will be issued this same day.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
**United States District Judge**
**November 4, 2010**